669388.1

WATANABE ING LLP
A Limited Liability Law Partnership

JONATHAN W. Y. LAI       6504-0
First Hawaiian Center
999 Bishop Street, Suite 1250
Honolulu, Hawaii  96813
Telephone No.: (808) 544-8300
Facsimile No.: (808) 544-8399
E-Mail: jlai@wik.com

Attorney for Interested Party
HAWAII CENTRAL FEDERAL CREDIT UNION

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>KATHERINE P. KEALOHA (1), LOUIS M. KEALOHA (2),<br><br>            Defendants. | CRIM NO. 18-00068 JMS-RLP<br><br>Related Case Nos. 18CV00108-LEK-KJM; 17CR00582-JMS-RLP)<br><br>INTERESTED PARTY HAWAII CENTRAL FEDERAL CREDIT UNION'S MOTION FOR CONFIRMATION OF INTERLOCUTORY SALE OF REAL PROPERTY; DECLARATION OF HEIDI HO; EXHIBITS 1-3; DECLARATION OF DRAKE TANABE; EXHIBIT 4; DECLARATION OF COUNSEL; EXHIBIT 5 |

### INTERESTED PARTY HAWAII CENTRAL FEDERAL CREDIT UNION'S MOTION FOR CONFIRMATION OF INTERLOCUTORY SALE OF REAL PROPERTY

Interested Party HAWAII CENTRAL FEDERAL CREDIT UNION ("HCFCU"), by and through its attorneys, Watanabe Ing LLP, respectfully moves this Honorable Court for an order confirming and approving the interlocutory judicial sale via conveyance by

HCFCU and/or the United States Marshall Service ("USMS"), consistent with that certain Purchase Contract dated January 26, 2019, the Counter Offer dated January 26, 2019 and Amendment #1 to Purchase Contract (collectively, the "Contract") negotiated by Heidi Ho, the licensed real estate agent retained by HCFCU (the "Real Estate Agent"), pursuant to the Order Granting the United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture (the "Interlocutory Order").

As indicated in her declaration filed concurrently herewith, the Real Estate Agent reports that the property located at 7014 Niumalu Loop, Honolulu, Hawaii 96825, Tax Map Key No. (1) 3-9-065-046 (the "Real Property") received a cash offer from Michael Regan McKenna (the "Purchaser") for the price of ONE MILLION THREE HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($1,305,000.00) with no financing contingencies and that offer has been accepted by HCFCU.

Given the pending criminal trial in Related Case 17CR00582-JMS-RLP (on or about March 19, 2019), the fact that the Proposed Purchaser is willing and able to complete a cash purchase in the near future AND the 10 day publication requirement, **HCFCU requests that this Court schedule this hearing during the week of March 11th (which is prior to the criminal trial).**

More specifically, HCFCU moves this Honorable Court, pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure, for an order:

1.    Allowing, approving, and ratifying the Contract. Pursuant to the terms of the Interlocutory Order, HCFCU intends to publish the terms of the highest and best contract of sale offered for the Real Property in the Star Advertiser, a newspaper of general circulation, at least ten days before the hearing on this instant motion takes place;

2.    Confirming that the aforesaid interlocutory judicial sale of the Real Property to the Purchaser or her written nominee, for the price of $1,305,000.00, is just and proper under the circumstances unless a bona fide offer is made after publication which guarantees at least ten percent over the price offered in the interlocutory judicial sale;

3.    Authorizing and directing HCFCU and/or the USMS to execute and deliver a conveyance of the Real Property to the Purchaser or her written nominee, whose bid is confirmed by this Honorable Court for the consideration set forth above or any amount as this Court determines to be a reasonable, just, and proper amount under the circumstances, upon payment of the purchase price and payment of expenses of conveyancing;

4.    Allowing and ordering that the Real Estate Agent be paid for her proper expenses and a reasonable Real Estate Agent's fee;

5.    Authorizing and directing that escrow (which has been opened at Title Guaranty of Hawaii, Inc.) pay the funds remaining to HCFCU in accordance with the Interlocutory Order (such as reasonable costs incurred in connection with the maintenance, repair, marketing and sale of the Real Property, cost of appraisals, real property taxes due and unpaid, insurance costs (if any), escrow fees, advances and late charges (if any), document recording fees not paid by the Purchaser, title fees and county transfer taxes, and, that upon filing proper receipts for all disbursements so ordered, discharging the Real Estate Agent from all other responsibility and obligation in the Real Property;

6.    Authorizing and directing the distribution of the sale proceeds to HCFCU in partial satisfaction of that certain Note in the amount of $1,040,000.00 dated September 6, 2016 (the "Note"), together with any accrued interest, late charges, and expenses.  The Note is secured by that certain Mortgage dated September 6, 2016, which was recorded in the Bureau of Conveyances of the State of Hawaii as Document No. A-61010206;

7.    In the event that the proceeds of the interlocutory judicial sale of the Real Property are insufficient to pay all amounts due on the Note and the Mortgage, HCFCU may seek a deficiency judgment against Defendants LOUIS MAHINA KEALOHA and KATHERINE ELIZABETH KEALOHA, jointly and severally;

8.   The net proceeds from the interlocutory judicial sale of the Real Property, after certain payment is made to the USMS and HCFCU, will be substituted for the above-described property ("substitute res") and held in an interest bearing account with the Clerk of the Court for the District of Hawaii pending final judgment in this action;

9.   Permitting the Real Estate Agent to dispose of any abandoned personal property found in Real Property in a reasonable matter at her discretion; and

10.  Entering as a final judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, any order or judgment rendered herein insofar as there is no just reason for delay.

DATED: Honolulu, Hawaii, February 15, 2019.


_/s/ Jonathan W.Y. Lai_
JONATHAN W.Y. LAI
Attorney for Interested Party
HAWAII CENTRAL FEDERAL CREDIT UNION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM NO. 18-00068 JMS-RLP |
| Plaintiff, | Related Case Nos. 18CV00108-LEK-KJM; 17CR00582-JMS-RLP) |
| vs. | |
| KATHERINE P. KEALOHA (1), LOUIS M. KEALOHA (2), | DECLARATION OF HEIDI HO; EXHIBITS 1-3 |
| Defendants. | |

<u>DECLARATION OF HEIDI HO</u>

I, HEIDI HO, declare and state as follows:

1.   I a Real Estate Agent with Elite Pacific Properties, LLC.

2.   I make this Declaration based on my personal knowledge and am competent to testify as to the matters stated herein.

3.   As set forth in that certain Order Granting the United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture filed September 27, 2018 (the "Interlocutory Order"), this Court appointed Declarant the Real Estate Agent to handle the sale of the real and personal property described therein and situated at 7014 Niumalu Loop, Honolulu, Hawaii 96825, Tax Map Key No. (1) 3-9-065-046 (the "Real Property").

4.     Pursuant to that certain Purchase Contract dated January 26, 2019, the Counter Offer dated January 26, 2019 and Amendment #1 to Purchase Contract (collectively, the "Contract"), Declarant has received a cash offer from Michael Regan McKenna (the "Purchaser") to purchase the Real Property for the price of ONE MILLION THREE HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($1,305,000.00) with no financing contingencies. A true and correct copy of the Contract is attached hereto as Exhibit 1 and made a part hereof.

5.     Pursuant to the terms of the Interlocutory Order, HCFCU intends to publish the terms of the highest and best contract of sale offered for the Real Property in the Star Advertiser, a newspaper of general circulation, at least ten days before the hearing on this instant motion take place.   A true and correct copy of the draft Notice Of Confirmation Hearing is attached hereto as Exhibit 2 and made a part hereof.

6.     Declarant requests that the Court grant the real estate commissions for Declarant's firm and the purchaser's broker's firm in the aggregate amount of 6% of the sales price pursuant to the terms of the Exclusive Right-to-Sell Listing Contract and the Cooperating Brokerage Firm's Separate Contract which are attached hereto as Exhibit 3 and made a part hereof.

I, HEIDI HO, do declare under penalty of law that the foregoing is true and correct.

DATED:   Honolulu, Hawaii, _____.

_____
HEIDI HO

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A



**PURCHASE CONTRACT**
Hawaii Association of REALTORS® Standard Form
Revised 12/17 (NC)   For Release 11/18



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

NAR CODE OF ETHICS: Buyer and Seller are aware that the National Association of REALTORS® holds its members accountable for their actions through a strict Professional Code of Ethics, which includes a grievance system to address complaints. Non-members are not held to the same standards as members, nor are they required to participate in the grievance system.

Reviewed by: **Don A. Persons (R), PB**   *Don A. Persons* [signature]   Gold Coast Real Estate, Inc.
Name of Principal Broker/Broker-in-Charge      Signature — 10424AA5F76341B...      Brokerage Firm

Reference Date: **January 26, 2019**

Property Reference or Address: **7014 Niumalu Loop, Honolulu, HI  96825-1636**

Tax Map Key: Div. __1__ /Zone __3__ /Sec. __69__ /Plat __065__ /Parcel __046__ /CPR __0000__ (if applicable).

**THIS PURCHASE CONTRACT BECOMES A LEGALLY BINDING CONTRACT FOR THE PURCHASE OF REAL ESTATE UPON EXECUTION BY THE PARTIES. READ IT CAREFULLY. HANDWRITTEN OR TYPED PROVISIONS IN THIS PURCHASE CONTRACT SHALL SUPERSEDE ANY PRINTED PROVISIONS IF THERE IS A CONFLICT. FILL IN ALL BLANKS. PARAGRAPHS PRECEDED BY CHECK-OFF BOXES ARE OPTIONAL AND MUST BE CHECKED TO BE MADE A PART OF THIS PURCHASE CONTRACT. WRITE "NA" IF NOT APPLICABLE.**

## SECTION A: AGENCY DISCLOSURE

A-1  **Agency.** Buyer and/or Seller in a real estate transaction in Hawaii may retain a real estate Brokerage Firm as their agent. In such case, Buyer and/or Seller is represented by the Brokerage Firm and all of its licensees. Hawaii law requires real estate licensees to disclose orally or in writing to Seller and/or Buyer whom the licensee represents. The form of representation may be one of the following:
　(a)  **Seller's Agent.** Brokerage Firm represents Seller only unless a disclosed dual agency exists. Seller's Agent owes the highest duties to Seller, including confidentiality, loyalty, and due care and diligence.
　(b)  **Buyer's Agent.** Brokerage Firm represents Buyer only unless a disclosed dual agency exists. Buyer's Agent owes the highest duties to Buyer, including confidentiality, loyalty, and due care and diligence.
　(c)  **Dual Agent.** Brokerage Firm represents both Buyer and Seller. This commonly occurs when licensees in the Brokerage Firm representing Seller have Buyer clients looking for types of property similar to Seller's property. In such event, the Brokerage Firm and all of its licensees represent both Buyer and Seller and are dual agents. Dual agents must remain neutral in negotiations and must not advance the interest of one party over the other. **A separate Dual Agency Consent Addendum is required under Hawaii law.**
　(d)  **No Agency Representation** (see Paragraph A-2 (d) below)

A-2  **Disclosure.**
　(a)  **Seller Representation:** Seller is represented by the Brokerage Firm _____ **Elite Pacific Properties, LLC** and all its licensees. Brokerage Firm is [ X ] is not [   ] a member of the National Association of REALTORS®.

　(b)  **Buyer Representation:** Buyer is represented by the Brokerage Firm _____ **Gold Coast Real Estate, Inc.** and all its licensees. Brokerage Firm is [ X ] is not [   ] a member of the National Association of REALTORS®.

　(c)  **Dual Agency Representation:** Seller and Buyer are represented by the Brokerage Firm **na** _____ and all its licensees. Brokerage Firm is [   ] is not [   ] a member of the National Association of REALTORS®. **A separate Dual Agency Consent Addendum is required.**

　(d)  **No Agency Representation:**
　[   ]  **Seller** is a Customer and is not represented by a Brokerage Firm.
　[   ]  **Buyer** is a Customer and is not represented by a Brokerage Firm.
　**It is recommended that Customers seek legal counsel prior to signing a Purchase Contract.**

　If requested, a licensee may present a Customer's Purchase Contract to Seller and report Seller's response. A licensee cannot, however, negotiate for or otherwise advise a Customer in the transaction.

　**Buyer and Seller acknowledge that oral or written disclosure relative to agency representation was provided to them before the signing of this Purchase Contract.**

_____ 1/26/2019
**BUYER'S INITIALS & DATE**                                  **SELLER'S INITIALS & DATE**

_____ 1/26/2019
**BUYER'S INITIALS & DATE**                                  SELLER'S INITIALS & DATE

Page 1 of 14

©Hawaii Association of REALTORS®
Purchase Contract
RR201 Rev. 12/17 (NC)

Gold Coast Real Estate Inc., 2863 Kalakaua Avenue Honolulu, HI 96815                Phone: (808)735-7001        Fax:                7014 Niumalu Loop,
Pat Ferraris                                   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT 1

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

## SECTION B: INITIAL EARNEST MONEY DEPOSIT RECEIPT

B-1 **Initial Earnest Money Deposit.** Received from _____Michael Regan McKenna_____ , the "Buyer," the sum of $_130,500.00_ in the form of _____uncashed personal check_____ as an initial earnest money deposit. The initial earnest money deposit shall be deposited with Escrow by the next business day after the Acceptance Date, or as otherwise agreed in writing by the parties.

Received by _Pat Ferraris_ (Signature of Broker or Salesperson)   Agent's name _____Pat Ferraris_____

Bus 808-735-7001   Fax 808-923-7723   Cell 808-735-7001   E-mail get2pat@mac.com

Brokerage Firm Gold Coast Real Estate, Inc.

Brokerage Firm Address 2863 Kalakaua Avenue #6, Honolulu, HI 96815

B-2 **Interest on Deposit(s).** Upon opening of Escrow, unless Buyer instructs Escrow otherwise, any interest on Buyer's deposits shall automatically accrue to the benefit of Escrow.

## SECTION C: ADDENDA

C-1 **Addenda.** The following addenda (forms), if checked, are attached to and made a part of this Purchase Contract. Fill in all blanks. Write "NA" if not applicable. Each attached addendum must be properly signed and initialed (as applicable).

[ na ] 1031 Exchange
[ na ] Agreement of Sale
[ x ] "As Is" Condition
[ x ] Distressed Property
[ na ] Dual Agency Consent
[ na ] Early Occupancy Agreement
[ na ] FHA Financing/Real Estate Certification
[ x ] Lead Based Paint
[ na ] Plain Language
[ na ] Purchase Money Mortgage

[ na ] Rental Agreement
[ na ] Residential Leasehold Property
[ na ] Short Sale
[ na ] Standard Oceanfront Property
[ na ] VA Financing
[ x ] Other Court Order(Q-4)
[ x ] Other Company Standard
[ na ] Other na
[ na ] Other na
[ na ] Other na

## SECTION D: OFFER TO BUY AND PURCHASE PRICE

D-1 **Offer to Buy.** Buyer offers to buy the Property described below on the terms and conditions contained in this Purchase Contract, and agrees that **this Purchase Contract shall be binding if accepted by Seller on or before:**

Date _____ Time _____ AM [ ] PM [ X ].

D-2 **Purchase Price.** The Purchase Price for the Property in U.S. dollars shall be paid as follows:

$ _____130,500.00_ Initial earnest money deposit from Paragraph B-1 above

$ _____ Additional deposit, if any, paid into Escrow on or before _____

$ _____1,174,500.00_ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing

$ _____1,305,000.00_ TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs)

$ _____ By way of _____

$ _____

$ _____1,305,000.00_ **TOTAL PURCHASE PRICE**

**Failure by Buyer to make any of the scheduled deposits as required by this Purchase Contract shall constitute a default, and Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-1.**

_MRM 1/26/2019_
BUYER'S INITIALS & DATE                    SELLER'S INITIALS & DATE

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     7014 Niumalu

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

## SECTION E: PROPERTY

E-1 **Description:** Tax Map Key: Div. __1__ /Zone __3__ /Sec. __69__ /Plat __065__ /Parcel __046__ /CPR __0000__ (if applicable). All of that [ x ] fee simple  [    ] leasehold Property situated at: 7014 Niumalu Loop, Honolulu, HI 96825-1636

described as follows: All that certain fee simple parcel of land of approximately 7,508 sq. ft. together with all improvements thereon including a 4 bed/3 bath dwelling with a cgarage and all appurtenances thereto.

The full legal description will be provided in the title report.

[ x ] E-2 **Inclusions.** Sale includes all built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, attached carpeting, and the following indicated items. Fill in all blanks. Write "NA" if not applicable:

| | | | |
|---|---|---|---|
| [ x ] Air Conditioner | [ na ] Dryer | [ na ] Photovoltaic System | [ na ] Security Alarm System |
| [ x ] Automatic Garage Door | [ x ] Existing Window | [ x ] Pool Equipment (All) | [ na ] Smoke Detectors |
| [ x ] Ceiling Fan | Coverings | [ x ] Range | [ x ] Solar Water System |
| [ x ] Dishwasher | [ na ] Microwave | [ na ] Range Hood | [ na ] TV Cable Outlet |
| [ x ] Disposal | [ na ] Microwave Hood | [ x ] Refrigerator | [ na ] Washer |
| [ x ] Other Book shelves, Lawn Sprinkler, 2 sets of keys | | | |

[ na ] E-3 **Inventory List.** Inventory of furnishings and/or additional inclusions (the "inventory list" in this paragraph) is: [ na ] attached [ na ] to be provided to Buyer by (date) _____ na _____ . If Seller does not provide the inventory list to Buyer within the specified time period, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3. If Buyer is not satisfied with the inventory list, Buyer may elect, within _____ (     ) days of receipt of the inventory list, to terminate this Purchase Contract pursuant to Paragraph O-2.

[ na ] E-4 **Exclusions.** The following items are specifically excluded: na

## SECTION F: CLOSING

F-1 **Closing.** For purposes of this Purchase Contract, "closing" shall be the date when all appropriate conveyance documents are recorded. Buyer and Seller agree to promptly execute appropriate or customary documents when requested by Escrow.

F-2 **Scheduled Closing Date.** The "Scheduled Closing Date" shall be   completion of Court Confirmation Hearing (to be scheduled) .

If the Scheduled Closing Date falls on a day the Bureau of Conveyances of the State of Hawaii is closed, closing will be on the next day when documents can be recorded.

F-3 **Change to the Scheduled Closing Date.**
*(Choose Paragraph F-3(a) OR F-3(b))*

[ x ] (a) **Extensions. There is no automatic right to extend.** If, for reasons beyond Buyer's or Seller's control, a party cannot perform its obligation to close by the Scheduled Closing Date, then such party may extend the Scheduled Closing Date up to _____Ten_____ ( 10 ) days by delivery of written notice to the other party prior to the Scheduled Closing Date. Thereafter, **time shall be of the essence**, and if a party fails to perform by the extended Scheduled Closing Date, such party shall be considered in default and the other party may elect to terminate this Purchase Contract pursuant to Paragraph O-1. The extended Scheduled Closing Date may not be further extended unless Buyer and Seller agree in writing. This provision relates only to the extension of the Scheduled Closing Date.

[ na ] (b) **Time is of the Essence.** Time is of the essence and the Scheduled Closing Date may not be extended unless Buyer and Seller agree in writing.

F-4 **Escrow.** This transaction shall be escrowed by: _____Title Guaranty Kahala_____ ("Escrow").
Roxanne Olayan                    808-733-6020
                                  Fax: 808-733-6024

The parties shall provide to Escrow in a timely manner fully executed copies of this Purchase Contract and any addenda, amendments, and documents which are required by Escrow.

F-5 **Prorations and Closing Adjustments.** Based on a thirty (30) day proration, Escrow shall prorate the following, if applicable, as of the date of closing: real property tax, lease rents, interest on assumed obligations, mortgage and other insurance premiums, tenant rents, maintenance, private sewer, marina, and/or association fees, and _____ na _____ . When applicable, Escrow shall charge to Seller and credit to Buyer the amount of any tenant's security deposit.

F-6 **Closing Costs.** The following is a list of customary closing costs (including Hawaii General Excise Tax where applicable), and **is not intended to be all-inclusive.** If HUD requirements apply, Buyer and Seller are aware that customary closing costs may be reflected differently on the HUD statement, but the net result will be the same. Escrow may charge the appropriate party other closing costs as directed by the parties.

M R 1/06/2019
BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®

RR201 Rev. 12/17 (NC) For Release 11/18
7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

| Charge to Buyer, if applicable: | Charge to Seller, if applicable: |
|---|---|
| 40% of the premium for standard coverage title insurance and any additional costs relating to the issuance of extended coverage policy (including a lender's policy) | 60% of the premium for standard coverage title insurance |
| | Cost of drafting of conveyance documents and bills of sale |
| Cost of drafting mortgage and note or agreement of sale | Cost of obtaining Seller's consents |
| Cost of obtaining Buyer's consents | 50% of Escrow fee |
| Buyer's notary fees | Seller's notary fees |
| All recording fees except documents to clear Seller's title | Cost of required staking or survey |
| 50% of Escrow fee | Recording fees to clear Seller's title |
| Condominium and Association ownership transfer fees | FHA or VA mandatory closing fees |
| FHA or VA discount points and any mortgage fees | Conveyance tax (subject to Paragraph F-7) |
| | FIRPTA (Federal withholding tax)/HARPTA (State withholding tax) |

F-7 **Notice on Conveyance Tax.** Pursuant to Conveyance Tax Law, Chapter 247, Hawaii Revised Statutes, a higher conveyance tax must be paid if Buyer is ineligible to file a county real property tax homeowner's exemption on the Property. [CHECK ONE] Buyer declares that Buyer is purchasing the Property [ X ] as Buyer's principal residence [   ] as other than Buyer's principal residence. If the selection changes from Buyer's "principal residence" to "other than Buyer's principal residence", Buyer shall provide written notification to Seller and Escrow no later than fifteen (15) days prior to the Scheduled Closing Date. Should Buyer make such change, Buyer shall be charged at closing an amount equal to the difference in the conveyance tax.

F-8 **Assessments.** An assessment is defined as any obligation (not including prorations and closing adjustments in Paragraph F-5) levied against the Property by a homeowner's association, governmental body, or any other entity with a legal right to assess. Assessments, if any, shall be charged as follows:
(a) Any lump sum assessments levied against the Property prior to the Acceptance Date shall be paid by [ x ] Seller or assumed by [ na ] Buyer. Exceptions, if any: na
(b) Any assessments levied against the Property prior to the Acceptance Date which are being paid in installments shall be paid in full by [ x ] Seller or [ na ] pro-rated by Escrow as of the date of closing.
Exceptions, if any: na
(c) If a new assessment is authorized against the Property between the Acceptance Date and the Scheduled Closing Date, Seller shall make appropriate disclosure under Paragraph I-2 and such assessment shall be paid as Buyer and Seller shall agree. If Buyer and Seller cannot reach an agreement within five (5) days of both parties being aware of the new assessment (unless Buyer has agreed to pay or assume the assessment), either party may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

F-9 **Consents.** Buyer and Seller may be required to obtain consents of lessors, homeowner or condominium associations, co-op boards, existing lenders, vendors, or other entities. Buyer or Seller shall cooperate and take all reasonable action to obtain such consents.

F-10 **Risk of Loss.** Risk of loss passes to Buyer upon closing or Buyer's possession of the Property, whichever occurs sooner.

F-11 **Possession.** Seller shall give Buyer possession of the Property, at closing or _____ Recordation _____ .

F-12 **Keys to the Property.** Seller, at Seller's sole cost and expense, shall provide Buyer at closing with all existing, but at least one (1) set of, functioning keys/controls (entry, interior, mail box, pool, security, parking area, and all garage door openers). **Buyer shall pay all deposits which may be required for any of these items.** Unless Buyer and Seller agree otherwise, all keys/controls and garage door openers shall be released to Buyer only after Escrow has verbally notified the parties and/or their agents that the closing has occurred. It is strongly recommended that Buyer re-key entry door lock(s) and re-program garage door openers upon change of ownership.

## SECTION G: TITLE

G-1 **Preliminary Title Report.** Escrow is instructed to promptly order a Preliminary Title Report on the Property for delivery to Seller, Buyer, and their respective agents.

G-2 **Title.** Seller agrees to convey the Property with warranties vesting marketable title in Buyer, free and clear of all liens and encumbrances EXCEPT: easements, covenants, conditions, reservations, and restrictions now of record, including but not limited to, those documents relating to a condominium, cooperative, PUD, subdivision, homeowner's/community association, or cluster development; and na

**(a) Buyer's Review of Preliminary Title Report.** If Buyer is not satisfied with the Preliminary Title Report, Buyer may elect, within _____ Seven _____ ( 7 ) days of Buyer's receipt of the Preliminary Title Report, to terminate this Purchase Contract pursuant to Paragraph O-2.

[ x ] **(b) Title Defect(s).** If Buyer elects not to terminate under Paragraph G-2 (a) and if the Preliminary Title Report or any other report or any updates to such reports reveal that title cannot be delivered by Seller in accordance with Paragraph G-2, then the Seller shall make appropriate disclosures under Paragraph I-2, and Seller shall use reasonable efforts to cure any title defect(s). If, within _____ Seven _____ ( 7 ) days following receipt of any reported title defect(s) Seller does not cure such title defect(s), Buyer may elect to purchase the Property with such title defect(s) and Seller shall not be liable for such title defect(s). If Buyer elects not to accept the Property with such title defect(s), either Buyer or Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

_____ 1/26/2019
BUYER'S INITIALS & DATE

_____
SELLER'S INITIALS & DATE

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

G-3 **Vesting and Tenancy.** Title shall vest in Buyer(s) as follows (provide full legal names and marital status for individuals, trust information, name and form of business entity, etc.) <u>Michael Regan McKenna</u>

Tenancy shall be <u>To be determined</u>
If Buyer has not yet determined the vesting and/or tenancy, Buyer shall provide Escrow in writing with the selected names and tenancy within _____15_____ days [fifteen (15) days if left blank] after the Acceptance Date.

### SECTION H: CASH FUNDS AND FINANCING CONTINGENCY

*(Choose Paragraph H-1 OR Paragraph H-2)*

[ x ] H-1 **No Contingency on Obtaining Cash Funds.** Buyer represents that there are no contingencies on Buyer's obtaining the necessary cash, including all deposits, down payment, and closing (including loan) costs to buy the Property (collectively "Cash Funds"). Buyer shall neither delay nor extend the Scheduled Closing Date to obtain the Cash Funds.
[ x ] (a) **Verification of Cash Funds.** Buyer shall provide evidence that is satisfactory to Seller of the availability of Cash Funds within _____One_____ ( 1 ) days after the Acceptance Date. If Buyer is unable or fails to provide such evidence within the specified time period, Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

[ na ] H-2 **Contingency on Obtaining Cash Funds.** In reference to the balance of down payment or balance of purchase price, if all cash, Buyer's obligation to purchase the Property is contingent upon the following: <u>na</u>

(a) Buyer shall provide evidence that is satisfactory to Seller of Buyer's ability to obtain balance of down payment (or balance of purchase price if all cash) within _____ ( na ) days after the Acceptance Date.
(b) If Buyer fails to provide Seller with such satisfactory evidence within the specified time period in Paragraph H-2(a), Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.
(c) If Seller is satisfied with evidence timely provided by Buyer in Paragraph H-2(a), but Buyer is unable to ultimately deposit the balance of down payment (or balance of purchase price if all cash) into Escrow in accordance with Paragraph D-2, then:
   (i) Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2; or
   (ii) if Buyer elects not to terminate this Purchase Contract under Paragraph H-2(c)(i), then Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

[ na ] H-3 **Financing Contingency.** Buyer's obligation to purchase the Property is contingent upon Buyer obtaining the loan described in Paragraph D-2 ("Mortgage Loan").
(a) If Buyer does not obtain a conditional loan commitment letter, or is unable to satisfy all conditions of the loan commitment letter, within the time periods specified in Paragraph H-4, then Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2.
(b) If Buyer has met all conditions of the loan commitment letter but lender fails to fund prior to closing, then Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3.
(c) Buyer may:
   (i) waive this Financing Contingency and purchase the Property on an all cash basis, or
   (ii) increase the amount of CASH FUNDS in order to satisfy all of Lender's requirements for funding the loan.
If Buyer elects either of these two options, Buyer shall promptly provide written notice of such election to Seller, together with evidence of Buyer's ability to perform PRIOR to expiration of the time periods stated in Paragraph H-4.

[ na ] H-4 **Buyer's Obligations.** Buyer shall act in good faith to obtain the Mortgage Loan as described in Paragraph D-2. Buyer is obligated to submit a completed and signed application for the Mortgage Loan with required fees by
(a) _____ na _____ , and to deliver to Seller a Pre-Qualification Letter based upon a review of Buyer's credit report and items in the loan application by
(b) _____ na _____ . The Pre-Qualification Letter shall state that Buyer is creditworthy and qualified for the Mortgage Loan subject to Lender's requirements. However, Buyer may substitute a Pre-Approval Letter based upon automated underwriting or underwriter findings. Buyer is obligated to deliver to Seller by
(c) _____ na _____ , a Conditional Loan Commitment Letter based upon underwriter approval and review of property appraisal which shall state that the loan has been approved and Lender will make the loan under specified conditions. Buyer shall deliver to Seller written evidence that Buyer has satisfied all conditions specified by Lender except conditions which cannot be satisfied by Buyer until closing, such as payoff of Buyer's debt or receipt by Buyer of proceeds from the sale of Buyer's property, no later than (d) _____ (____) days after issuance of such commitment letter. Buyer authorizes Seller and Seller's Brokerage Firm to contact Buyer's Lender and Escrow regarding the status of Buyer's Mortgage Loan, including commitment letter and satisfaction of conditions.

H-5 **Seller's Right to Cancel.** Should Buyer fail to satisfy any obligation under Paragraphs H-2, H-3, and/or H-4 within the time periods specified, Seller may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

PT 1/28/2019
<u>BUYER'S INITIALS & DATE</u>

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                                    RR201 Rev. 12/17 (NC)  For Release 11/18
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    7014 Niumalu

H-6 **Confidentiality.** Seller and Brokerage Firms shall hold in strict confidence any information provided by Buyer as evidence for verification of cash funds and any other financial information provided under Section H.

## SECTION I: SELLER'S OBLIGATION TO DISCLOSE AND DISCLOSURE STATEMENT

I-1 **Seller's Obligation to Disclose.** Pursuant to Hawaii Revised Statutes Chapter 508D (for the sale of residential real property), Seller is obligated to fully and accurately disclose in writing to Buyer any fact, defect, or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person (a "material fact"). No later than _____ Ten _____ ( 10 ) days [ten (10) days if left blank] from the Acceptance Date, Seller shall provide Buyer with a written Disclosure Statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure Statement shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of Seller; (ii) can be observed from visible, accessible areas; or, (iii) are required to be disclosed under Section 508D-4.5 and Section 508D-15 of the Hawaii Revised Statutes. Seller acknowledges and agrees that the disclosure requirements under Chapter 508D are in addition to all other disclosure obligations of Seller required by law relating to the sale of residential real property. Furthermore, Seller's obligations under Hawaii Revised Statutes Chapter 508D, as amended, regarding mandatory disclosure of all documents pertaining to the Property are set forth in Section M-1 below.

I-2 **Seller's Obligation Upon Later Discovered Information.** Under Chapter 508D, if after Seller delivers a Disclosure Statement to Buyer and prior to closing, Seller becomes aware of information that was not previously disclosed or that makes any statement in the Disclosure Statement inaccurate, and said information directly, substantially, and adversely affects the value of the Property (called "Later Discovered Information" in this paragraph), then Seller shall provide an Amended Disclosure Statement (a written statement prepared by Seller or at Seller's direction) to Buyer within _____ Ten _____ ( 10 ) days [or ten (10) days if left blank] after the Seller's discovery of the inaccuracy, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the Property. Buyer's rights upon discovery of Later Discovered Information and/or receipt of the Amended Disclosure Statement are found in Paragraph I-4. The information described in this paragraph Later Discovered Information may arise from many sources, including but not limited to, title report(s), inspection report(s), survey report, termite inspection report, condominium, cooperative, subdivision, PUD, homeowner's/planned community documents, and rental property matters.

I-3 **Seller's Disclosure is Not a Warranty.** The Disclosure Statement is NOT a warranty of any kind. Under Chapter 508D, the Disclosure Statement shall not be construed as a substitute for any expert inspection, professional advice, or warranty that Buyer may wish to obtain.

I-4 **Buyer's Rights and Obligations Upon Receipt of Disclosure Statement or Amended Disclosure Statement.**
(a) Upon receipt of the Disclosure Statement or Amended Disclosure Statement, Buyer shall provide Seller with a written acknowledgment within _____ Ten _____ ( 10 ) days of receipt.
(b) Upon receipt of the Disclosure Statement or Amended Disclosure Statement, Buyer shall have _____ Ten _____ ( 10 ) days [or fifteen (15) days if left blank] to examine the Disclosure Statement or Amended Disclosure Statement and to rescind this Purchase Contract. Should Buyer elect to rescind this Purchase Contract, Buyer must give Seller or Seller's Agent written notice of such rescission within the specified time period and the termination provisions of Paragraph O-2 shall apply.

I-5 **Buyer's Rights and Obligations Upon Later Discovered Inaccurate Information.** Upon discovery by Buyer that the Disclosure Statement or Amended Disclosure Statement fails to disclose a material fact or contains an inaccurate assertion that directly, substantially, and adversely affects the value of the Property, and if Buyer was not aware of the foregoing failure or inaccuracy, Buyer may elect to rescind this Purchase Contract within the earlier to occur of fifteen (15) days of the discovery by Buyer of the failure or inaccuracy, or _____ Ten _____ ( 10 ) days [or fifteen (15) days if left blank] of the receipt of an Amended Disclosure Statement correcting the failure or inaccuracy. If Buyer elects to rescind this Purchase Contract, Buyer must give Seller or Seller's Agent written notice of such rescission within the specified time period and the termination provisions of Paragraph O-2 shall apply. This Paragraph does not change Seller's obligations under Paragraph I-2.

I-6 **Buyer's Remedies Regarding Mandatory Seller's Disclosure Statement.** If Seller fails to comply with Paragraphs I-1 or I-2, Buyer may elect to complete the purchase of the Property. When Buyer is provided a Disclosure Statement or Amended Disclosure Statement and Buyer decides to rescind this Purchase Contract, Buyer shall not be entitled to any damages but shall be entitled to the return of all deposits, and in such case, Buyer's deposits shall be immediately returned. If Seller negligently fails to provide the required Disclosure Statement or Amended Disclosure Statement, Seller shall be liable to Buyer for the amount of actual damages suffered as a result of Seller's negligence. A court may also award the prevailing party attorneys' fees, court costs, and administrative fees. Buyer's right to rescind this Purchase Contract under Paragraphs I-4 and I-5 shall not apply after the Scheduled Closing Date. Any action to rescind this Purchase Contract under Paragraphs I-4 and I-5 shall commence prior to the Scheduled Closing Date.

I-7 **Seller's Obligation to Disclose on Non-Residential Real Property.** Seller agrees to comply with disclosure requirements under Hawaii law for the sale of non-residential real property.

I-8 **General Disclosures.** Paragraphs I-8(a) through I-8(i) describe general issues which could affect the Property. Buyer should make appropriate inquiry regarding these issues as part of Buyer's inspection right under Paragraph J-1.
(a) **Governmental Restrictions Disclosure.** The Property is subject to all applicable federal, state and county laws, statutes, regulations, codes, ordinances, rules, procedures, restrictions, and requirements, including, but not limited to, those concerning land use, zoning, building permits and requirements, setbacks, height limitations, and allowable uses.
(b) **Asbestos Disclosure.** Asbestos materials are hazardous to one's health, particularly if asbestos fibers are released into the air and inhaled. In the past (before 1979, but possibly since) asbestos was a commonly used insulation material in heating facilities and in certain types of floor and ceiling materials, shingles, plaster products, cement and other building

_initials_ V 1/20/2019

BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                RR201 Rev. 12/17 (NC)  For Release 11/18
                                                                   7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

materials. Buyer is aware that Buyer should make appropriate inquiry into the possible existence of asbestos in, on, or at the Property. Structures having "popcorn" or "cottage cheese" type ceilings may contain asbestos fibers or asbestos-containing material. Such ceilings should not be disturbed since it could release asbestos fibers in the air. Any disturbance should be done only by licensed abatement contractors.

(c) **Hazardous Waste and Toxic Substances Disclosure.** Federal and state laws place strict liability on property owners for dangers caused by hazardous waste management and may require that such owners pay for the cost of the cleanup of hazardous substances and other toxic substances. Buyer is aware that Buyer should make appropriate inquiries into the current and past use of the Property and should seek an environmental assessment to ascertain the possible existence of such hazardous substances or materials on or under the Property. Buyer is aware Buyer may have liability for hazardous substances located on or under the Property even if Buyer did not cause such substances to be on or under the Property.

(d) **Wastewater Disposal Disclosure.** The State of Hawaii Department of Health and the individual counties may require upgrades from cesspools to septic tanks or connection of new systems in certain situations. Additionally, the Federal Environmental Protection Agency ("EPA") has issued regulations requiring that all "large capacity cesspools" be closed and converted to EPA approved systems by April 5, 2005 or face substantial penalties. Buyer should contact the State of Hawaii Department of Health, the EPA, and the individual counties for additional information.

(e) **Mold Disclosure.** Mold and/or other microscopic organisms may exist in, on, or at the Property. Molds are simple, microscopic organisms, present everywhere. Mold spores may cause health problems. Mold will grow and multiply whenever sufficient moisture, temperature and organic material are present. Brokerage Firms, brokers, and agents are not qualified to inspect the Property for mold or to make recommendations or determinations concerning possible health or safety issues. More information is available at the EPA's website.

(f) **Sex Offender Registration ("Megan's Law").** Hawaii has enacted a law requiring sex offenders to register with the Attorney General's office. Seller makes no representation as to whether or not the public will have access to this information. Neither Seller nor Brokerage Firms are required to obtain information regarding sex offenders.

(g) **Flood Zone.** The Property may be located in an area which is a Flood Hazard Zone. Lenders may require Buyer to purchase flood insurance in order to obtain any loan secured by the Property. Buyer is advised that flood insurance premiums may increase significantly based upon FEMA flood zone designations. Buyer is further advised to consult with Buyer's insurance agent. In addition, various governmental agencies have special requirements for obtaining building permits for properties located in Flood Hazard Districts. Buyer should contact the National Flood Insurance Office for more information regarding flood zones and the appropriate agencies concerning building permits.

(h) **Lead-Based Paint.** Federal Law requires that the seller of any interest in residential real property must provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. Residential dwellings built prior to 1978 may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning also poses a particular risk to pregnant women. More information is available at the EPA website.

(i) **Lead-Based Paint Renovation, Repair, and Painting.** In residential real property, the EPA under the Toxic Substance Control Act issued a rule to address lead-based paint hazards created by renovation, repair, and painting activities that disturb lead based paint. These rules establish requirements for training renovators, other renovation workers, dust sampling technicians, and renovation firms; for accrediting providers of renovation and dust sampling technician training to meet the new Federal requirements effective as of April 22, 2010, or substantial penalties may apply. The rule applies to paid contractors working in pre-1978 housing (residential, public or commercial buildings and all rental housing), child care facilities and schools with lead-based paint. Contractors include home improvement contractors, maintenance workers in multi-family housing, painters, and other specialty trades. More information is available at the EPA website.

### SECTION J: INSPECTION, MAINTENANCE AND WARRANTIES

J-1 **General Inspection of Property Contingency.** At Buyer's sole cost and expense Buyer shall have the right to (personally or by any expert, professional, or other representatives of Buyer's choice): (a) inspect the Property or any portion thereof; (b) inspect all major appliances and fixtures (plumbing, electric, and gas) included in the sale; (c) inspect all public records relating to the Property and its use; and (d) review all matters described in Paragraph I-8. Seller shall provide Buyer and Buyer's representative(s) access to the Property for inspection(s), during reasonable hours with reasonable prior notice to Seller. The obligation of Buyer to purchase the Property is contingent upon Buyer's approval of inspections and review of all matters described in Paragraph I-8 within _____ ( 10 ) days after the Acceptance Date. All inspections and reviews must be completed within this time period. Seller agrees that the property inspection requires that the utilities be turned on, including propane, if applicable, at Seller's expense. If Buyer disapproves of the inspection or review results within the specified time period, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2.
**If Buyer fails to make an election in writing to terminate this Purchase Contract within the specified time period, then Buyer will have waived this contingency.**

J-2 **Recommendation Regarding Home Inspection.** It is strongly recommended that Buyer obtain a home inspection as well as inspections in specialized areas beyond the scope of the standard home inspection service.

[ x ] J-3 **Property Condition Maintenance and Final Walk Through.** Seller shall maintain the interior and exterior of the Property in the same condition and repair as when Buyer inspected the Property pursuant to Paragraphs J-1 and J-2, or as otherwise repaired and/or corrected as agreed to in writing between Buyer and Seller. If the Property has not been maintained, or repaired and/or corrected as agreed to in writing between Buyer and Seller, then the provisions of

DS
ℳ P 1/16/2019
BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                 RR201 Rev. 12/17 (NC)  For Release 11/18
                                                                  7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

Paragraph J-4 shall apply. Buyer and/or Buyer's representative shall have the right to conduct a final walk through of the Property no later than _____**Three**_____ ( **3** ) days prior to closing: (a) to confirm that the Property is in the same condition and repair that it was on the date that Buyer inspected the Property pursuant to Paragraphs J-1 and J-2; and/or (b) to inspect any repairs and/or corrections made by Seller, as agreed to in writing between Buyer and Seller. Seller understands that the final walk through requires that the utilities be on, including propane, if applicable, at Seller's expense. If Buyer and/or Buyer's representative fails to conduct the final walk through within the specified time period, Buyer will have waived this right.

J-4 **Withheld/Collected Funds for Repairs/Maintenance.** If Seller has failed to maintain the Property pursuant to Paragraph J-3, or has not completed any agreed upon repairs and/or corrections no later than _____**Three**_____ ( **3** ) days prior to closing, then the parties agree that 150% of the estimated cost shall be withheld/collected from Seller and retained in Escrow until completion. Applicable Escrow fees may apply. All bills for maintenance and repairs/corrections will be paid through Escrow. Any balance remaining after completion of all maintenance and repairs/corrections shall be returned to Seller; provided, however, that if maintenance and repairs/corrections are not completed within _____**One**_____ ( **1** ) days after closing, said funds will be disbursed to Buyer. Should Escrow require the parties to sign a formal withholding and disbursement agreement confirming the agreement of Buyer and Seller, then all parties agree to immediately execute Escrow's withholding and disbursement agreement upon request.

J-5 **No Continuing Warranty.** Buyer understands that no continuing warranty after closing regarding the interior or exterior of the Property is expressed or implied.

J-6 **Home Warranty Programs.** Buyer understands that Buyer may obtain from a third party for a fee, home warranties covering appliances, electrical and/or gas and plumbing fixtures and equipment and other items included with the Property. If such a home warranty is available, it may be obtained at Buyer's expense from any provider of Buyer's choice.

It is strongly recommended that Buyer obtain a home warranty.

[ x ] J-7 **Existing Warranties, Plans, etc.** Seller shall provide to Buyer at closing, if such items are in Seller's possession: (a) any warranty documents covering the improvements and all other property being sold; (b) instruction booklets covering the appliances being sold; and (c) all originals and copies of blueprints, specifications, and copies of architectural or engineering drawings relating to the Property. Buyer understands that: (a) any warranties delivered by Seller to Buyer represent obligations of other persons or entities, not Seller; (b) the warranties and other documents are provided for informational purposes only; (c) such items may not reflect improvements as built; (d) Seller does not promise that any such warranties are transferable to Buyer; and (e) Buyer must contact the providers of such warranties to determine whether the warranties are transferable to Buyer.

[ x ] J-8 **Removal of Items from Property.** No later than _____**Four**_____ ( **4** ) days prior to closing, Seller shall dispose of all unwanted personal belongings, trash, and junk, both inside and outside any improvements. Should Seller not comply within the stated timeframe, the provisions of Paragraph J-4 shall apply.

[ x ] J-9 **Cleaning.** No later than _____**Four**_____ ( **4** ) days prior to closing, Seller shall, at Seller's expense, have the interior of the improvements on the Property cleaned. Cleaning shall include all appliances, cupboards, drawers, floors, jalousies, screens and windows. Seller shall also have the interior carpets professionally shampooed. Should Seller not comply within the stated timeframe, the provisions of Paragraph J-4 shall apply.

[ na ] J-10 **Pet Related Treatment.** Seller shall, at Seller's expense, remove any pets from the Property, and after carpets have been professionally shampooed pursuant to Paragraph J-9, have the interior of the Property treated for fleas/ticks by a licensed pest control operator. If Seller does not have the Property treated for fleas/ticks by a licensed pest control operator as required, then Seller agrees that an amount equal to 150% of the estimated cost of treating the Property for fleas/ticks by a licensed pest control operator shall be held in Escrow until completed; provided however, that any remaining funds held shall be automatically disbursed to Buyer by Escrow if the Property is not treated for fleas/ticks by a licensed pest control operator within _____ ( ____ ) days after closing. All licensed pest control operator treatment shall be paid through Escrow and any balance remaining after completion of professional treatment shall be returned to Seller.

### SECTION K: STAKING AND SURVEY
**(This may/may not apply to condominiums or cooperatives.)**
*(Choose Paragraph K-1 OR Paragraph K-2)*

[ na ] K-1 **Staking (Boundary Points).** No later than _____ ( ____ ) days prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a land surveyor licensed in the State of Hawaii stake the Property. Buyer may have a land surveyor licensed in the State of Hawaii verify the accuracy of the location of the boundary points prior to closing. Seller shall reimburse Buyer for the cost of this verification at closing ONLY if the location of the original stakes proves to be inaccurate. Buyer understands that staking is not the same type of survey as described in Paragraph K-2, and does not confirm the accuracy of the description or the land area of the Property, or the existence or absence of encroachments onto the Property or onto a neighboring property. No map is required.

[ x ] K-2 **Survey.** No later than _____ ( **0** ) days prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a land surveyor licensed in the State of Hawaii: (a) survey the Property even if the boundary points are visible and; (b) if improvements exist along the Property line, provide Buyer with a map (with surveyor's stamp) and accompanying report to show the perimeters of the Property and the location of any improvements in the vicinity of the perimeter Property lines. The survey and map may not address whether improvements on the Property are in compliance with State and/or County requirements, and/or subdivision covenants, conditions, and restrictions.

K-3 **Boundary Encroachment.** If encroachment(s) onto an adjoining property or onto the Property by an adjoining property is revealed or discovered, Buyer may elect to accept (in writing) such existing encroachment(s) at its current location, within

_____
**BUYER'S INITIALS & DATE**

_____
**SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®

RR201 Rev. 12/17 (NC) For Release 11/18
7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

_____Ten_____ ( 10 ) days of discovery, or Buyer shall instruct Seller to, and Seller shall use Seller's reasonable efforts to: (a) remove such encroachment(s) if acceptable to Buyer at Seller's and/or the adjoining owner(s)' sole cost and expense; or (b) obtain encroachment agreement(s) at Seller's and/or the adjoining owner(s)' sole cost and expense, with the affected adjoining owner(s) which is acceptable to Buyer, and if neither (a) nor (b) occurs within _____Ten_____ ( 10 ) days prior to closing, Buyer may accept the encroachment(s) or elect to terminate this Purchase Contract pursuant to Paragraph O-3. If in remedying the revealed encroachment, the encroachment is partially or totally removed, then Seller shall be responsible for the correction of the survey (if Paragraph K-2 was checked) to reflect any changes in the revealed encroachment no later than _____Ten_____ ( 10 ) days prior to closing. Under Chapter 669 Hawaii Revised Statutes (de minimis), certain tolerances for discrepancies involving improvements built along the boundary line of the Property for specific zonings are established, and such improvements shall not be considered encroachments.

K-4   **Staking/Survey Discrepancies.** In the event the staking or survey report indicates there are visible discrepancies concerning the boundary points and/or improvements along the Property line that directly, substantially and adversely affect the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

## SECTION L: TERMITE PROVISIONS

L-1   **Scope of Termite Inspection Report.** Buyer is aware that a termite inspection report may only address visible evidence of active ("live") termite infestation and visible damage in accessible areas. It may not address termite infestation and/or damage occurring in inaccessible areas of the improvements described in this Purchase Contract. Seller agrees to disclose in writing, any prior and/or current termite infestation and/or damage of which Seller is aware.

[ x ] L-2   **Termite Inspection Contingency.** Within _____Seven_____ ( 7 ) days of the Acceptance Date, [ x ] Buyer [   ] Seller shall select a licensed pest control operator ("Operator") to conduct an inspection and issue a termite inspection report ("inspection report") on the Property's improvements. Should such party fail to select an Operator and notify the other party in writing of the name of an Operator within the time stated, the other party shall select an Operator within five (5) days thereafter. Seller shall promptly order the inspection and inspection report from the selected Operator. The inspection report shall be delivered to Buyer by _____10 days prior to close_____ (time period/date).
[ x ] Buyer [   ] Seller shall pay for the inspection and the issuance of the inspection report at a cost not to exceed $ actual cost_____ . If Buyer's Lender requires an updated inspection report prior to funding Buyer's loan, Buyer shall pay the cost of the updated inspection report.

If the inspection report indicates visible evidence of active ("live") termite infestation, Seller shall order and pay for recommended treatment for that condition (not to include preventive maintenance). Buyer and Seller understand such treatment may cause damage to plants. The obligation of Buyer to purchase the Property is contingent upon the delivery to Buyer within the time specified above of an inspection report stating there is no visible evidence of active ("live") termite infestation, or the treatment of such improvements by no later than five (5) days prior to the Scheduled Closing Date. If the contingency is not fulfilled within the time period(s) specified, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-3.

L-3   **Termite Damage.** In the event the inspection report indicates there is visible damage to the improvements caused by termite infestation, and said damage directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

L-4   **Latent or Hidden Termite Infestation and/or Damage.** Buyer acknowledges that there may be latent or hidden termite infestation and/or damage of which Seller and Seller's Brokerage Firm are not aware and for which Seller and Seller's Brokerage Firm will not be held liable. Seller, Seller's Brokerage Firm, Buyer's Brokerage Firm, and their respective licensees make no representations or warranties that the Property is free from latent or hidden termite infestation and/or damage. Buyer and Seller release Brokerage Firms and their respective licensees from any and all liability with regard to any latent or hidden termite infestation and/or damage.

## SECTION M: CONDOMINIUM/COOPERATIVE/SUBDIVISION/PUD/ HOMEOWNER/COMMUNITY ASSOCIATION

M-1   **Contingency on Documentation Approval.** Seller shall provide applicable documentation to Buyer as set forth below. Buyer's obligation to purchase the Property is contingent upon Buyer's review and approval of documents provided below.

| | |
|---|---|
| Approved Minutes of the last three (3) Board of Directors Meeting | Current and/or Proposed Budget |
| Articles of Incorporation/Association and Amendments | Current House Rules |
| By-laws and Amendments | Declaration and Amendments |
| Copy of any and all pending litigation complaints filed by or against the Owner's Association and/or its directors that are currently unresolved | Design Standards and/or Guidelines |
| | Insurance Summary |
| | Lenders Disclosures |
| | Minutes of the last Annual Meeting |
| Covenants, Conditions and Restrictions (CC&Rs) | Planned Community Documents |
| Current Financial Statement | Project Information Form RR105c |
| Other, be specific | Reserve Study or Summary |
| na | Subdivision and/or title documents |
| | Other, be specific |
| | na |

_____ R  1/26/2019

BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®          RR201 Rev. 12/17 (NC)  For Release 11/18
7014 Niumalu
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

**Chapter 508D Mandatory Documentation Disclosures.** Pursuant to Hawaii Revised Statutes Chapter 508D, as amended, if the Property is subject to a recorded Declaration, and if applicable documents have not already been provided to Buyer as set forth immediately above, Seller shall provide Buyer copies of the following documents and any amendments or supplements thereto:

- Articles of incorporation or other document, if any, creating the corporation or association whereby the corporation or association has the power to enforce the Declaration;
- Declaration or similar organizational documents, and any exhibits thereto;
- Bylaws of the corporation or association;
- Any rules relating to the use of common areas, architectural control, maintenance of units, or payment of money as a regular assessment or otherwise in connection with the provisions, maintenance, or service for the benefit of the Property or other real property or common areas; and
- Further, if the Property is otherwise subject to restrictions or conditions on use, either because of covenants contained in the deed for the Property or because of another recorded document, Seller shall also provide Buyer all documentation relating to any restrictions or conditions, including but not limited to any unrecorded rules or guidelines that may have been issued by any entity responsible for enforcing those restrictions or guidelines.

Seller, at Seller's expense, shall provide the above documents to Buyer no later than _____**Ten**_____ ( **10** ) days from the Acceptance Date. Upon receipt of the above documents Buyer shall provide Seller with a written acknowledgement within _____**Ten**_____ ( **10** ) days of receipt.

If within the review period of _____**Ten**_____ ( **10** ) calendar days or [fifteen (15) calendar days if left blank] of Buyer's receipt of the documents Buyer does not accept the Property based on information contained in the documents, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2. In the event that this Purchase Contract is terminated, Buyer agrees to promptly return all documents provided pursuant to this paragraph to Seller or Seller's agent, including any other documents provided to Buyer during the escrow period. Seller not being in default, Buyer shall reimburse Seller for the cost of such documentation if the documents are not returned within ___**Three**___ ( **3** ) days of electing termination of this Purchase Contract.

M-2 **Review of Documents.** Buyer is advised that Brokerage Firm(s)' scope of service does not include the interpretation of documentation referred to in Paragraph M-1. Brokerage Firm(s) recommends that Buyer consult with a licensed attorney and/or CPA with expertise in condominium, cooperative, subdivision, PUD, and or homeowner's/planned community documents to review and explain such documents to Buyer involved in this transaction. Buyer acknowledges that the maintenance fee, homeowner's or community association fees, or any other fees or charges reflected in the documentation transmitted to Buyer for review and approval may be increased in the future.

M-3 **Documents Issued During the Escrow Period.** Seller shall provide any additions, supplements, modifications, and amendments to the documents issued during the escrow period. If there is any information that directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph I-2.

M-4 **Common Element Discrepancies.** Seller is not responsible for repair of condominium common and limited common elements or cooperative common areas. Seller is only responsible for reporting such defects or damage to the Association of Apartment Owners or other governing body only to the extent that Seller's unit is affected.

[ x ]M-5 **Electronic Delivery of Documents.** If any of the above documents are available electronically on the Internet, then in lieu of providing hard copies of the documents as required by Hawaii Revised Statutes Chapter 508D, as amended, Buyer hereby consents that Seller may provide a written statement to Buyer that directs Buyer to the internet address or addresses where the documents are located.

## SECTION N: RENTAL PROPERTY MATTERS

*(Choose Paragraph N-1 OR Paragraph N-2)*

[ na ] N-1 **Rental Documents.** The Property shall be subject to the existing: *(Choose all that apply)*

[ na ] Rental Agreement                    [ na ] Property Condition Form
[ na ] Rental Management Contract(s)       [ na ] Short Term Vacation Rental Reservation(s)
[ na ] Other **na**                        [ na ] Other **na**

Seller shall provide copies of such documents to Buyer within _____ ( **na** ) days after the Acceptance Date. If within _____ ( **na** ) days of receipt of such documents, Buyer does not accept the Property based upon information contained in the selected documents, Buyer may elect to terminate this Purchase Contract pursuant to Paragraph O-2. Any security deposits or vacation rental deposits will be transferred to Buyer at closing.

[ x ] N-2 **Delivery of Possession of the Property at Closing.** Seller shall deliver possession of the Property at closing vacant and free of tenants, tenants' possessions, leases, rental management contracts, short term rental reservations, or any other rental or service commitments.

N-3 **Rental Agreement Changes During the Escrow Period.** During the escrow period, Seller shall not, without the prior written consent of Buyer, make any changes to the documents described in Paragraph N-1, or enter into any new Rental Agreement(s), which extend beyond the Scheduled Closing Date.

---

~~BUYER'S INITIALS~~ & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®

RR201 Rev. 12/17 (NC)  For Release 11/18

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

7014 Niumalu

## SECTION O: TERMINATION, MEDIATION, ARBITRATION, AND OTHER MATTERS

O-1   **Termination Due to Default.** In the event that Buyer is in default for failure to perform Buyer's obligations under this Purchase Contract (Seller not being in default), Seller may terminate this Purchase Contract, and (a) bring an action for damages for breach of contract, or (b) retain the initial earnest money deposit and all additional deposits provided for in this Purchase Contract.

In the event Seller is in default for failure to perform Seller's obligations under this Purchase Contract (Buyer not being in default), Buyer may (a) terminate this Purchase Contract and bring an action for damages for breach of contract, or (b) seek specific performance of this Purchase Contract.

The foregoing shall not exclude any other remedies available under the law to either Seller or Buyer due to the other party's default.

O-2   **Termination *Within* Contingency Time Period.** Should this Purchase Contract specifically designate this paragraph to govern the termination process for any term of this Purchase Contract, any party given the right to terminate this Purchase Contract pursuant to such term, and who elects to do so, must deliver to the other party a written notice of termination prior to the expiration of the time period or the date specified in such term. If the party given the right to terminate fails to deliver the written notice to the other party within such time period or by such date, the termination right shall be deemed to be waived (as to that party) and can no longer be used by that party as a reason to terminate this Purchase Contract. If the terminating party so terminates this Purchase Contract, Buyer and Seller shall promptly execute all cancellation documents requested by Escrow, and Escrow shall, unless otherwise agreed to in this Purchase Contract, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this Purchase Contract.

O-3   **Termination *After* a Specified Contingency/Condition Time Period.** Should this Purchase Contract specifically designate this paragraph to govern the termination process for any term of this Purchase Contract, any party given the right to terminate this Purchase Contract pursuant to such term, and who elects to do so, must deliver to the other party a written notice of termination within _____**Five**_____ (_5_) days [seven (7) days if left blank] of the expiration of the time period or the date specified in such term. If the party given the right to terminate fails to deliver the written notice to the other party within the time period specified in this paragraph, the termination right shall be deemed to be waived (as to that party) and can no longer be used by that party as a reason to terminate this Purchase Contract. If the terminating party so terminates this Purchase Contract, Buyer and Seller shall promptly execute all cancellation documents requested by Escrow, and Escrow shall, unless otherwise agreed to in this Purchase Contract, return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this Purchase Contract.

O-4   **Mediation.** If any dispute or claim arises out of this Purchase Contract prior to or after closing between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute, Buyer and Seller agree in good faith to attempt to settle such dispute or claim by non-binding mediation. This paragraph shall not apply to any complaint of unethical conduct against a Brokerage Firm and all its licensees who are obligated to comply with the Code of Ethics of the National Association of REALTORS®. Such complaints against a Brokerage Firm(s) or its licensees assisting in this transaction must be brought before the Local Board of REALTORS® of which the Brokerage Firm and all its licensees are members.

O-5   **Arbitration.** If any dispute or claim arises out of this Purchase Contract during this transaction or at any time after closing, between Buyer and Seller, or between Buyer and/or Seller and a Brokerage Firm and all its licensees assisting in this transaction, and if such dispute cannot be resolved through mediation, then the parties are encouraged to consider arbitration as an alternative to litigation. It is recommended that the parties seek legal counsel to make this determination.

O-6   **Third Party Claims.** It is understood that if a dispute or claim is made by or against a third party who is not obligated or willing to mediate or arbitrate such dispute or claim, then Buyer and Seller shall not be required to mediate or arbitrate such dispute or claim.

O-7   **Choice of Law and Forum.** The Property is located in the State of Hawaii. This Purchase Contract shall be governed by and construed according to the laws of the State of Hawaii. All legal actions or proceedings concerning this Purchase Contract and/or the Property shall be filed and conducted in the appropriate state or federal court located in the State of Hawaii. Any mediation, arbitration, and/or litigation in the state court, shall be filed and conducted in the county where the Property is located.

O-8   **Attorney's Fees.** In the event of default by a party and/or a legal action or arbitration (including a claim by a Brokerage Firm for commission), the prevailing party shall be entitled to recover all costs incurred including reasonable attorneys' fees.

─DS
[initials]  1/26/2019
─────────────────────────────
BUYER'S INITIALS & DATE

Page 11 of 14

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                                                                          RR201 Rev. 12/17 (NC)  For Release 11/18

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                          7014 Niumalu

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

## SECTION P: FOREIGN OR NON-RESIDENT BUYER AND/OR SELLER

P-1 **Hawaii Real Property Tax Act ("HARPTA") Withholding Required if Seller is a Non-Resident of the State of Hawaii.** Under Hawaii law, if Seller is a non-resident person or entity (corporation, partnership, LLC, trust, or estate) of the State of Hawaii, Buyer must withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate form to the State Department of Taxation. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from HARPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the State Department of Taxation.

P-2 **Foreign Investment in Real Property Tax Act ("FIRPTA") Withholding Required if Seller is a Foreign Person.** Under the Internal Revenue Code, if Seller is a foreign person or entity (non-resident alien, corporation, partnership, LLC, trust, or estate), Buyer must generally withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward this amount with the appropriate Internal Revenue Service ("IRS") form. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from FIRPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the IRS.

P-3 **Additional Disclosures Required by Foreign Buyers and Sellers.** Buyer and Seller understand that under statutes and ordinances such as the Agricultural Foreign Investment Disclosure Act of 1978, the International Investment and Trade in Services Survey Act, and the revised Ordinances of the City and County of Honolulu, among others, disclosures are required by foreign Buyers and/or Sellers under certain conditions.

## SECTION Q: SPECIAL TERMS

**SPECIAL TERMS** (Please number Q-1, Q-2, Q-3, and so forth)

Q-1: Seller shall provide to the Buyer a professional permit package within J-1 period. Buyer shall have 7 days upon receipt of said package to review and approve/disapprove the package.Q-2: Seller to provide Survey to Buyer during J-1 period.Q-3: Seller to provide current Contact Info to Buyer for Maintenance Contractors : pool, landscaping, etc during J-1 period.Q-4: This sale is subject to the Order Granting the United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture entered on September 28, 2018(the "Order", attached). Q-5: Buyer has read and understands that the sale is subject to the Order Granting The United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture entered on September 27, 2018(the "Order"). Q-6: In particular, Buyer understands that the property shall be sold in its entirety, free and clear of all right, title, claim, liens and interest of any and all persons or parties whatsoever existing in the property; Q-7: Buyer understands that if it has the highest and best offer, the terms will be published in a newspaper of general circulation at least 10 days before confirmation of the sale; Q-8: Buyer understands that after publication and up to the confirmation hearing, another bona fide offer(s) may be made provided that it is at least 10% higher than the Buyer's offer and at the same terms and conditions as set forth in the Order; Q-9: Buyer understands that the United States Marshall Service and/or Hawaii Central Federal Credit Union ("HCFCU") shall execute the contract of sale on the terms ordered by the Court and proceed to consummate the sale. Q-10: Buyer understands that property is being conveyed by Quit Claim Deed, without warranties of any nature, express or implied.

## SECTION R: BROKERAGE FIRMS SERVICES AND DISCLAIMERS

R-1 **Scope of Services and Disclaimer by Brokerage Firms.** Brokerage Firms assisting in this transaction, including their owners, licensees, salespersons, agents, and employees, recommend that Buyer and Seller each consult their own attorney, accountant, appraiser, architect, pest control expert, home inspector, insurance advisor, contractor, land surveyor, electrical engineer, civil engineer, structural engineer, soils engineer, land use professional, zoning expert, environmental expert, designer, estate planner, title insurer, other professionals, and/or subject matter experts should they have any questions within those fields about this transaction.

Buyer and Seller understand that Brokerage Firms have not made any representations or warranties, and have not rendered any opinions about: (a) the legal or tax consequences of this transaction; (b) the legality, validity, correctness, status, existence, or lack of any building permits which may have been required for the Property; (c) the land area of the Property, the location of the boundaries, or the size of any improvements on the Property; or (d) any of the matters set forth in Paragraph I-8, General Disclosures.

**Buyer and Seller understand and acknowledge the parties are not relying upon Brokerage Firms for any of the foregoing services or advice.**

_M R_  2/26/2019

BUYER'S INITIALS & DATE

Page 12 of 14

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®

RR201 Rev. 12/17 (NC) For Release 11/18
7014 Niumalu

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

R-2    **Rental Property.** Buyer understands that Seller and Brokerage Firms are not offering to sell or selling the Property together with any existing or future rental pool or other rental arrangement. Seller and the Brokerage Firms make no representations or guarantees about future rents. Buyer understands that should Buyer rent the Property after closing, Buyer is assuming all risks relative to all of the foregoing. This sale includes real property only, and the intent is not to convey a security or investment security as defined by the U.S. Securities and Exchange Commission or other governmental agency.

R-3    **Future Resale Value.** Seller and Brokerage Firms make no representations or guarantees about future resale values.

R-4    **Obligations.** Brokerage Firms shall not be held liable to either Buyer or Seller for the failure of either Buyer or Seller to perform their obligations under this Purchase Contract.

R-5    **Permission.** The parties grant Brokerage Firms permission to supply data to the Multiple Listing Service regarding the sales price, terms, and listing status of this transaction for use by other brokers and real estate professionals in making market studies, providing service to the public, and advising their clients.

R-6    **Disclosure of Real Estate Licensing Status.** Hawaii law provides that the licensee shall not acquire, rent, lease, sell, or exchange an interest in or buy, rent, lease, sell, or exchange for one's self, any member of the licensee's immediate family or Brokerage Firm, or any entity in which the licensee has any ownership interest, property listed with the licensee, licensee's Brokerage Firm, or listed with any other Brokerage Firm or licensee without making the true position known in writing.

     [ na ] (a)   **Disclosure.** The licensee(s) in this transaction disclose the following:  na _____

_____

_____

## SECTION S: GENERAL PROVISIONS

S-1    **Acceptance Date.** As used in this Purchase Contract, the term "Acceptance Date" means the date on which this Purchase Contract becomes binding upon the parties.

S-2    **Dates and Times.** As used in this Purchase Contract, the term "day" means a calendar day, and all dates and times are based on Hawaii Standard Time (UTC-10). Unless otherwise specified in writing in this Purchase Contract, contingencies and all other dates in this Purchase Contract shall expire at 11:59 PM HST on the day stated. Note: Hawaii does not observe Daylight Savings Time.

S-3    **Time is of the Essence.** Except as otherwise provided in this Purchase Contract, time is of the essence in the performance by all parties of their respective obligations under this Purchase Contract.

S-4    **Electronic (Digital or Fax) Signatures.** Electronically executed copies of this Purchase Contract and any related documents shall be fully binding and effective for all purposes, whether or not originally executed documents are transmitted to Escrow. Electronic signatures on documents will be treated the same as original signatures; however, each party agrees to promptly forward original executed documents (if any) to Escrow. The parties understand that conveyance, mortgage and other recordable documents must be executed, acknowledged, and delivered in original form and will not be acceptable if signed only electronically.

S-5    **Counterparts.** This Purchase Contract and any addenda, amendments, and related documents may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so signed shall be deemed to be an original, and all of which taken together shall constitute one and the same document, which shall be binding upon all of the parties, notwithstanding that all of the parties do not sign the original or the same counterpart.

S-6    **Complete Agreement.** This Purchase Contract constitutes the entire agreement between Buyer and Seller and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements (both written and oral) of Buyer and Seller. No variation or amendment of this Purchase Contract shall be valid or enforceable unless it is in writing signed by both Buyer and Seller. All agreements and representations about the Property must be set forth in writing, and the parties agree that to be effective, any representation or warranty made by a Brokerage Firm or any party to this Purchase Contract must be set forth in writing in this Purchase Contract, or an amendment to this Purchase Contract, or in any required Disclosure Statement. Buyer and Seller shall each hold harmless and release the Brokerage Firms from any claims based upon any alleged representation which is not set forth in writing as stated in this paragraph.

**Buyer agrees to buy the Property at the price and terms offered in this Purchase Contract and acknowledges receipt of a copy of this Purchase Contract.**

Date 1/26/2019 _____ , _____ AM[   ] PM [   ]

Buyer's Name DocuSigned by: Regan McKenna         Buyer's Name _____

Signature _[signature]_                Signature _____

Title ___—3D2651C2FEE3427...___         Title _____

Agent's Name  Pat Ferraris              State License No. RS-62456 _____

Brokerage Firm Gold Coast Real Estate, Inc.       State License No. RB-16997 _____

Brokerage Firm Address 2863 Kalakaua Ave. #6, Honolulu, HI   96815

Bus 808-735-7001    Fax 808-923-7723    Cell 808-735-7001    E-mail get2pat@mac.com

_[initials]_  1/26/2019

_____                              _____

BUYER'S INITIALS & DATE        Page 13 of 14        SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®                     RR201 Rev. 12/17 (NC) For Release 11/18

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

## SECTION T: ACCEPTANCE OR COUNTER OFFER

*(Choose Paragraph T-1 OR Paragraph T-2)*

[     ] T-1  **Acceptance of Purchase Contract.** Seller accepts this Purchase Contract, agrees to sell the Property at the price and terms offered in this Purchase Contract, and acknowledges receipt of a copy of this Purchase Contract.

[     ] T-2  **Counter Offer.** Seller agrees to sell the Property at the price and terms offered in this Purchase Contract, as amended by the attached Counter Offer, and acknowledges receipt of a copy of this Purchase Contract and the Counter Offer.

**IN EITHER EVENT:**

| |
|---|
| T-3  **Agreement to Pay Commission to Brokerage Firm.** Seller acknowledges and reaffirms Seller's agreement to pay to <u>Elite Pacific Properties, LLC</u> ("Brokerage Firm") a commission for the sale of the Property in the amount of <u>per listing contract</u> per the terms of the Listing Contract, or if there is no Listing Contract, then per other agreement between Seller and Brokerage Firm. Seller instructs Escrow to pay the commission directly to Brokerage Firm at closing in U.S. Dollars. These instructions cannot be changed without the written agreement of Brokerage Firm and Seller. Seller consents to Brokerage Firm sharing the commission with other Brokerage Firm(s) which may have provided services for this transaction. |

Date _____, _____ AM[  ] PM [  ]

Seller's Name <u>HCFCU per "Order"</u>          Seller's Name _____

Signature _____          Signature _____

Title _____          Title _____

Agent's Name <u>Heidi Ho</u>          State License No. <u>RS-56577</u>

Brokerage Firm <u>Elite Pacific Properties, LLC</u>          State License No. <u>RB-18825</u>

Brokerage Firm Address _____

Bus <u>284-5777</u>          Fax <u>593-7367</u>          Cell <u>284-5777</u>          E-mail <u>heidiho@elitepacific.com</u>

Seller is a Foreign Person [     ] Non-Hawaii Resident [     ] Owner/Occupant [     ] Other [     ] _____

**NOTE:** THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

_____
1/26/2019
BUYER'S INITIALS & DATE

_____
SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®          RR201 Rev. 12/17 (NC) For Release 11/18
7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CE-528692A3253A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM NO. 18-00068 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THE UNITED |
| | ) | STATES' MOTION FOR INTERLOCUTORY |
| vs. | ) | SALE OF REAL PROPERTY SUBJECT TO |
| | ) | CRIMINAL FORFEITURE |
| KATHERINE P. KEALOHA, ET. AL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

ORDER GRANTING THE UNITED STATES' MOTION FOR INTERLOCUTORY
SALE OF REAL PROPERTY SUBJECT TO CRIMINAL FORFEITURE

The United States' Motion for Interlocutory Sale of
Real Property Subject to Criminal Forfeiture ("Motion") came on
for hearing on September 14, 2018.  Assistant United States
Attorneys Eric J. Best and Michael G. Wheat appeared for the
United States; Cynthia A. Kagiwada, Esq., appeared for Defendant
Katherine P. Kealoha; Rustam Barbee, Esq., appeared for Defendant
Louis M. Kealoha; Jonathan W.Y. Lai, Esq., appeared for Hawaii
Central Federal Credit Union ("HCFCU"); and Kevin P.H. Sumida,
Esq., appeared for Sumida Au & Wong, LLLC.  After careful
consideration of the submissions of the parties, the arguments of
counsel, and the relevant legal authority, the Court GRANTS the
Motion.

The United States of America has moved this Court,
pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal
Procedure, Supplemental Rule G(7) of the Federal Rules of Civil

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

Procedure, and Title 28, United States Code, Section 2001(b), for an order authorizing the immediate interlocutory private judicial sale of the real property subject to criminal forfeiture in this case (the "Real Property"), situated at 7014 Niumalu Loop, Honolulu, Hawaii 96825, and described as follows:

> All of that certain parcel of land situated at Maunalua, Honolulu, City and County of Honolulu, State of Hawaii, being LOT 84 of the "LUNA- KAI MARINA, UNIT 9-A," as shown on File Plan. No. 1116, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 7,508 square feet, more or less;

See ECF No. 13-3 at 9.

On September 6, 2016, HCFCU made a loan (the "Note") in the principal amount of $1,040,000.00 to Defendants Louis M. Kealoha and Katherine P. Kealoha (the "Kealohas") to purchase the Real Property. ECF No. 36 at 2. The Note was secured by a mortgage (the "Mortgage"), and recorded in the Bureau of Conveyances, State of Hawaii, as Document No. A-61010206. Id. at 3. Because of the Kealoha's failure to make their monthly mortgage payments, HCFCU initiated foreclosure proceedings against the Kealohas on February 28, 2018, in the First Circuit Court of Hawaii. Id. On March 20, 2018, the United States removed the foreclosure proceedings to the United States District Court for the District of Hawaii. Id.


1/26/2019

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

Based upon the forfeiture allegation in the criminal
indictment, HCFCU's foreclosure proceedings, the United States'
Motion for Interlocutory Sale, and the arguments and evidence
presented at the hearing on September 14, 2018, the Court finds
that a prompt private sale of the Real Property by HCFCU, with
assistance from the United States Marshals Service ("USMS"),
affords the best protection to all concerned.  A private sale
will allow HCFCU and the USMS the discretion to sell the Real
Property in the most commercially feasible manner.  Conversion of
the Real Property to cash through the interlocutory sale will
preserve the value of the Real Property for the benefit of all
parties with a legal interest in the Real Property pending the
conclusion of the criminal case.  The interlocutory sale will
also permit the United States and the Kealohas to avoid liability
should any accident occur on the Real Property, to avoid falling
in arrears on the payment of any applicable real property taxes,
and to avoid the accrual of additional unpaid interest on the
Mortgage.  It is therefore ORDERED that the United States' Motion
for Interlocutory Sale be GRANTED under the following terms and
conditions:

1.   Because not all parties are in agreement about the
aspects of the sale, HCFCU, with assistance from the USMS, will
sell the Real Property as described above in the most


1/26/2019

3

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

commercially feasible manner and pursuant to the terms of Title 28, United States Code, Section 2001(b).

2.   HCFCU will retain custody, control, and responsibility for the Real Property, with assistance from the USMS as needed, until the interlocutory sale has been completed.

3.   HCFCU will retain or maintain insurance on the Real Property until the interlocutory sale has been completed.

4.   HCFCU will identify three disinterested persons to appraise the fair market value of the Real Property.  The appraisals will be forwarded by HCFCU to the Court and all parties for evaluation and approval by the Court.  The listing price of the Real Property shall not be for less than two-thirds of the average of the three appraised values.

5.   HCFCU will retain **Heidi Ho**, a licensed real estate agent with Elite Pacific Properties, LLC, to complete the private sale of the Real Property.

6.   In order to appraise the Real Property and conduct a sale of the Real Property, the Kealohas are directed to vacate the Real Property and remove all personal property from the Real Property within fourteen days of this Order.  Failure by the Kealohas to vacate the Real Property will result in contempt of Court.

7.   The appraisers, real estate agent, HCFCU personnel, USMS personnel, and any other personnel necessary to conduct the


1/26/2019

4

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

interlocutory sale shall have permission to enter the Real

Property after the fourteen-day period within which the Kealohas

have to vacate the Real Property.

8.    The United States shall be notified in writing promptly

within three business days of all offers and counter-offers to

purchase the Real Property.

9.    The purchase price of the Real Property shall be paid

in cash or other consideration.

10.    The Real Property shall be sold in its entirety, free

and clear of all right, title, claim, liens, and interest of any

and all persons or parties whatsoever existing in said Real

Property.

11.    HCFCU shall publish the terms of the highest and best

contract of sale offered for the Real Property in a newspaper of

general circulation, as approved by the Court, at least ten days

before confirmation of the sale.

12.    Any sale shall not be confirmed if a bona fide offer is

made after publication which guarantees at least ten percent over

the price offered in the private sale.

13.    Any bona fide offer that guarantees at least a ten

percent increase over the price offered in the private sale, as

published, must be made pursuant to the same terms and conditions

as ordered by the Court herein.  Such overbid shall be reported

by HCFCU to the Court, without the need for further publication.



5

Case 1:18-cr-00068-JMS-RLP    Document 139    Filed 02/15/19    Page 28 of 65    PageID #:
DocuSign Envelope ID: 071163F2-93F5-48AC-B0C8-528692A3253A
Case 1:18-cr-00068-JMS-RLP    Document 79316 Filed 09/27/18    Page 6 of 10    PageID #: 831

14.    HCFCU shall file its report of sale, along with the
report of the three appraisers.  The report of sale shall include
a statement of the highest and best offer of sale, and the
highest and best overbid, if any, for consideration by the Court.

15.    The United States may reject any offer to purchase the
Real Property where it determines the offer is being made by, or
on behalf of, a person involved in the criminal activity alleged
as the basis for forfeiture.

16.    Upon confirmation by the Court of the private sale,
USMS and/or HCFCU shall execute the contract of sale on the terms
ordered by the Court and proceed to consummate the sale,
including issuing the appropriate deed or bill of sale to the
buyer at such private sale.

## TERMS OF PAYMENT

17.    Upon the completion of the interlocutory sale of the
Real Property, there shall be immediate payment of outstanding
taxes and the expenses of custody and sale incurred by the USMS,
first, and thereafter by HCFCU, as follows:

        a.    All reasonable costs incurred in connection with
the maintenance, repair, marketing, and sale of
the Real Property;

        b.    Cost of appraisals;

        c.    Real Estate Commissions, if any, but not greater
than six percent;



6

Case 1:18-cr-00068-JMS-RLP   Document 139   Filed 02/15/19   Page 29 of 65   PageID #:
DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A
Case 1:18-cr-00068-JMS-RLP   Document 79317   Filed 09/27/18   Page 7 of 10   PageID #: 832

     d.    Real estate property taxes due and unpaid;

     e.    Insurance costs, if any;

     f.    Escrow fees, advances, and late charges, if any;

     g.    Document recording fees not paid by the buyer;

     h.    Title fees; and

     i.    County transfer taxes.

18.   HCFCU has a prior vested or superior interest in the Real Property or is a bona fide purchaser for value of the right, title, or interest in the Real Property, and was at the time of purchase reasonably without cause to believe that the Real Property was subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).  Accordingly, upon interlocutory sale of the Real Property, and after immediate payment of outstanding taxes and the expenses of custody and sale incurred by the USMS and/or HCFCU according to the terms of payment above in Paragraph 17, HCFCU shall receive payment of the following from the proceeds of the sale:

     a.    All unpaid principal due to HCFCU under the Note, which was secured by the Mortgage, and recorded in the Bureau of Conveyances, State of Hawaii, as Document No. A-61010206; and,

     b.    All unpaid interest at the base contractual rate (not the default rate) under the Note, in the amount of $31,554.51, with interest accruing from and after June 29, 2018,

1/28/2019

7

Case 1:18-cr-00068-JMS-RLP   Document 139   Filed 02/15/19   Page 30 of 65   PageID #:
DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A
Case 1:18-cr-00068-JMS-RLP   Document 79318led 09/27/18   Page 8 of 10   PageID #: 833

at a per diem rate of $104.95 until the date of payment, unless modified by this Court at the time of confirmation.

19. If the proceeds of the interlocutory sale of the Real Property are insufficient to pay the amounts due on the Note and the Mortgage, HCFCU may seek a deficiency judgment against the obligor under the Note and the Mortgage, and any guarantor thereon. However, if there is no deficiency, HCFCU will not seek a deficiency judgment against the obligor or any guarantor.

20. The net proceeds from the sale of the Real Property, after payment made to the USMS and HCFCU as detailed in Paragraphs 17 and 18 above, will be substituted for the above-described property ("substitute res") and held in an interest bearing account with the Clerk of the Court for the District of Hawaii pending a final judgment in this action.

21. The validity and priority of any other claims pursuant to Title 21, United States Code, Section 853(n) will be determined at an ancillary proceeding, contingent upon and following a judgment in the criminal case and the Court's entry of a final order of forfeiture to the United States. If the Kealohas are found not guilty of Counts 1 through 8 of the Second Superseding Indictment, the Court will retain jurisdiction of the substitute res pending further proceedings.



DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

### USMS AUTHORIZATION TO ASSIST AND FACILITATE
### SALE OF REAL PROPERTY

22.   The USMS shall have the authority to evict any and all occupants of the Real Property, if and when necessary, to conduct the interlocutory sale.

23.   The USMS is authorized to use reasonable force in assisting HCFCU in conducting the interlocutory sale of the Real Property.

24.   The USMS is authorized to enter the Real Property to inspect, photograph, inventory, and otherwise record the condition and contents of the property, and to advise the Court if any steps are needed to secure the property or its contents pending the interlocutory sale.

25.   The USMS will assist HCFCU, any appraisers, and any real estate agent and other personnel necessary to complete the interlocutory sale of the Real Property, in ensuring the following:

a.   The Real Property is vacated by the Kealohas and any and all other tenants or occupants within fourteen days of the date of this order;

b.   All personal property is removed from the Real Property within fourteen days of the date of this order;

c.   The appraisers, real estate agent, and other personnel necessary to complete the interlocutory sale of the



9

Case 1:18-cr-00068-JMS-RLP   Document 139   Filed 02/15/19   Page 32 of 65   PageID #:
DocuSign Envelope ID: 071163F2-93F5-48AC-B0C8-528692A3253A
Case 1:18-cr-00068-JMS-RLP   Document 120   Filed 09/27/18   Page 10 of 10   PageID #:
835

Real Property have full and complete access to the Real Property;
and,

      d.   Any documents that may be required to complete the
interlocutory sale of the Real Property and subsequent transfer
of good title to the buyer are successfully completed.

    26.  HCFCU shall release and hold harmless the United
States, and any agents, servants, and employees of the United
States, and/or any state or local law enforcement agency acting
in their individual or official capacities, from any and all
claims which currently exist or which may arise as a result of
the United States' actions against and relating to the Real
Property.

    27.  The violation of any terms or conditions of this Order
shall be construed as a violation of an Order of the Court.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, SEPTEMBER 27, 2018.

Richard L. Puglisi
United States Magistrate Judge

**UNDERLINED: UNITED STATES V. KEALOHA, ET AL,**; CRIM. NO. 18-00068 JMS-RLP;
**ORDER GRANTING THE UNITED STATES' MOTION FOR INTERLOCUTORY SALE
OF REAL PROPERTY SUBJECT TO CRIMINAL FORFEITURE**

1/26/2019

10

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

 **Hawaiʻi Association of REALTORS®**

## "AS IS" CONDITION ADDENDUM
### Hawaii Association of REALTORS® Standard Form
### Revised 7/18   For Release 11/18



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAIʻI ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAIʻI ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

"AS IS" CONDITION ADDENDUM is made a part of Purchase Contract:

Purchase Contract Reference Date: **January 26, 2019**

Property Reference or Address: 7014 Niumalu Loop, Honolulu, HI   96825-1636

Tax Map Key: Div. __1__ /Zone __3__ /Sec. __69__ /Plat __065__ /Parcel(s) __046__ /CPR(s) __0000__ (if applicable).

1. **Purpose of this "AS IS" Condition Addendum ("Addendum").** Buyer understands and agrees that this Addendum is a material factor in Seller's acceptance of the Purchase Price for the Property and that Seller would not have been willing to sell the Property to Buyer unless Buyer accepted the terms of this Addendum.

2. **Sale in "AS IS" Condition.** Seller will sell and transfer the Property at closing in "AS IS" condition. The term "Property" includes all land and improvements (including but not limited to the roof, walls, foundations, soils, plumbing, electrical and mechanical systems, etc.), real property, and personal property (if any). Except as may be otherwise expressly provided in the Purchase Contract, and Seller's disclosures, SELLER IS NOT OBLIGATED TO MAKE ANY REPAIRS OR UPGRADES TO THE PROPERTY AND WILL TRANSFER THE PROPERTY WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EITHER EXPRESSED OR IMPLIED. By way of illustration (and not limitation), Seller makes no representations or warranties that the Property: (a) conforms to current (or past) building codes; (b) has all required building permits; or (c) complies with the laws, rules, ordinances or regulations of any government, association, or other body. Seller shall not be responsible for any latent defects, hidden defects, or defects which time may reveal.

3. **Seller's Continuing Responsibilities. SELLER REMAINS OBLIGATED TO DISCLOSE MATERIAL FACTS IN WRITING TO BUYER, AS SUCH OBLIGATION IS SET FORTH IN PARAGRAPHS I-1 AND I-2 OF THE PURCHASE CONTRACT.** In addition, this Addendum does not eliminate any of Seller's responsibilities or obligations as may have been agreed to in the Purchase Contract.

4. **Buyer's Rights and Responsibilities.** Buyer is strongly advised to inspect, within the time frames stated in the Purchase Contract, the Property and all public and association records relating to the Property. Such inspections should be made personally and by qualified experts (such as a professional home inspector) selected by Buyer. Buyer accepts the responsibility for making reasonable inquiry regarding Buyer's concerns about the Property, including the Property's physical condition and whether the Property is suitable for any use or purpose which Buyer may intend. Buyer acknowledges that there may be material facts of which Seller is not aware which qualified experts may be able to discover. Buyer also acknowledges that even thorough inspections by qualified experts might not reveal all defects in the Property, and that there may be latent defects, hidden defects, or defects which time may reveal.

5. **Buyer's Acceptance of Property in "AS IS" Condition.** Subject to Buyer being furnished with Seller's disclosures and having the opportunity to inspect the Property, as provided for in the Purchase Contract, and with knowledge and acceptance of all the disclosures, disclaimers, conditions, and agreements contained in the Purchase Contract and in this Addendum, Buyer understands and agrees that, except as may be expressly otherwise provided in the Purchase Contract, and Seller's disclosures, the Property will be sold and transferred at closing in "AS IS" CONDITION, WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED.

6. **Buyer's Release and Waiver.** Buyer agrees to give up, waive and relinquish all rights to assert any claim, demand, proceeding, or lawsuit of any kind against Seller and/or Brokerage Firms (and their licensees) involved in this transaction with respect to the condition or use of the Property, except for claims which are based upon Seller's and/or Brokerage Firms' (and their licensees') failure to disclose material facts.

7. **Survival.** The terms and conditions of this Addendum will survive the closing and will not merge with the provisions of any closing documents.

8. **Special Terms:** _____
_____
_____

**BUYER AND SELLER ARE ADVISED TO CONSULT WITH AN ATTORNEY REGARDING THIS ADDENDUM. BUYER AND SELLER UNDERSTAND AND AGREE TO THE TERMS CONTAINED IN THIS "AS IS" CONDITION ADDENDUM.**

_DocuSigned by:_
_Mh MlRM_                     1/26/2019
Buyer                                              Date          Seller                                              Date
—3D2651C2FEE342F...
Michael Regan McKenna                                         HCFCU per "Order"

_____          _____
Buyer                                              Date          Seller                                              Date

**NOTE:** THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

©Hawaii Association of REALTORS®
"AS IS" Condition Addendum
RR213 Rev. 7/18

 EQUAL HOUSING OPPORTUNITY

Gold Coast Real Estate Inc., 2863 Kalakaua Avenue Honolulu, HI 96815          7014 Niumalu
Phone: (808)735-7001          Fax:          Pat Ferraris

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A



**DISTRESSED PROPERTY ADDENDUM TO PURCHASE CONTRACT**
**Hawaii Association of REALTORS® Standard Form**
**Revised 12/17 (NC)   For Release 11/18**



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Distressed Property Addendum is made a part of Purchase Contract:

Property Reference or Address: <u>7014 Niumalu Loop, Honolulu, HI   96825-1636</u>

Tax Map Key: Div. <u>  1  </u> /Zone <u>  3  </u> /Sec. <u>  69  </u> /Plat <u>  065  </u> /Parcel <u>  046  </u> /CPR <u>0000</u> (if applicable).

**Purpose:**

(1) To make potential Distressed Property Owners aware of the Mortgage Rescue Fraud Prevention Act of 2008 ("the Act") and to protect Hawaii consumers from persons who prey on consumers by offering services that purport to provide relief from consumers' mortgage loan obligations or from other filed or threatened liens or encumbrances against their properties.

(2) To obligate a Distressed Property Owner to disclose to the Brokerage Firm and Buyer if and when the property is a Distressed Property and the owner is being counseled by a Distressed Property Consultant.

(3) To ensure Buyer and Seller use the Distressed Property Conveyance Contract if the Act applies to the sale transaction.

(4) To inform Buyer and Seller that according to the Act, a Distressed Property Consultant, shall not include an active real estate broker or real estate salesperson in Hawaii when acting in the capacity of a real estate broker or real estate salesperson in accordance with customary industry standards.

**Distressed Property Conveyance Contract:** If, at any time during the pendency of the Purchase Contract, (i) Property becomes a Distressed Property, and (ii) Seller uses, directly or indirectly, the services of a Distressed Property Consultant, Seller shall notify Buyer immediately in writing. Seller and Buyer have been advised and understand that Hawaii's Mortgage Rescue Fraud Prevention Act requires that a Distressed Property Conveyance Contract be used in any Distressed Property Conveyance. Buyer and Seller have further been advised and understand that, pursuant to the Act, the Distressed Property Conveyance Contract must provide, among other things, certain specific notices, specific information concerning the Distressed Property Purchaser, and additional cancellation rights for Seller, none of which appear in the Purchase Contract. Therefore, Buyer and Seller understand and agree that, upon written notice from Seller being given of Property becoming a Distressed Property and the use of a Distressed Property Consultant, unless Buyer and Seller agree to amend the Purchase Contract to incorporate all of the provisions mandated by the Mortgage Rescue Fraud Prevention Act, the Purchase Contract shall terminate automatically, and Escrow shall return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Buyer and Seller are advised to obtain advice from a licensed Hawaii attorney.

**Brokerage Firm Liability:** Seller understands and agrees that Brokerage Firm shall not be liable for any loss, damage or harm to Seller resulting from any communication between Seller or Seller's Distressed Property Consultant and any lien holder, lien holder's rejection of the Purchase Contract terms or conditions, the imposition of additional requirements on Seller, the failure of lien holders to act in a timely manner, or lien holders proceeding with foreclosure.

**Definitions:**

The term "Distressed Property Owner" means the owner of any Distressed Property as defined below.

The term "Distressed Property" means:
Any residential real property that:

(1) Is in foreclosure or at risk of foreclosure because payment of any loan that is secured by the residential real property is more than sixty days delinquent;

(2) Had a lien or encumbrance charged against it because of nonpayment of any taxes, lease assessments, association fees, or maintenance fees;

(3) Is at risk of having a lien or encumbrance charged against it because the payments of any taxes, lease assessments, association fees, or maintenance fees are more than ninety days delinquent;

(4) Secures a loan for which a notice of default has been given or;

(5) Secures a loan that has been accelerated;

(6) Is the subject of any solicitation, representation, offer, agreement, promise, or contract to perform any mortgage assistance relief service.

<u>M  R  9/26/2019</u>
BUYER'S ~~INITIALS~~ & DATE

_____
SELLER'S INITIALS & DATE

Page 1 of 2



Gold Coast Real Estate Inc., 2863 Kalakaua Avenue Honolulu, HI 96815
Phone: (808)735-7001          Fax:                      Pat Ferraris                                    7014 Niumalu

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

The term "Distressed Property Consultant" means any person who performs or provides, or attempts to perform or provide, or who assists others to perform or provide, or who makes any solicitation, representation, or offer to perform or provide, any mortgage assistance relief service.

The term "Mortgage Assistance Relief Service" means any service plan, or program that is offered or provided to the consumer in exchange for consideration and is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1. Stopping, preventing, or postponing the loss of any residential real property, whether by mortgage or deed or trust foreclosure sale or repossession, or otherwise saving any consumer's residential real property from foreclosure;
2. Stopping, preventing, or postponing the loss or the charging of any lien or encumbrance against any residential real property or reducing or eliminating any lien or encumbrance charged against any residential real property for the nonpayment of any taxes, lease assessments, association fees, or maintenance fees;
3. Saving the owner's property from foreclosure or loss of home due to nonpayment of taxes;
4. Negotiating, obtaining, or arranging any modification of any term of a residential loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;
5. Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may:
   a. Cure the default on a residential loan, including a reduction in the amount of interest, principal balance, monthly payments or fees;
   b. Reinstate the residential loan;
   c. Redeem any residential real property or;
   d. Exercise any right to reinstate a residential loan or redeem a residential real property;
6. Negotiating, obtaining, or arranging, with respect to any residential real property:
   a. A short sale;
   b. A deed-in-lieu of foreclosure or;
   c. Any other disposition of the property other than a sale to a third party who is not the residential loan holder;
7. Obtaining any forbearance or modification in the timing of payments from any residential loan holder or servicer;
8. Obtaining any forbearance from any beneficiary or mortgagee, or any relief with respect to a tax sale of any residential real property;
9. Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or other contract secured by a mortgage on any residential real property or contained in the mortgage;
10. Obtaining any extension of the period within which the owner may reinstate the owner's rights with respect to the owner's property;
11. Obtaining a loan or advance of funds while the consumer is in foreclosure or at risk of foreclosure due to nonpayment of any obligation related to a residential real property, including but not limited to one or more loans, taxes, lease agreements, association fees, or maintenance fees;
12. Obtaining a loan or advance of funds during any post-tax sale redemption period;
13. Considering or deciding whether a consumer should continue making payments on any loan, taxes, lease assessments, association fees, or maintenance fees or any other obligation related to a residential real property;
14. Exercising any cure of default;
15. Avoiding or ameliorating the impairment of the property owner's credit resulting from the recording or filing of a notice of default or the conduct of a foreclosure sale or tax sale;
16. Drafting, preparing, performing, creating, or otherwise obtaining a forensic loan audit, a forensic securitization audit, or any other type of audit, report, summary, affidavit, or declaration involving an opinion, determination, or analysis of whether a lending party has an enforceable mortgage or lien, predicated upon claims that a lending party that is a party to a pooling and service agreement failed to adhere to the terms of that agreement, or that errors occurred after the signing of the mortgage loan, or disputing whether the lending party is the holder of the promissory note, or any argument that the lending party has failed to comply with federal or state mortgage lending laws;
17. Drafting, preparing, performing, creating, or otherwise obtaining any documentation used or intended to be used to advance any legal theory in defense of a foreclosure or ejectment action, regardless of any disclaimer as to providing legal advice or;
18. Understanding any legal theory that may be used in defense of a foreclosure or ejectment action, regardless of any disclaimer as to providing legal advice.

The term "Distressed Property Conveyance" means:
   The transfer of any interest in a Distressed Property effected directly or indirectly by or through a Distressed Property Consultant.

The term "Distressed Property Conveyance Contract" means:
   Any agreement or obligation affecting a Distressed Property Conveyance.

The term "Distressed Property Purchaser" means:
   Any person who acquires any interest in a Distressed Property directly or indirectly through a Distressed Property Conveyance or Distressed Property Conveyance Contract.

DocuSigned by:

*[signature]*                          1/26/2019

Buyer Michael Regan McKenna          Date      Seller HCFCU per "Order"            Date

Title _____          Title _____


Buyer                                Date      Seller                             Date

Title _____          Title _____

**NOTE:** THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

---

©Hawaii Association of REALTORS®          Page 2 of 2          RR222 Rev. 12/17 (NC)  For Release 11/18

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

This Disclosure form is from the National Lead Information Center under the United States Environmental Protection Agency.
This is NOT a Hawaii Association of REALTORS® Standard Form.

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure

(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  _____

  (ii) _____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the seller (check (i) or (ii) below):

  (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  _____

  (ii) _____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c)  _____ Purchaser has received copies of all information listed above.

(d)  _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e)  Purchaser has (check (i) or (ii) below):

  (i) __X__ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

  (ii) _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f)  _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller HGEGH, per "Order" | Date | Seller | Date |
| *Mr MIAM* | 1/26/2019 | | |
| Purchaser Michael Regan McKenna | Date | Purchaser | Date |
| *Pat Ferraris* | 1/26/2019 | | |
| Agent Pat Ferraris | Date | Agent Heidi Ho | Date |

Gold Coast Real Estate Inc., 2863 Kalakaua Avenue Honolulu, HI 96815
Phone: (808)735-7001          Fax:                    Pat Ferraris                                    7014 Niumalu

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A

Gold Coast Real Estate, Inc.
2863 Kalakaua Ave. #6

Honolulu, HI 96815

# STANDARD ADDENDUM

Purchase Contract  Reference Date: January 26, 2019
Property:                                          7014 Niumalu Loop, Honolulu, HI 96825
Seller:                                             HCFCU per "Order"
Buyer:                                             Michael Regan McKenna

1) **Building Permits Disclosure.** Buyer is aware that many residential properties do not have all building permits as required by county ordinances and/or may not have been built according to the plans or Building Permits issued. Buyer understands that there are potential risks in purchasing any property on which unpermitted or non-complying work has been done. These risks may include, but are not limited to:

    (1) a city or county agency may require the removal or rebuilding of the unpermitted or non-complying structures;

    (2) the Property may be in violation of zoning, use and/or occupancy limit ordinances, which might require removal or discontinued use of all or a portion of the Property;

    (3) a possible hazardous condition could be caused by non-conforming or unpermitted construction; and/or

    (4) a lender's appraisal of the property and the decision to extend financing could be adversely affected.

**During the J-1 inspection period, Buyer or Buyer's contractor, architect or other expert(s) are advised to review, among other things, the Property's building permit file, which may indicate whether structural modifications, additions and/or other items modified and/or changed were done with properly issued permits and if these building permits were inspected and signed by the appropriate county officials.** Buyer understands that the agents are not qualified to give opinions on these matters, including but not limited to proper examination and analysis of the permit file contents.

2) **Professional Home/Property Inspection/Home Protection Programs.** Buyer and Seller understand that the inspections referred to in paragraph J-1 encompass a wide range of professional fields and expertise. Buyer and Seller understand that Real Estate Brokers are not qualified to give opinions on these matters and acknowledge that neither party is relying on the Brokers for these services. IT IS STRONGLY RECOMMENDED THAT BUYER OBTAIN A PROFESSIONAL GENERAL HOME INSPECTION AS WELL AS SURVEYS AND INSPECTIONS IN SPECIALIZED AREAS BEYOND THE SCOPE OF GENERAL HOME INSPECTION. Buyer further acknowledges that Buyer's Agent at Buyer's request may provide Buyer with the names of at least three home inspectors.

DocuSigned by:

1/26/2019

_____     _____     Buyer 2651C2FEE3427...     _____
Seller                              Date                                              Date

_____     _____     _____     _____
Seller                              Date        Buyer                              Date

DocuSign Envelope ID: 480C5F47-3D83-40B8-AB04-EF54D811A2F5

Hawai'i Association of REALTORS®

# COUNTER OFFER

## Hawaii Association of REALTORS® Standard Form

Revised 12/17 (NC) For Release 11/18

REALTOR®

COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Reviewed by: Scott Villard (Name of Principal Broker/Broker-in-Charge) — DocuSigned by: Scott Villard, DB13041175I9495... (Signature) — Elite Pacific Properties (Brokerage Firm)

Counter Offer Reference Date: January 26, 2019 . Submitted by: [ ] Buyer [ X ] Seller

Purchase Contract Reference Date: January 26, 2019

Seller's Name: HCFCU per "Order"

Buyer's Name: Michael Regan McKenna

Property Reference or Address: 7014 Niumalu Loop Honolulu, HI 96825-1636 ("Property")

Tax Map Key: Div. 1 /Zone 3 /Sec. 9 /Plat 065 /Parcel 046 /CPR 0000 (if applicable).

**This Counter Offer cancels and supersedes any and all prior Counter Offers. All previous Counter Offers that have not been fully executed are null and void. All terms and conditions from any prior Counter Offers that are to be retained must be restated in this Counter Offer.**

**INSTRUCTIONS:**

1. **To Accept this Counter Offer: Complete the boxed section entitled "Acceptance of Counter Offer".**
2. **To Make a NEW Counter Offer: Complete a new Counter Offer form with a new Counter Offer Reference Date.**
3. **Alternatively, Buyer may submit a new Purchase Contract.**

**FILL IN ALL CHECK BOXES. Write "NC" if no change and "X" if there is a change. In the blanks provided, clearly identify the specific change(s), deletion(s) or addition(s) which comprise the terms of this Counter Offer.**

[ NC ] SECTION A: AGENCY DISCLOSURE ____________

[ NC ] SECTION B: INITIAL EARNEST MONEY DEPOSIT RECEIPT ____________

[ NC ] SECTION C: ADDENDA (add or delete) ____________

### SECTION D: OFFER TO BUY AND PURCHASE PRICE

[ NC ] D-2 **Purchase Price.** The Purchase Price for the Property in U.S. dollars shall be paid as follows:

$ ________ Initial earnest money deposit from Paragraph B-1

$ ________ Additional deposit, if any, paid into Escrow on or before ________ .

$ ________ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing.

$ ________ TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs).

$ ________ By way of ________

$ ________

$ ________ **TOTAL PURCHASE PRICE**

**Failure by Buyer to make any of the scheduled deposits as required under Paragraph D-2 above shall constitute a default, and Seller may elect to terminate the Purchase Contract pursuant to Paragraph O-1.**

BUYER'S INITIALS & DATE ________ 

DS DT 1/26/2019 | 21:12 PM PS
SELLER'S INITIALS & DATE

EQUAL HOUSING OPPORTUNITY

Elite Pacific Properties LLC, 4211 Waialae Ave #106 Honolulu HI 96816
Phone: (808) 284-5777 Fax: Heidi Ho KEALOHA - 7014
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 480C5F47-3D83-40B8-AB04-EF54D811A2F5

[ X ] **The following Sections of the Purchase Contract (E to S) and/or terms and conditions of any Addenda, are amended as follows. Please reference the appropriate Section, Paragraph, Subparagraph, or Addenda.**

F-2.   Change to:   Per terms of "Order"

F-3(a)   NA.   Per Order.

F-4.   Change to: Julie Oshiro - Title Guaranty, Main - (808) 535-1841, joshiro@tghawaii.com

Section G.   NA.   Per Order

I-4(a)  2;  (b) 7

I-5. 7

L-2.   Change to:   ...report shall be delivered to Buyer by "10 days from acceptance"

M-1.   Change first three blanks to: 14, 2, 7.

THIS COUNTER OFFER CANCELS AND SUPERSEDES ANY AND ALL PRIOR COUNTER OFFERS TO THE REFERENCED PURCHASE CONTRACT.

The undersigned agree to sell/buy the above described Property on the terms and conditions set forth in the Purchase Contract, as amended by this Counter Offer and acknowledge receipt of a copy of this Counter Offer. **This Counter Offer can be withdrawn at any time prior to delivery of a written acceptance to the undersigned's Brokerage Firm.**

**EXPIRATION:** This Counter Offer shall expire at ___12:00___ [ ]AM/ [x]PM on _____January 27, 2019_____ .

DocuSigned by:

*Drake Tanabe*

Signature of Party *Submitting* Counter Offer
[ ] Buyer    or    [ X ] Seller

Title **President of HCFCU**

Date: 1/26/2019 | 21:12 PM PST _____ , _____ [ ]AM/ [ ]PM.

Signature of Party *Submitting* Counter Offer
[ ] Buyer    or    [ ] Seller

Title _____

ACCEPTANCE OF COUNTER OFFER: I/We accept this Counter Offer and agree to sell/buy the Property on the terms and conditions in the Purchase Contract, as modified by this Counter Offer, and acknowledge receipt of a copy of this Counter Offer.

Acceptance Date: _____ , _____ [ ]AM/ [ ]PM.

Signature of Party *Accepting* Counter Offer
[ X ] Buyer    or    [ ] Seller

Signature of Party *Accepting* Counter Offer
[ ] Buyer    or    [ ] Seller

**NOTE:** THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

©Hawaii Association of REALTORS®

RR204 Rev. 12/17 (NC)  For Release 11/18

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

KEALOHA - 7014

DocuSign Envelope ID: 95311C59-3E11-432A-A598-B677D4BF0EC0



**COUNTER OFFER**
Hawaii Association of REALTORS® Standard Form
Revised 12/17 (NC)   For Release 11/18



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Reviewed by: _____Scott Villard_____   *Scott Villard*   Elite Pacific Properties
Name of Principal Broker/Broker-in-Charge       Signature DB1SD417F5F495...          Brokerage Firm

Counter Offer Reference Date: _____January 26, 2019_____ . Submitted by: [  ] Buyer [ X ] Seller

Purchase Contract Reference Date: January 26, 2019

Seller's Name:           HCFCU per "Order"

Buyer's Name:            Michael Regan McKenna
                         7014 Niumalu Loop
Property Reference or Address:  Honolulu, HI  96825-1636                    ("Property")

Tax Map Key:   Div. __1__ /Zone __3__ /Sec. __9__ /Plat __065__ /Parcel __046__ /CPR __0000__ (if applicable).

This Counter Offer cancels and supersedes any and all prior Counter Offers. All previous Counter Offers that have not been fully executed are null and void. All terms and conditions from any prior Counter Offers that are to be retained must be restated in this Counter Offer.

**INSTRUCTIONS:**
1. To Accept this Counter Offer: Complete the boxed section entitled "Acceptance of Counter Offer".
2. To Make a NEW Counter Offer: Complete a new Counter Offer form with a new Counter Offer Reference Date.
3. Alternatively, Buyer may submit a new Purchase Contract.

FILL IN ALL CHECK BOXES. Write "NC" if no change and "X" if there is a change. In the blanks provided, clearly identify the specific change(s), deletion(s) or addition(s) which comprise the terms of this Counter Offer.

[ NC ] SECTION A: AGENCY DISCLOSURE _____

[ NC ] SECTION B: INITIAL EARNEST MONEY DEPOSIT RECEIPT _____

[ NC ] SECTION C: ADDENDA (add or delete) _____
_____
_____

**SECTION D: OFFER TO BUY AND PURCHASE PRICE**

[ NC ] D-2  **Purchase Price.** The Purchase Price for the Property in U.S. dollars shall be paid as follows:

$ _____ Initial earnest money deposit from Paragraph B-1

$ _____ Additional deposit, if any, paid into Escrow on or before _____ .

$ _____ Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing.

$ _____ TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs).

$ _____ By way of _____
_____
_____

$ _____ _____
_____
_____

$ _____ **TOTAL PURCHASE PRICE**

**Failure by Buyer to make any of the scheduled deposits as required under Paragraph D-2 above shall constitute a default, and Seller may elect to terminate the Purchase Contract pursuant to Paragraph O-1.**

M R 1/27/2019                               1/26/2019 | 21:12 PM PS
BUYER'S INITIALS & DATE                      SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®              Page 1 of 2
Counter Offer
RR204 Rev. 12/17 (NC)

DocuSign Envelope ID: 95311C59-3E11-432A-A598-B677D4BF0EC0

[ X ] The following Sections of the Purchase Contract (E to S) and/or terms and conditions of any Addenda, are amended as follows. Please reference the appropriate Section, Paragraph, Subparagraph, or Addenda.

F-2.   Change to:  Per terms of "Order"

F-3(a)   NA.   Per Order.

F-4.   Change to: Julie Oshiro - Title Guaranty, Main - (808) 535-1841, joshiro@tghawaii.com

Section G.   NA.   Per Order

I-4(a) 2; (b) 7

I-5. 7

L-2.   Change to:  ...report shall be delivered to Buyer by "10 days from acceptance"

M-1.   Change first three blanks to: 14, 2, 7.

__THIS COUNTER OFFER CANCELS AND SUPERSEDES ANY AND ALL PRIOR COUNTER OFFERS TO THE REFERENCED PURCHASE CONTRACT.__

The undersigned agree to sell/buy the above described Property on the terms and conditions set forth in the Purchase Contract, as amended by this Counter Offer and acknowledge receipt of a copy of this Counter Offer. **This Counter Offer can be withdrawn at any time prior to delivery of a written acceptance to the undersigned's Brokerage Firm.**

**EXPIRATION:** This Counter Offer shall expire at ____12:00____ [ ] AM/ [ x ] PM on _____January 27, 2019_____ .

DocuSigned by:

*Drake Tanabe*

Signature of Party *Submitting* Counter Offer                    Signature of Party *Submitting* Counter Offer
[   ] Buyer      or      [ X ] Seller                              [   ] Buyer      or      [   ] Seller

Title **President of HCFCU**                                       Title _____

Date: ____1/26/2019 | 21:12 PM PST____ , _____ [ ] AM/ [ ] PM.

ACCEPTANCE OF COUNTER OFFER: I/We accept this Counter Offer and agree to sell/buy the Property on the terms and conditions in the Purchase Contract, as modified by this Counter Offer, and acknowledge receipt of a copy of this Counter Offer.

Acceptance Date: ____1/27/2019____ , _____ [ ] AM/ [ ] PM.

DocuSigned by:

Signature of Party *Accepting* Counter Offer                      Signature of Party *Accepting* Counter Offer
[ X ] Buyer      or      [   ] Seller                              [   ] Buyer      or      [   ] Seller

**NOTE:** THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          KEALOHA - 7014

DocuSign Envelope ID: 71BD41F7-A868-4573-A850-747E9EA30F08



# PACIFIC PROPERTIES

## Amendment #<u>1</u> to Purchase Contract

Purchase Contract Reference Date: **January 26, 2019**
Address: 7014 Niumalu Loop, Honolulu, HI  96825-1636
TMK #: <u> 1 </u> - <u> 3 </u> - <u> 9 </u> - <u>065</u> - <u>046</u> - <u>0000</u>
Seller: **HCFCU per "Order"**
Buyer: **Michael Regan McKenna**

The Purchase Contract is amended as follows:
**Buyer and Seller agree to amend the Purchase Contract as follows:**

**B-1:**
**1.  Buyer will deposit $50,000 into escrow by Feb 6, 2019.**
**2.  Buyer will deposit an additional $80,500 into escrow the day after the confirmation hearing, when Court confirms this Buyer's purchase of the property.**

All other terms and conditions of the Purchase Contract remain in full effect. The undersigned acknowledge that they have read, understood & agree to the terms and conditions of this Amendment and further acknowledge receipt of a complete copy hereof.

| | | | |
|---|---|---|---|
| Seller ⁴⁰⁸⁰D03E7A32F49C... | 1/31/2019 | 10:16 AM PST<br>Date | Buyer 3D2651C2FEE3427...<br>**Michael Regan McKenna** | 2/5/2019<br>Date |
| **HCFCU per "Order"** | | | |

| | | | |
|---|---|---|---|
| Seller | Date | Buyer | Date |

Principal Broker/BIC   1/30/2019 | 19:45 PM PST
Date
**Scott Villard**

NOTICE OF MOTION FOR CONFIRMATION OF INTERLOCUTORY SALE
OF REAL PROPERTY
CRIM NO. 18-00068 JMS-RLP
United States of America vs Katherine P. Kealoha, et al.
7014 Niumalu Loop, Honolulu, Hawaii 96825
TMK: 1-3-9-065-046-0000

COURT HEARING
DATE: _____, 2019 at _____ ___.m at the U.S. District Court for the District
of Hawaii before the Honorable Richard L. Puglisi
300 Ala Moana Blvd C-338
Honolulu, Hawaii 96850
TERMS OF ACCEPTED OFFER:
Price: $1,305,000.00
Terms: Cash, no contingencies

Sale to be confirmed at the Court Hearing.  Any bona fide offer that guarantees at
least a ten percent increase over the price offered must be made pursuant to the
same terms and conditions as ordered by the Court.  All bona fide offers may be
presented prior to or at the court confirmation hearing, along with proof of cash
funds.  Any Buyer to submit an overbid will provide cash or cashier's check of at
least 10% of the total bid at the time the overbid is made.  Offers may be presented
to Heidi Ho, RA, 808-284-5777, 4211 Waialae Avenue, #106, Honolulu Hawaii
96816.

EXHIBIT 2

DocuSign Envelope ID: 8F75368C-1FB9-4853-AEB8-93E20986CECF



**EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT**
Hawaii Association of REALTORS® Standard Form
Revised 12/17  For Release 5/18



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Licensee in Brokerage Firm is[ X ] is not[   ] a REALTOR® and member of the National Association of REALTORS®.  Seller is aware that the National Association of REALTORS® holds its members accountable for their actions through a strict Professional Code of Ethics, which includes a grievance system to address complaints.  Non-members are not required to participate in the grievance system.

Property Reference or Address: <u>7014 Niumalu Loop, Honolulu, HI  96825-1636</u>

Tax Map Key: Div. __1__ /Zone __3__ /Sec. __9__ /Plat _065_ /Parcel _046_ /CPR _0000_ (if applicable).

| | |
|---|---|
| <u>Elite Pacific Properties LLC</u> | <u>HI Central Fed Credit Union</u> |
| Brokerage Firm | Seller's Name |
| <u>RB-18825</u>　　　　　　<u>808-589-2040</u> | Authorized Representative <u>Drake Tanabe</u> |
| State License No.　　　　　　Phone | |
| | Title <u>President</u> |
| | |
| <u>Kahala Mall, 4211 Waialae Ave #106</u> | |
| Address | Seller's Name |
| <u>Honolulu, HI  96816</u> | Authorized Representative _____ |
| | Title _____ |
| | |
| <u>Heidi Ho</u> | |
| Real Estate Licensee | Seller's Name |
| <u>RS-56577</u>　　　　　　<u>808-284-5777</u> | Authorized Representative _____ |
| State License No.　　　　　　Phone | Title _____ |

NOTE:  Prior to executing this Exclusive Right-To-Sell Listing Contract, Seller is obligated to provide Brokerage Firm with a list of prospects received from Seller's former Listing agent. See D-11.

## SECTION A: TERMS AND CONDITIONS BETWEEN SELLER AND BROKERAGE FIRM

A-1　**AGENCY:** The Buyer and/or Seller in a real estate transaction in Hawaii may retain a real estate Brokerage Firm as their agent. In such case, the Buyer and/or Seller is represented by the Brokerage Firm and all of its licensees. Hawaii law requires real estate licensees to disclose orally or in writing to Seller and/or Buyer whom the licensee represents. The form of representation may be one of the following:
　　(a)　**Seller's Agent.**  Brokerage Firm represents Seller only unless a disclosed dual agency exists.  Seller's Agent owes the highest duties to Seller, including confidentiality, loyalty, and due care and diligence.
　　(b)　**Buyer's Agent.**  Brokerage Firm represents Buyer only unless a disclosed dual agency exists.  Buyer's Agent owes the highest duties to Buyer, including confidentiality, loyalty, and due care and diligence.
　　(c)　**Dual Agent.**  Brokerage Firm represents both Buyer and Seller.  This commonly occurs when licensees in the Brokerage Firm representing Seller have a Buyer client looking for types of property similar to Seller's property.  In such event, the Brokerage Firm and all of its licensees represent both Buyer and Seller and are dual agents.  Dual agents must remain neutral in negotiations and must not advance the interest of one party over the other.

　　　Seller　　[ X ] agrees　　　[   ] does not agree to Dual Agency
　　　**If Seller agrees, then a separate written Dual Agency Consent Addendum is required with the Purchase Contract under Hawaii law.**

　　**Customer.** Seller's Agent can also assist Buyer as a customer. As a customer, Buyer is not represented by Seller's Agent. Seller's Agent can assist Buyer in writing the Purchase Contract, can present the Purchase Contract to Seller, and can report back to Buyer any acceptance or request for changes to the Purchase Contract.

A-2　**OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants and certifies that:
　　(a)　Seller is the owner of the Property,
　　(b)　Only those named above have title to the Property,
　　(c)　Seller has the authority to execute this Listing Contract and to sell the Property, and
　　(d)　Seller is not a party to any other listing contract or commission agreement to sell the Property.

| | |
|---|---|
| SV | DS DT |
| 1/7/2019 | 09:41 AM PST | 10/16/2018 | 12:41 PM |
| BROKER'S INITIALS & DATE | SELLER'S INITIALS & DATE |

©Hawaii Association of REALTORS®
Exclusive Right-To-Sell Listing Contract
RR101  Rev. 12/17

Page 1 of 5

Elite Pacific Properties LLC, 4211 Waialae Ave #106 Honolulu HI 96816
Phone: (808) 284-5777　　Fax:　　　　Heidi Ho



KEALOHA - 7014

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# EXHIBIT 3

A-3   **EXCLUSIVE RIGHT TO SELL:** "Exclusive Right To Sell" means that Seller shall list the Property with Brokerage Firm only and that Brokerage Firm is entitled to a commission if the Property is sold by Brokerage Firm or Seller. Seller hereby employs Brokerage Firm as Seller's agent and grants Brokerage Firm the exclusive and irrevocable right to sell or exchange the Property identified above and described on the attached EXHIBIT A (Property Information). Seller shall conduct all negotiations regarding the sale of the Property only through Brokerage Firm, and will refer to Brokerage Firm all communications received in any form relating to the sale of the Property from any source during the Listing Period.

A-4   **LISTING PERIOD:** Begins (date) ____October 15, 2018____ and ends at 11:59 PM (HST) on (date) _____October 14, 2019_____ . Either party may end the Listing Contract with _____Thirty_____ ( 30 ) calendar days' advanced written notice to the other. However, neither party may end this Listing Contract before 11:59 PM (HST) on (date) ____December 17, 2018____ unless Seller and Brokerage Firm agree in writing, to an earlier date.

A-5   **ITEMS INCLUDED OR EXCLUDED:** Unless specifically excluded in Exhibit A which is made part of this Listing Contract, all fixtures and built-in appliances attached to the Property will be included in the sale. Personal property and staging items will be excluded.

A-6   **LISTING PRICE:** ____One million three hundred thousand_____ US Dollars ($ 1,300,000.00 ).

A-7   **COMPENSATION TO BROKERAGE FIRM:** Seller agrees to pay Brokerage Firm in US Dollars, ____6% of Sales Price____
on the occurrence of any of the following:

  (a) Brokerage Firm, Seller, Cooperating Broker or any other person procures a Buyer (or Buyers) who offers to purchase the Property on the price and terms of this Listing Contract, or on any price and terms acceptable to Seller, during the Listing Period or any extension of the Listing Period, no matter who (including Seller) procures the Buyer.
  (b) Brokerage Firm procures a Buyer (or Buyers) ready, willing and able to pay the Listing Price and meet the other material terms of this Listing Contract, and Seller refuses to sign the Purchase Contract.
  (c) Brokerage Firm procures a ready, willing and able Buyer who meets the price and terms acceptable to Seller, executes a Purchase Contract with a Buyer and Seller subsequently defaults under the terms of the Purchase Contract.
  (d) Seller withdraws Property from sale before the end of this Listing Contract without the consent of Brokerage Firm.
  (e) If Seller enters into an option agreement with a Buyer, Seller agrees to pay one-half of the option consideration. However, Seller will not pay more than what would have been Brokerage Firm's full commission. Seller will pay the balance of the commission, if any, and any agreed upon general excise tax when the option is exercised, even if it occurs after the expiration of the Listing Contract.
  (f) If any defaulting Buyer's deposits are forfeited, Brokerage Firm is entitled to one-half of such deposit, not to exceed what would have been Brokerage Firm's full commission.
  (g) Protection Period is exercised in A-8 below.

A-8   **PROTECTION PERIOD:**

  (a) **Protection Period and Prospects List for this Listing Contract.** The Protection Period under this Listing Contract is the designated period of time after the expiration or termination of this Listing Contract during which Seller may be obligated to pay Brokerage Firm compensation even after such expiration or termination of this Listing Contract and Brokerage Firm no longer represents Seller as listing agent. The obligation of Seller to compensate Brokerage Firm during the Protection Period is based on the terms and conditions as set forth below.

    (1) The Protection Period for this Listing Contract is _____Ninety_____ ( 90 ) calendar days from the expiration or termination of this Listing Contract.

    (2) Within ten calendar (10) days from expiration or termination of this Listing Contract, Brokerage Firm shall provide a written prospects list of potential Buyers names to whom the Property was presented during the term of this Listing Contract (Prospects List). If Brokerage Firm fails to submit a Prospects List to Seller within the time provided here, then the Protection Period shall not apply to Brokerage Firm.

    (3) If during the Protection Period Seller enters into an accepted Purchase Contract, exchange agreement or grants an option to purchase the Property under a Purchase Contract, with any prospect Buyer whose name appears on a timely submitted Prospects List as provided in Paragraph A-8 (a)(2) above, Brokerage Firm shall be entitled to compensation.

    (4) Compensation owed to Brokerage Firm under this Protection Period shall be paid pursuant to Paragraph A-7 (g) above.

A-9   **COMPENSATION TO COOPERATING BROKERAGE FIRM:** Brokerage Firm is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Brokerage Firm's compensation either __3.0__ % of purchase price, or $ __--__ . Brokerage Firm is authorized to cooperate with and compensate other brokerage firms operating outside the MLS at Brokerage Firm's discretion.

A-10  **ADDITIONAL TERMS:** __Court Order Addenda will be the prevailing document dictating conditions of sale__ __of property. HCFCU is authorized "Seller" of property. Property to be sold "free and clear of__ __all right, title, claim, liens and interest". No Seller's Disclosures will be provided;__ __property to be sold AS-IS. The Sale is subject to public notices and court confirmation. Date__ __to Activate listing, Listing price and commission to be finalized by Seller in writing.__

A-11  **ADDENDA MADE PART OF THIS CONTRACT:** __1. Distressed Property Addendum to Exclusive Right-To-Sell__ __Listing Contract; 2. Order Granting the United States' Motion for Interlocutory Sale of Real__ __Property Subject to Criminal Forfeiture (Case 1:18 cr-00068-JMS-RLP Doc 79 filed 9/27/18); 3)__ __Addendum #1 to Exclusive Right-to-Sell Listing Contract.__

## SECTION B: BROKERAGE FIRM'S OBLIGATION

B-1   **BEST EFFORTS:** Brokerage Firm agrees to use its best efforts to achieve the sale of the listed Property to a qualified Buyer at a price and upon terms acceptable to Seller.

SV   1/7/2019 | 09:41 AM PST
BROKER'S INITIALS & DATE

DT   10/16/2018 | 12:41 PM
SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®

RR101  Rev. 12/17  For Release 5/18

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   KEALOHA - 7014

DocuSign Envelope ID: 8F75368C-1FB9-4853-AEB8-93E20986CECF

B-2 **MARKETING:** Upon execution of this Exclusive Right-to-Sell Listing Contract, Brokerage Firm is authorized to:
  (a) Place a for sale sign on the Property and install a lock box on the property;
  (b) Advertise the Property for sale by way of the MLS, internet, newspaper, radio, TV, Social Media or any other means that are in compliance with County, State, or Federal law;
  (c) Prepare informational sheet to provide to potential Buyers and any other promotional items as Brokerage Firm deems advisable; and
  (d) Hold Broker's Opens, Open Houses and any other special showings as Brokerage Firm deems appropriate.

  NOTE: Seller acknowledges, understands, and agrees that all means of advertisement generated by Brokerage Firm will enter the marketplace and will not ever be retrieved.

B-3 **COMMUNICATION:** Brokerage Firm agrees to keep Seller informed of any potential interest in the Property, and to present all offers in a timely manner.

B-4 **NEGOTIATING:** Brokerage Firm agrees to assist Seller in evaluating and negotiating all offers, subject to the constraints imposed by dual agency.

B-5 **ESCROW PROCESS:** Brokerage Firm agrees to assist and guide Seller to fulfill all of Seller's obligations agreed to in the Purchase Contract.

B-6 **FAIR HOUSING LAWS:** Brokerage Firm shall comply with State and Federal anti-discrimination laws.

### SECTION C: SELLER'S REPRESENTATIONS

Seller represents that, unless otherwise specified in writing, Seller is not aware of any of the following conditions and Seller shall promptly notify the Listing Brokerage Firm in writing if Seller becomes aware of any of these conditions during the Listing Period, which shall include any extension(s) of Listing Period:

C-1 **FINANCING DEFAULTS AND DISTRESSED PROPERTY:** Any notice of default or pending foreclosure action against the Property.

C-2 **DELINQUENT ASSSESSMENTS:** Any delinquent assessments due under any loan or other obligation such as real property taxes, AOAO, Homeowner, or Community Association dues, or child support or alimony payments.

C-3 **INSOLVENCY:** Filings of bankruptcy, insolvency or similar proceedings affecting the Property.

C-4 **LITIGATION:** Arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the value of the Property or Seller's ability to transfer the Property or title to the Property.

C-5 **SPECIAL ASSESSMENTS:** Pending or proposed special assessments affecting the Property.

C-6 **REGULATORY VIOLATIONS:** Violations of government regulations/ordinances related to the Property including any fines.

C-7 **ASSOCIATION VIOLATIONS:** Violations of AOAO and HOA/Community Association rules and regulations, Covenants, Conditions and Restrictions.

C-8 **FINANCIAL OBLIGATIONS:** Financial obligations that may exceed the proceeds of the sale and may require a short sale approval.

C-9 **LIENS AND JUDGEMENTS:** Encumbrances that affect conveyance of title to the Property.

### SECTION D: SELLER'S OBLIGATION

D-1 **COOPERATION:** Seller will prepare the Property for showings and open houses. Seller shall provide all pertinent information, documents, and keys, and permit access to the Property for home and other inspections including termite inspectors, appraisers, surveyors and other service providers.

D-2 **ACCESS:** Seller shall allow access, as needed, during reasonable hours for showings, open houses, home inspections, and as may be required by law in the case of tenant occupancy.

D-3 **LOCK BOX:** Seller agrees to permit and will obtain written permission from any tenant to install a lock box or electronic key device on the Property to allow for showings and inspections.

D-4 **SECURING VALUABLES:** Seller agrees to secure all valuables and will instruct any occupants to secure their valuables. Brokerage Firm will not be responsible for any valuables, or for loss or damage to real or personal property.

D-5 **PROFESSIONAL ADVICE:** Seller is advised to consult an attorney, accountant, or other appropriate professionals. Seller is not relying upon Brokerage Firm for any such advice.

D-6 **OFFERS:** Seller agrees to consider all offers presented by Brokerage Firm and to act in good faith to sell the Property. Seller shall also agree to respond in writing to any offers presented by Brokerage Firm, indicating acceptance, rejection or preparing a counter offer.

D-7 **DISCLOSURE OF MATERIAL FACTS:** Pursuant to Hawaii Revised Statutes, Chapter 508D (for residential real property) and under common law (for all other real estate transactions, including the sale of vacant land) a Seller of residential real property is obligated to fully and accurately disclose in writing to a Buyer all "material facts" concerning the Property. "Material facts" are defined as "any fact, defect or condition, past or present, that would be expected to measurably affect the value to a reasonable person of the residential real property being offered for sale". Seller hereby agrees to provide a written disclosure statement to a Buyer containing any fact, defect or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person. Such disclosure statement shall be prepared in good faith with due care and shall disclose all material facts relating to the Property that: (i) are within Seller's knowledge or control; (ii) can be observed from visible accessible areas or (iii) are required by Section 508D-15 of Hawaii Revised Statutes.
  (a) Pursuant to 508D-15, Seller MUST include information in the Seller's Real Property Disclosure Statement if Property lies: (i) within the boundaries of a special flood hazard area as officially designated on Flood Insurance Administration (FEMA) maps; (ii) within the boundaries of the noise exposure area shown on maps prepared by the Department of Transportation in accordance with Federal Aviation Regulation Part 150-Airport Noise Compatibility Planning (14 Code of Federal Regulations Part 150) for any public airport; (iii) within the boundaries of the Air Installation Compatibility Use Zone of any Air Force, Army, Navy or Marine Corps airport as officially designated by military authorities or (iv) within the anticipated inundation areas designated on the Department of Defense's Civil Defense Tsunami Inundation Maps subject to the availability of maps that designate the four areas by TAX MAP KEY.
  (b) Seller understands that purposely or negligently failing to comply with this disclosure law may result in liability for damages. Seller further understands that if a written disclosure statement is not provided, or if inspection of the Property by a third party reveals facts inconsistent with or contradictory to Seller's disclosure statement, Hawaii law requires that Brokerage Firm disclose those facts to Seller, Buyer and Buyer's agent. This obligation of disclosure limits Brokerage Firm's agency duty of confidentiality. Seller also understands that if, after Seller's disclosure statement has been delivered to Buyer and prior to closing, Seller becomes aware of information which was not previously disclosed or which makes any statement in the disclosure statement inaccurate and said information directly, substantially,

---

SV   1/7/2019 | 09:41 AM PST

**BROKER'S INITIALS & DATE**

D↑   10/16/2018 | 12:41 PM PD

**SELLER'S INITIALS & DATE**

©Hawaii Association of REALTORS®                    Page 3 of 5                    RR101 Rev. 12/17 For Release 5/18

and adversely affects the value of the Property, then Seller shall provide an amended disclosure statement, in writing, to Buyer within ten (10) days after the discovery and in no event later than twelve noon on the last business day prior to the recorded sale of the Property.

D-8 **LEASEHOLD DISCLOSURE:** If the Property is leasehold, Seller agrees to provide, at Seller's expense, a current leasehold disclosure as required by Hawaii State law. Seller authorizes Brokerage Firm to order such a disclosure from a qualified professional, if such professional service is available.

D-9 **FAIR HOUSING LAWS:** Seller shall comply with State and Federal anti-discrimination laws.

D-10 **SEX OFFENDER:** Hawaii has enacted a law (Megan's Law) requiring sex offenders to register with the State Attorney General's office. If Seller has knowledge that a sex offender resides in the immediate area of the Property, Seller is required to disclose such information to Buyer.

D-11 **PROSPECTS FROM PRIOR LISTINGS:** When signing this Listing Contract, Seller shall deliver to Brokerage Firm a copy of any prospect list given to Seller from any earlier listing with another brokerage firm. If another brokerage firm earns a commission because of a sale to any prospect on such a list, Seller will not be obligated to pay current Brokerage Firm any commission unless otherwise agreed. However, should Seller fail to provide such a list from their previous listings, the Seller may be liable to pay multiple commissions.

D-12 **MEDIATION AND ARBITRATION:** If any dispute or claim in law or equity arises out of this Contract, and the parties are unable to resolve the dispute, Seller agrees to attempt in good faith to settle such dispute or claim by non-binding mediation through the Local Board of REALTORS® or, in the event the Local Board of REALTORS® does not provide mediation services, then through a mutually agreed upon mediator. If the mediation is not successful, then Seller will consider arbitration and may seek legal counsel to make this determination. It is understood that if both parties are involuntarily named as defendants in a lawsuit by a third party in any matter arising out of this Agreement, this paragraph shall no longer be binding on either party.

D-13 **ESCROW:** A bonded company shall be employed to help with the conveyance of the Property. Seller hereby irrevocably assigns to Brokerage Firm the above compensation and any agreed upon general excise tax from Seller's funds and proceeds in escrow.

D-14 **COSTS:** Seller shall pay the following, including but not limited to:

    (a) Agreed upon commission to Brokerage Firm per A-7 above;
    (b) Customary closing costs;
    (c) Costs of Homeowner Association and cost of all documentation as required by Section 508D of the Hawaii Revised Statutes;
    (d) Costs involved with termite or survey matters;
    (e) Any other fees or costs that Seller is obligated to or agrees to be responsible for in the Purchase Contract; or
    (f) Legal fees.

## SECTION E: SELLER'S AUTHORIZATIONS

E-1 **OTHER BROKERAGE FIRMS:** Seller authorizes Brokerage Firm to cooperate and share commissions with other brokerage firms.

E-2 **OTHER CLIENTS:** Brokerage Firm may have agreements with other Sellers to market and sell their property. Seller agrees, consents and waives any objections should Brokerage Firm list and show similar properties as Seller's property.

E-3 **RELEASE OF INFORMATION:**

    (a) Seller authorizes Brokerage Firm and Escrow to obtain any information regarding mortgage balances, lease rents, maintenance fees, property management, collection accounts, real property taxes or like items. Some of this information will be available to prospective Buyers in MLS.

    (b) Seller hereby consents to publication of the Property information in MLS and to the use of this information for market studies and advice to clients or customers. Seller understands that Brokerage Firm is obligated to comply with all applicable MLS rules. MLS rules allow MLS data to be made available by the MLS to additional public Internet and social media sites unless Seller gives Brokerage Firm instructions to the contrary.

## SECTION F: MISCELLANEOUS TERMS

F-1 **Foreign Investment in Real Property Tax Act (FIRPTA): Withholding Required If Seller Is A Foreign Person.** Under the Internal Revenue Code, if Seller is a foreign person or entity (non-resident alien, corporation, partnership, trust or estate), then Buyer is generally required to withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate Internal Revenue Service ("IRS") form to the IRS. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. **Seller must complete the authorized exemption or waiver form, or Escrow will withhold/collect from Seller the required amount at closing and forward it to the IRS.**

F-2 **Hawaii Real Property Tax Act (HARPTA): Withholding Required If Seller Is A Non-Resident Of The State Of Hawaii.** Under Hawaii law, if Seller is a non-resident person or entity (corporation, partnership, trust or estate) of the State of Hawaii, Buyer must withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate form to the State Department of Taxation. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. **Seller must complete the authorized exemption or waiver form, or Escrow will withhold/collect from Seller the required amount at closing and forward it to the State Department of Taxation.**

F-3 **CONFLICT IN TERMS:** Any handwritten word in this Listing Contract prevails over any typed or printed word.

F-4 **INDEMNIFICATION:** Seller agrees to indemnify, defend and hold Brokerage Firm harmless from actions on the part of Seller for fraud, misrepresentation or failure to disclose any material facts that may result in dispute, litigation judgement or attorney fees.

SV  1/7/2019 | 09:41 AM PST

BROKER'S INITIALS & DATE

Ɗ  10/16/2018 | 12:41 PM

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®

Page 4 of 5

RR101 Rev. 12/17 For Release 5/18

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

KEALOHA - 7014

DocuSign Envelope ID: 8F75368C-1FB9-4853-AEB8-93E20986CECF

Seller and Brokerage Firm acknowledge that Seller and Brokerage Firm have read and agree to the terms and conditions of the Exclusive Right-to-Sell Listing Contract and any Addenda attached to the Listing Contract, including Exhibit A. Seller represents that if Seller is an individual, a trust, corporation, partnership, or other legal entity, and the person(s) signing below has/have the authority to sign on behalf of Seller.

| | | |
|---|---|---|
| 10/16/2018 | 12:41 PM PDT | *Drake Tanabe* | HI Central Fed Credit Union |
| Date | Signature | Name (print or type) |

| | |
|---|---|
| 681 S King St, Honolulu, HI 96813-3016 | (808) 441-7311 |
| Address | Phone |

drake@hawaiicentral.org
E-Mail

_____    _____    _____
Date                                    Signature                              Name (print or type)

_____                                   _____
                                  Address                                              Phone

_____
E-Mail

_____    _____    _____
Date                                    Signature                              Name (print or type)

_____                                   _____
                                  Address                                              Phone

_____
E-Mail

| | | |
|---|---|---|
| Elite Pacific Properties LLC | By: *Scott Villard* | 1/7/2019 | 09:41 AM PS |
| Brokerage Firm | Principal Broker/Broker-in-Charge | Date |

Seller acknowledges receipt of an executed copy of this Listing Contract and attached Addenda including Exhibit A.

*DT*
SELLER'S INITIALS

NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language, but there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES. This means that the Hawaii Association of REALTORS® is not liable to any Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

DocuSign Envelope ID: 071163F2-93F5-48AC-B0CB-528692A3253A



# COOPERATING BROKERAGE FIRM'S SEPARATE CONTRACT
## Hawaii Association of REALTORS® Standard Form
### Revised 12/17 (NC)   For Release 11/18



COPYRIGHT AND TRADEMARK NOTICE: THIS COPYRIGHTED HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM IS LICENSED FOR USE UNDER TERMS OF THE HAWAI'I ASSOCIATION OF REALTORS® STANDARD FORM LICENSE AGREEMENT LOCATED AT http://www.hawaiirealtors.com/standard-form-policy. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Purchase Contract Reference Date: __January 26, 2019__

| | |
|---|---|
| Seller: | HCFCU per "Order" |
| Buyer: | Michael Regan McKenna |
| Property Reference or Address: | 7014 Niumalu Loop, Honolulu, HI  96825-1636 |

Tax Map Key:   Div. __1__ /Zone __3__ /Sec. __69__ /Plat __065__ /Parcel __046__ /CPR __0000__ (if applicable).

1. In consideration of the assistance given by the Cooperating Brokerage Firm who is referred to below, Listing Brokerage Firm agrees to pay a commission at closing to Cooperating Brokerage Firm in the following amount: **3% of the Sales Price, No GET** _____. The commission payable to Cooperating Brokerage Firm shall be paid through Escrow and shall be subject to the receipt of Listing Brokerage Firm's commission from Seller.

2. Listing Brokerage Firm certifies that both the Brokerage Firm and the licensees involved in this transaction hold current active real estate licenses.

3. Cooperating Brokerage Firm certifies that both the Brokerage Firm and licensees involved in this transaction hold current, active real estate licenses.

4. If any dispute or claim arises out of the transaction between Seller and/or Buyer and either or both of the Brokerage Firms or their respective licensee, and the parties are unable to resolve the dispute, the Brokerage Firms agree in good faith to attempt to settle such dispute or claim by non-binding mediation through the Local Board of REALTORS® or through a mutually agreed upon mediator. This paragraph shall not apply to any complaint of unethical conduct against a Brokerage Firm or the Brokerage Firm's licensees who are obligated to comply with the Code of Ethics of the National Association of REALTORS®. Such complaints must be brought before the Local Board of REALTORS® of which the Brokerage Firm or licensee is a member.

5. If any monetary dispute or claim, other than a complaint for ethical violation as described in Paragraph 4 above, involves only the Brokerage Firms and all of the Brokerage Firms are members of a Local Board of REALTORS®, then such dispute or claim shall be mediated through the Local Board of REALTORS® in accordance with the rules of the National Association of REALTORS®. In the event the Local Board of REALTORS® does not provide mediation services, then through a mutually agreed upon mediator. If such mediation is not successful in resolving such dispute or claim, then the Brokerage Firms agree to arbitrate the dispute or claim through the Local Board of REALTORS® in accordance with the rules of the National Association of REALTORS®. If one of the Brokerage Firms is not a member of a Local Board of REALTORS® and does not agree to submit such dispute or claim in accordance with the rules of the National Association of REALTORS®, then such dispute or claim shall be mediated through a mutually agreed upon mediator, and if the mediation is not successful, then the Brokerage Firms will consider arbitration.

6. **TAX REPORTING AGREEMENT.** Listing Brokerage Firm is required by law to report to the IRS any payments made to Cooperating Brokerage Firm (Form 1099-Misc), unless the Cooperating Brokerage Firm is a corporation or certifies that it is not subject to backup withholding. Cooperating Brokerage Firm agrees to provide a completed and signed Form W-9 (IRS Request for Taxpayer Identification Number and Certification) if Listing Brokerage Firm checks box below requesting Form W-9. NOTE: If Form W-9 is not provided to Listing Brokerage Firm no later than five (5) days prior to closing, Listing Brokerage Firm may instruct escrow to retain *backup withholding (currently 28%)* of the Cooperating Brokerage Firm's commission and forward to Listing Brokerage Firm who shall forward the backup withholding to the IRS pursuant to IRS regulations.
   [   ] Listing Brokerage Firm requests Form W-9 and acknowledges a copy of this Contract has been provided to Cooperating Brokerage Firm.
   [   ] Cooperating Brokerage Firm is a corporation and is not subject to backup withholding tax; therefore, the W-9 will not be provided.

7. In the event of a dispute regarding commissions between the Brokerage Firms, Escrow is hereby authorized to close the transaction and disburse Seller's proceeds except for the amount of any disputed commission which shall be held by Escrow pending resolution of such disputes.

8. Judgment upon any award rendered by an arbitrator may be entered in any court having jurisdiction. Should the arbitration rules permit, the arbitrator may award reasonable attorney's fees and costs to the prevailing party.

Listing Brokerage **Elite Pacific Properties, LLC**

License # ____RB-18825____ and MLS ID **ELIT**

Address _____

Email **heidiho@elitepacific.**  Phone **284-5777**

Authorized Signature _____

Date _____

Licensee **Heidi Ho**

License # ____RS-56577____ and MLS ID ____27524____

Cooperating Brokerage **Gold Coast Real Estate, Inc.**

License # **RB-16997** _____ and MLS ID **GCSR**

Address **2863 Kalakaua Ave. #6, Honolulu, HI   96815**

Email **get2pat@mac.com**  Phone **808-735-7001**

Authorized Signature _Don A. Persons_   DocuSigned by: 10424AA5F76341B...

Date _1/26/2019_

Licensee **Pat Ferraris**

License # __RS-62456__ _____ and MLS ID ____27006____

©Hawaii Association of REALTORS®
Cooperating Brokerage Firm's Separate Contract
RR214  Rev. 12/17 (NC)

Gold Coast Real Estate Inc., 2863 Kalakaua Avenue Honolulu, HI 96815
Pat Ferraris

Phone: (808)735-7001          Fax:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



EQUAL HOUSING OPPORTUNITY
7014 Niumalu Loop,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>    vs.<br><br>KATHERINE P. KEALOHA (1), LOUIS M. KEALOHA (2),<br><br>           Defendants. | CRIM NO. 18-00068 JMS-RLP<br><br>Related Case Nos. 18CV00108-LEK-KJM; 17CR00582-JMS-RLP)<br><br>DECLARATION OF DRAKE TANABE; EXHIBIT 4 |

DECLARATION OF DRAKE TANABE

I, DRAKE TANABE, declare and state as follows:

1.    I am the President for Interested Party HAWAII CENTRAL FEDERAL CREDIT UNION, a Hawaii corporation ("HCFCU").

2.    I make this Declaration based on my personal knowledge and am competent to testify as to the matters stated herein.

3.    As set forth in the Order Granting the United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture filed September 27, 2018, HCFCU is the holder of a mortgage on the property described below which was secured in the following manner:

a.    On or about September 6, 2016, HCFCU made a Loan in the principal amount of ONE MILLION FORTY THOUSAND AND NO/100 DOLLARS ($1,040,000.00) to Defendants LOUIS MAHINA KEALOHA and KATHERINE ELIZABETH KEALOHA (collectively,

"Defendants KEALOHA").  The loan was evidenced by that certain Note in that amount dated September 6, 2016 (the "Note").  The Note was made, executed, and delivered to HCFCU by Defendants KEALOHA.

        b.   As security for the repayment of the loan and the performance and the observance of the obligations of Defendants KEALOHA under the Note, Defendants KEALOHA granted, executed, and delivered to HCFCU that certain Mortgage dated September 6, 2016, which was recorded in the Bureau of Conveyances of the State of Hawaii as Document No. A-61010206 (the "Mortgage"), covering and granting HCFCU a first mortgage lien and security interest in and to the real and personal property described therein and situated at 7014 Niumalu Loop, Honolulu, Hawaii 96825, Tax Map Key No. (1) 3-9-065-046 (the "Real Property").

        4.   Heidi Ho, the Court-appointed Real Estate Agent, will be submitting that certain Purchase Agreement dated January 26, 2019, the Counter Offer dated January 27, 2019 and Amendment #1 to Purchase Contract (collectively, the "Contract") stating that an offer has been accepted for the Real Property to Michael Regan McKenna (the "Purchaser") for a price of ONE MILLION THREE HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($1,305,000.00).

        5.   The updated amounts due and owing to HCFCU as of February 15, 2019, are as follows:

        Principal Balance:        $  1,021,482.11

- 2 -

```
Interest to 02/15/19 (3.75%):      55,735.47
Escrow/Impound Overdraft:          13,123.69
Force Placed Hazard Insurance:        897.11
Unpaid Late Charges:                3,853.12

    TOTAL                  $  1,095,091.50
```

Interest continues to accrue at a rate of 3.750% per annum, $104.95 per diem, together with late charges accruing pursuant to the terms of the Note.  Further, force placed hazard insurance and other charges continue to be incurred.  A true and correct copy of the payoff statement is attached hereto as Exhibit 4 and made a part hereof.

6.   Further, reasonable attorneys' fees and costs have also been incurred by HCFCU relating to the subject matter of this proceeding with such amounts to be more specifically determined at an ancillary hearing regarding the substitute res or by further order of the Court.

7.   It is my understanding that the USMS reserves the right to present its expenses of custody and sale on or before the hearing on this Motion.


[The rest of this page is intentionally left blank.]

I, DRAKE TANABE, do declare under penalty of law that the foregoing is true and correct.

DATED:   Honolulu, Hawaii, _FEBRUARY 15, 2019_ .

DRAKE TANABE

 

RE:
Loan No. ████049-5
Loan Type: Conventional
Louis Mahina Kealoha
Katherine Elizabeth Kealoha
4348 Waialae Ave 829
Honolulu HI 96816

Property Address:
7014 Niumalu Loop
Honolulu HI 96825

PAYOFF STATEMENT

February 15, 2019

```
************************************************
*     WE ASK THAT YOU CONTACT OUR CUSTOMER     *
*     SERVICE TO CONFIRM THE ITEMS AND TOTAL   *
*     FIGURES ONE DAY PRIOR TO PAYOFF          *
************************************************
```

These figures are due to February 15, 2019
This loan is due for the October 01, 2017 payment
This loan interest due from September 01, 2017

| | |
|---|---:|
| The current total unpaid principal balance is | 1,021,482.11 |
| Interest at 3.75000% | 55,735.47 |
| Prepayment Penalty Interest | .00 |
| Prepayment Penalty Flat Fee | .00 |
| Escrow/Impound Overdraft | 13,123.69 |
| Less Current Escrow Balance | .00 |
| Buydown Subsidy/Replacement Reserve Balance | .00 |
| Suspense Balance | .00 |
| HUD Subsidy Balance | .00 |
| Restricted Escrow/Loss Draft Balance | .00 |
| Pro Rata MIP | .00 |
| Pro Rata PMI | .00 |
| Unpaid Late Charges | 3,853.12 |
| Return Item Fee | .00 |
| Other Fees | .00 |
| Recording Fee | .00 |
| Force Place Haz Ins | 897.11 |
| Minnesota Mutual | .00 |

TOTAL AMOUNT TO PAY LOAN IN FULL       1,095,091.50
PLEASE CONFIRM THIS AMOUNT ONE DAY PRIOR TO PAYOFF

# EXHIBIT 4

Funds received after 1:00 P.M. Hawaii Standard time on
February 15, 2019 will require an additional $ 104.95 per Day.

The payoff figures provided are subject to final verification by
the noteholder.  The noteholder reserves the right to adjust these
figures and refuse or accept any funds which are insufficient to
satisfy the full indebtedness for any reason.

Issuance of this statement does not suspend the contract requirement
to make the mortgage payments when due.  A late charge of $ 240.82
will be assessed 15 days after a current payment is due and
should be added to the payoff total if received after that time.



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     vs.<br><br>KATHERINE P. KEALOHA (1), LOUIS M. KEALOHA (2),<br><br>                Defendants. | CRIM NO. 18-00068 JMS-RLP<br><br>Related Case Nos. 18CV00108-LEK-KJM; 17CR00582-JMS-RLP)<br><br>DECLARATION OF COUNSEL; EXHIBIT 5 |

DECLARATION OF COUNSEL

I, JONATHAN W.Y. LAI, declare and state as follows:

1.    I am an attorney licensed to practice law before all Federal and State courts in the State of Hawaii and am one of the attorneys representing interested party Hawaii Central Federal Credit Union ("HCFCU").

2.    I make this Declaration based on my personal knowledge and am competent to testify as to the matters stated herein.

3.    Attached hereto as Exhibit 5 is a proposed Quitclaim Deed for the real and personal property described therein and situated at 7014 Niumalu Loop, Honolulu, Hawaii 96825, Tax Map Key No. (1) 3-9-065-046 assuming the Purchaser's Contract is confirmed.

I, JONATHAN W.Y. LAI, do declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawaii, February 15, 2019.

/s/ Jonathan W.Y. Lai

_____

JONATHAN W.Y. LAI

| LAND COURT SYSTEM | REGULAR SYSTEM |
|---|---|

AFTER RECORDATION, RETURN BY MAIL ( X )  PICK UP (   )

To:   Terrence M. Lee, Esq.                                            TG: _____
      Pacific Guardian Center, Makai Tower            TGE: _____
      733 Bishop Street, Suite 2900                        _____
      Honolulu, Hawaii 96813                                 This document contains 6 pages.

669436.1                                                          Tax Map Key:  (1) 3-9-065-046

## QUITCLAIM DEED

**THIS INDENTURE** is made on _____, by and between
**HAWAII CENTRAL FEDERAL CREDIT UNION**, **a federal credit union**, and **UNITED STATES OF AMERICA**, hereinafter collectively called the "Grantor", and **MICHAEL REGAN MCKENNA, single**, whose mailing address is c/o Terrence M. Lee, Esq., Pacific Guardian Center, Makai Tower, 733 Bishop Street, Suite 2900, Honolulu, Hawaii 96813, hereinafter called the "Grantee".

### WITNESSETH THAT:

**WHEREAS**, in and by that certain Order Granting the United States' Motion for Interlocutory Sale of Real Property Subject to Criminal Forfeiture filed September 27, 2018 (the "Order"), in the United States District Court of the State of Hawaii, in those certain proceedings entitled "United States of America, Plaintiff vs. Katherine P. Kealoha, et al., Defendants", in an action therein pending and designated as Crim No. 18-00068 JMS-RLP, in the files of said Court, Grantor was duly authorized and directed to sell the property described in Exhibit "A", attached hereto and incorporated herein by this reference; and

# EXHIBIT 5

WHEREAS, pursuant to said Order, Grantor herein duly entered into an interlocutory private judicial sale, wherein the property hereinafter described in said Exhibit "A", was offered for sale, and wherein Grantee was the purchaser of said property, subject to the confirmation of said Court; and

WHEREAS, said sale has been approved and confirmed by said Court, by that certain Order Granting Motion for Confirmation of Interlocutory Sale of Real Property Filed _____, 2019; Exhibit "A", filed on _____, 2019 (the "Confirmation Order"), in the aforesaid proceeding, and in and by the terms of said Confirmation Order, Grantor herein was ordered and directed to make a good and sufficient conveyance of the property described in said Exhibit "A", to Grantee;

NOW, THEREFORE, Grantor for and in consideration of the sum of ONE MILLION THREE HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($1,305,000.00), paid by Grantee, the receipt of which is hereby acknowledged, does hereby release, remise and quitclaim the real property described in said Exhibit "A", unto Grantee, as *TENANT IN SEVERALTY*, **her successors and assigns**;

AND the reversions, remainders, rents, issues and profits thereof and all of the estate, right, title and interest of the Grantor, both at law and in equity, therein and thereto;

TO HAVE AND TO HOLD the same, as to the property described in said Exhibit "A" (the "Property"), together with all buildings, improvements, tenements, hereditaments, rights, easements, privileges and appurtenances thereunto belonging or appertaining or held and enjoyed therewith unto the Grantee, according to the tenancy hereinbefore set forth, in fee simple, absolutely and forever.

Grantee hereby understands and agrees that the Property is "AS IS, WHERE IS AND WITH ALL FAULTS," and Grantor has not made and does not make any warranties or representations of any kind, expressed or implied, as to the conditions, merchantability or state of repair of the Property or fitness of the Property for any particular purpose, as to the soil condition (including suitability, stability, composition and drainage), the likelihood of appreciation in value of the Property, the existence of gaps, gores or encroachments or violations of easements, building setbacks or building restrictions, or as to the compliance of the Property with any applicable county, state or federal statute, ordinance, rule or regulation or as to any other matter whatsoever pertaining to the Property.  **GRANTEE ACCEPTS ALL RISKS OF ANY DEFECTS OR DEFICIENCIES IN THE PROPERTY, WHETHER KNOWN OR UNKNOWN, AND GRANTEE ACKNOWLEDGES THAT GRANTOR MAKES NO EXPRESS WARRANTIES OF ANY KIND AND HEREBY DISCLAIMS ALL IMPLIED WARRANTIES OF ANY NATURE WHATSOEVER PERTAINING TO THE PROPERTY.**

The terms "Grantor" and/or "Grantee", as, when and if used herein, or any pronouns used in place thereof, shall mean and include the masculine or feminine, the singular or plural number, individuals or corporations, and their and each of their respective successors, heirs, executors, administrators and assigns, according to the context thereof.  All obligations undertaken by two or more persons, shall for all purposes be deemed to be joint and several unless a contrary intention shall be clearly expressed elsewhere herein.

The parties hereto agree that this instrument may be executed in counterparts, each of which shall be deemed an original, regardless of the date of its execution and delivery, and said counterparts shall together constitute one and the same instrument, binding all of the parties hereto, notwithstanding that all of the parties are not signatories to the original or the same counterparts. For all purposes, including, without limitation, recordation, filing and delivery of this instrument, duplicate, unexecuted and unacknowledged pages of the counterparts may be discarded and the remaining pages assembled as one document.

*[The remainder of this page is intentionally blank.]*

**IN WITNESS WHEREOF**, the parties hereto have duly executed these presents on the day and year first above mentioned.

<div style="text-align: right">

**HAWAII CENTRAL FEDERAL CREDIT UNION**

</div>

By _____

    Its

<div style="text-align: right">Grantor</div>

STATE OF HAWAII

                   SS:

CITY AND COUNTY OF HONOLULU

On _____, before me personally appeared _____, to me known to be the person, who, being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

_____

Notary Public, State of Hawaii

My commission expires: _____

| Date of Document: | # Pages: 7 |
|---|---|
| Name of Notary Public: | Circuit |
| Document Description:  Quitclaim Deed | |
| | |
| Notary Signature | (Stamp or Seal) |
| NOTARY CERTIFICATION | |

**UNITED STATES OF AMERICA**

By _____

    Its

                                    Grantor

STATE OF HAWAII

                          SS:

CITY AND COUNTY OF HONOLULU

On _____, before me personally appeared _____, to me known to be the person, who, being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

_____

Notary Public, State of Hawaii

My commission expires: _____

| Date of Document: | # Pages: 7 |
|---|---|
| Name of Notary Public: | Circuit |
| Document Description: Quitclaim Deed | |
| | |
| Notary Signature | (Stamp or Seal) |
| NOTARY CERTIFICATION | |

**MICHAEL REGAN MCKENNA**

Grantee

STATE OF HAWAII

SS:

CITY AND COUNTY OF HONOLULU

On _____, before me personally appeared MICHAEL REGAN MCKENNA, to me known to be the person, who, being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

_____

Notary Public, State of Hawaii

My commission expires: _____

| Date of Document: | | # Pages:  7 | |
|---|---|---|---|
| Name of Notary Public: | | | Circuit |
| Document Description:  Quitclaim Deed | | | |
| | | | |
| Notary Signature | | | |
| NOTARY CERTIFICATION | | (Stamp or Seal) | |

## EXHIBIT "A"

(1) 3-9-065-046

All of that certain parcel of land situate at Maunalua, Honolulu, City and County of Honolulu, State of Hawaii, being LOT 84 of the "LUNA-KAI MARINA, UNIT 9-A", as shown on File Plan Number 1116, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 7,508 square feet, more or less.

Being the premises acquired by WARRANTY DEED dated August 28, 2013, by and between JAMES C. RUDOSKY and SUSAN W. RUDOSKY, husband and wife, as Grantor, and LOUIS MAHINA KEALOHA and KATHERINE ELIZABETH KEALOHA, husband and wife, as Tenants by the Entirety, as Grantee, as Tenant in Severalty, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. A-49950117.

SUBJECT HOWEVER, to the following:

1.   Mineral and water rights of any nature.

2.   The terms and provisions contained in DECLARATION OF PROTECTIVE PROVISIONS dated September 23, 1968, recorded in said Bureau in Liber 6240 at Page 316.

     Said Declaration was supplemented by instruments dated June 27, 1969, recorded in said Bureau in Liber 6579 at Page 314, and dated January 7, 1970, recorded in said Bureau in Liber 6867 at Page 30.  Said Declaration was amended by instrument dated June 16, 1970, recorded in said Bureau in Liber 7063 at Page 61.  Said Declaration was further supplemented by instrument dated August 24, 1970, recorded in said Bureau in Liber 7182 at Page 146.  Said Declaration was further amended by instrument dated February 10, 1971, recorded in said Bureau in Liber 7642 at Page 144.  Said Declaration was further supplemented by instrument dated October 22, 1987, recorded in said Bureau in Liber 21274 at Page 79.

3.   The terms and provisions contained in DECLARATION OF PROTECTIVE PROVISIONS dated November 19, 1987, recorded in said Bureau in Liber 21361 at Page 718.

     Said Declaration was supplemented by instrument dated November 19, 1987, recorded in said Bureau in Liber 21361 at Page 729.

4.   SETBACK (10 feet wide) for building purposes, as contained in DEED dated December 9, 1987, recorded in said Bureau in Liber 21659 at Page 37.

5.   The terms and provisions contained in MUTUAL BOUNDARY WALL AGREEMENT dated January 8, 1992, recorded in said Bureau as Document No. 92-003854, by and between NORMAN LEE ARTHUR and CATHY DIGGES ARTHUR, "First Party", and DEAN A. BROWNING and PHYLLIS N. BROWNING, husband and wife, "Second Party".

**EXHIBIT "A"**
(Page 1 of 2)

6.   The terms and provisions contained in MUTUAL BOUNDARY WALL AGREEMENT dated January 8, 1992, recorded in said Bureau as Document No. 92-003855, by and between NORMAN LEE ARTHUR and CATHY DIGGES ARTHUR, "First Party", and JEROME E. VOELLER and BETH ANNE VOELLER, husband and wife, "Second Party".

7.   The terms and provisions contained in MUTUAL BOUNDARY WALL AGREEMENT dated January 6, 1992, recorded in said Bureau as Document No. 92-003856, by and between NORMAN LEE ARTHUR and CATHY DIGGES ARTHUR, "First Party", and SAMUEL S. M. SUN and PIERA S. C. SUN, a married couple, "Second Party".

8.   The terms and provisions contained in MUTUAL BOUNDARY WALL AGREEMENT dated January 6, 1992, recorded in said Bureau as Document No. 92-003857, by and between NORMAN LEE ARTHUR and CATHY DIGGES ARTHUR, "First Party", and SHARRY S. M. J. AU, a single female, "Second Party".