IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00068 JMS-WRP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO |
| vs. | ) | GRANT GERARD K. PUANA |
| | ) | AND RICKY L. HARTSELL'S |
| KATHERINE P. KEALOHA (1), | ) | PETITION ASSERTING LEGAL |
| LOUIS M. KEALOHA (2), | ) | INTEREST AND GRANT IN |
| | ) | PART AND DENY IN PART |
| Defendants. | ) | HAWAII CENTRAL FEDERAL |
| | ) | CREDIT UNION'S PETITION TO |
| | ) | ADJUDICATE THIRD PARTY |
| | ) | INTEREST |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT GERARD K. PUANA
AND RICKY L. HARTSELL'S PETITION ASSERTING LEGAL INTEREST
AND GRANT IN PART AND DENY IN PART HAWAII CENTRAL FEDERAL
CREDIT UNION'S PETITION TO ADJUDICATE THIRD PARTY INTEREST

Before the Court are two third-party petitions asserting an interest in

property subject to a preliminary order of forfeiture under 21 U.S.C. § 853(n):

(1) Interested Party Hawaii Central Federal Credit Union's (HCFCU)

Petition to Adjudicate Third Party Interest (Pursuant to 21 U.S.C. § 853) (HCFCU

Petition); and

(2) the Petition Asserting Legal Interest in $63,476.97 from the sale of

7014 Niumalu Loop, pursuant to 21 U.S.C. § 853(n) filed by Gerard K. Puana and

Ricky L. Hartsell, as the Trustee of the Florence M. Puana Trust (Puana Petition).

1

After careful consideration of the petitions, the record in this action, the hearing in this ancillary proceeding, and the relevant legal authority, the Court FINDS AND RECOMMENDS that HCFCU's Petition be GRANTED IN PART and DENIED IN PART, and Petitioners Gerard Puana and Ricky Hartsell's Petition be GRANTED.

## BACKGROUND

**Procedural History**

Procedural History of the Underlying Criminal Cases

In June 2019, Defendants Katherine Kealoha and Louis Kealoha were convicted by jury on the charges of conspiracy and obstruction of justice. See United States v. Katherine Kealoha, et al., CR17-00582-JMS-WRP (referred to as "the Mailbox case"). In the Mailbox case, the jury determined that Defendants abused their power by conspiring with two police officers to frame Defendant Katherine Kealoha's uncle, Gerard Puana, for a crime he did not commit in an attempt to discredit his claim that the Defendants stole a substantial sum of money from him and his mother, Defendant Katherine Kealoha's grandmother, Florence Puana. See id.; see also ECF No. 1029.

Following the outcome of the Mailbox case, in October 2019, Defendant Katherine Kealoha pleaded guilty in a separate criminal case to bank fraud, aggravated identity theft, and drug charges, and Defendant Louis Kealoha

pleaded guilty to bank fraud.  See United States v. Kealoha et al., CR18-00068; see also ECF Nos. 203, 204.  The guilty pleas resolved all outstanding charges against Defendants Katherine and Louis Kealoha.  See ECF Nos. 203, 204 (memoranda of plea agreement).

As part of their plea agreements with the government, Defendants admitted that they defrauded banks with elaborate schemes in order to obtain loans to fund their extravagant lifestyle.[1]  See id.  The plea agreements included provisions related to sentencing recommendations regarding restitution to victims; specifically, the parties agreed to recommend that the Court order Defendants to pay $289,714.96 in restitution to the victims of their fraud, including $46,261.00 to Gerard Puana and $243,453.90 to Florence Puana.[2]  See id.  No restitution has been paid to any of the fraud victims to date.  See ECF No. 262 at 17.

---

[1] Defendant Louis Kealoha's memorandum of plea agreement reflected that Defendants spent more than $591,000 on their "lifestyle."  ECF No. 204 at 4.  The plea agreement described this money as proceeds of the crimes derived from: (1) money stolen from a reverse mortgage obtained by Florence Puana; (2) stolen funds belonging to Ransen Taito and Ariana Taito; and (3) loan proceeds obtained through banks and credit unions based upon a fraud scheme.  See id.

[2] On November 30, 2020, Defendant Katherine Kealoha was sentenced to 13 years imprisonment, five years supervised release, $700 in special assessments, and ordered to pay restitution to Gerard Puana in the amount of $46,261.00 and to the Estate of Florence Puana in the amount of $135,142.94.  See ECF No. 247.  Defendant Louis Kealoha was sentenced to seven years imprisonment, three years supervised release, $500 special assessment, and

3

Defendants further conceded, as part of their plea agreements, that the $63,476.97 from the sale of their residence at 7014 Niumalu Loop in Honolulu, Hawaii (Niumalu Loop property) constituted proceeds derived from their criminal conduct and was subject to criminal forfeiture.  See ECF No. 204 at 6; see also ECF No. 203 at 17-18.  The $63,476.97 from the sale of the Niumalu Loop property is the subject of the two petitions now before the Court under this ancillary proceeding conducted pursuant Title 21, United States Code, Section 853(n) (Section 853(n)).

Procedural History of Forfeiture Action

In October 2017, the United States filed a Notice of Pendency of Action (les pendens) on the Niumalu Loop property.  See ECF No. 31.  In February 2018, HCFCU initiated foreclosure proceedings against the Niumalu Loop property in state court and the government removed the action to federal court.  See Hawaii Central Federal Credit Union v. Kealoha, et al., CV18-00108 LEK-KJM, ECF No. 1.

In July 2018, the government and HCFCU jointly moved for an interlocutory sale of the Niumalu Loop property and entered into a Stipulated

ordered to make restitution to Gerard Puana in the amount of $11,565.25 and to the Estate of Florence Puana in the amount of $3,853.24.  See ECF No. 248.

4

Settlement Agreement (HCFCU Settlement).  See ECF No. 13-2 at 6.  At the time,

HCFCU held a mortgage on the Niumalu Loop property in the amount of

$1,099,09.60.  See ECF No. 156 at 6.  Under the HCFCU Settlement, the

government and HCFCU agreed that the proceeds upon the private sale of the

Niumalu Loop property would first be disbursed to HCFCU up to the amount of

the note and mortgage on the property.  See ECF No. 13-2 at 6-7.  HCFCU also

agreed, in the HCFCU Settlement, that any proceeds from the sale of the Niumalu

Loop property *in excess* of the amount of their mortgage would be adjudicated as

ancillary proceeding under Section 853(n).  See id. at 2, 5.  The two petitions now

before the Court relate to $63,476.97, which represents the amount in excess of the

HCFCU mortgage from the sale of the Niumalu Loop property.

       The sale of the Niumalu Loop property, coordinated and led by

HCFCU, was confirmed by the court in March 2019 at $ 1,305,000.00.  See ECF

No. 156 at 4.  The final order permitted HCFCU to retain its right under the note

and mortgage to seek a separate deficiency judgement against Defendants if the

sale proceeds were insufficient to pay the amount due on the note and mortgage.

See id. at 6.  The sale of the property fortunately exceeded the amount of the

HCFCU mortgage.  Thus, in accordance with the HCFCU Settlement, the court

first authorized the payment of $1,099,09.60 for the full amount of the mortgage

held by HCFCU.  See id. at 4-6.  The final order also authorized the immediate

5

disbursement of sale proceeds to repay HCFCU for reasonable costs incurred as a result of the sale, here, an additional $143,826.07 in various expenses.[3]  See id. Lastly, the final order directed all remaining proceeds from the sale - $63,476.97 - to be held as substitute *res* in an interest-bearing account pending the final outcome of the case, and for all rights, claims, liens, and interests in the substitute res to be determined at an ancillary proceeding pursuant to Section 853(n).  See id. at 6-7.

In May 2019, the United States moved to dismiss the pending foreclosure action that had been removed to federal court.  See Hawaii Central Federal Credit Union v. Kealoha, et al., CV18-00108 LEK-KJM, ECF No. 55.  The Court dismissed HCFCU's claims for the repayment of the balance of the note and mortgage and for attorneys' fees and costs against the substitute res, finding that those claims could only be made in a Section 853(n) ancillary proceeding.  See id. at 16.  The court then remanded the foreclosure action to state court to allow HCFCU "the right to seek a deficiency judgment [against Defendants] if it is not made whole when it attempts to recover its attorneys' fees and costs from the Substitute Res in the ancillary proceeding."  Id. at 20.

---

[3]  For the additional $143,826.07 in expenses, HCFCU recovered the real estate agent's commission, costs of appraisals, title fees, escrow fees and closing costs, insurance costs, sewer fees, association dues, and costs associated with the maintenance, repair, and marketing of the property.  See ECF No. 156 at 5-6.

In November 2020, the court issued Preliminary Orders of Criminal Forfeiture as to the Kealohas, ordering all right, title, and interest in the Niumalu Loop property to be condemned and forfeited to the United States.  See ECF Nos. 243, 244.  Judgments of convictions were issued as to Defendants Katherine and Louis Kealoha on December 10, 2020, adopting the Preliminary Orders of Criminal Forfeiture.  See ECF Nos. 250, 252.

The Petitions under Section 853(n) now before the Court followed. See ECF Nos. 254, 260.  The United States filed its Response to Third Party Petitions in the Ancillary Proceeding (Government's Response) on February 18, 2021.  See ECF No. 262.  In the Government's Response, the government concedes that, pursuant to the HCFCU Settlement, the Court should grant HCFCU's petition for an additional $1,142.32 for the remaining costs and fees incurred from the interlocutory sale.  See ECF No. 262 at 16.  The United States further argues that the remaining portion of the $63,476.97 in sale proceeds should be distributed among the victims, here, the Trust, Gerard Puana, and the Taitos[4], in proportion to their losses.  See id.

---

[4] As discussed further below, the Taitos did not file a petition as third parties with an interest in the assets of forfeiture under Section 853(n).  However, the government argues in its Response that the Taitos should be treated similarly to the Puanas as victims on the Defendants' fraud scheme.  See ECF No. 262 at 31-32.

HCFCU filed its Memorandum In Re Asserting Legal Interest in

$63,476.97 from the Sale of 7014 Niumalu Loop (HCFCU Reply), on February 18,

2021.  See ECF No. 263.  The Puanas filed their own Reply to HCFCU's Reply

(Puana Reply), on February 25, 2021.  See ECF No. 269.

## DISCUSSION

## I.     Standard for Adjudication of Asserted Third-Party Interests in Property Subject to Forfeiture

Section 853 governs the forfeiture of property held by persons

convicted of a crime.  See 21 U.S.C. § 853.  Third parties with an interest in the

assets of forfeiture may raise claims to the property once there has been an

adjudication of the merits of the criminal charges and an entry of the preliminary

order of forfeiture.  See id. § 853(k).  At such time, third parties may then petition

the court for an ancillary hearing to adjudicate the validity of their alleged interest

in the property.  See id. § 853(n); Fed. R. Crim. P. 32.2(c).

### A.     Petition Requirements

Petitions filed by third parties under Section 853(n) must be filed

within thirty days of the final publication of notice or receipt of notice, whichever

is earlier.  See 21 U.S.C. § 853(n).  The statute requires the petitioning third party

to set forth the "nature and extent of the petitioner's right, title, or interest in the

8

property," the circumstances and timing of the petitioner's acquisition of interest in the property, any additional facts that support the petitioner's claim, and the relief sought.  Id. at § 853(n)(3).

B.    Hearing Requirements

"To the extent practicable and consistent with the interests of justice," the hearing should be set within thirty days of the filing of the petition.  Id. § 853(n)(4).[5]  At the hearing, petitioners are permitted to testify and present witnesses and evidence.  See id. at § 853(n)(5).  The United States is also permitted to present evidence and witnesses in rebuttal and in defense of its claim to the property.  See id.  Cross-examination is permitted for both parties.  See id.

C.    Legal Standard

Federal forfeiture statutes determine whether interests in property can be forfeited, but state law determines what rights, title, or interests the various claimants possess in that property.  See United States v. Nava, 404 F.3d 1119, 1129 (9th Cir. 2005) (finding that there is no federal common law governing property interests in forfeiture cases); see also United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996) (holding that ownership interests are defined under

_____

[5] Finding good cause, the Court continued the hearing on the Petitions from January 20, 2021 to February 25, 2021 and then to March 4, 2021.  See ECF Nos. 259, 265.

state law).  Therefore, the court's first inquiry in an ancillary hearing is into the law

of the jurisdiction that created the property right to determine what interest the

petitioner has in the property.  See Lester, 85 F.3d at 1412.  If petitioner has no

right in the forfeited property under state law, then the inquiry ends.  If petitioner

has a property interest under state law and therefore has standing, the hearing

proceeds on the merits.  See id.

       After standing has been established, there are two ways a third party

can be successful at an ancillary hearing.  The petitioner must demonstrate, by a

preponderance of the evidence, that either: (i) the petitioner has a legal right, title,

or interest in the property which renders the order of forfeiture to the government

invalid in whole or part due to the superior right of the petitioner; or (ii) the

petitioner is a bona fide purchaser for value of the right, title, or interest in the

property.  See 21 U.S.C. § 853(n)(6).  If a petitioner proves either (i) or (ii), the

court shall amend the order of forfeiture in accordance with its determination.  See

id.

       The federal forfeiture statute protects a petitioner whose legal interest

in the criminally forfeited property either vested in the petitioner rather than the

defendant or was superior to any interest of the defendant at the time of the acts

giving rise to forfeiture.[6]  See United States v. Nava, 404 F.3d 1119, 1129 (9th Cir. 2005).  It is therefore necessary to determine when title vests.  Title vests in the government when the crime is committed.  See 21 U.S.C. §. 853(c); see also United States v. Hooper, 229 F.3d 818, 822 (9th Cir. 2000) (applying Section 853(c) and holding that the property interest in criminal proceeds vested instantaneously in the government).  This is known as the "relation back" doctrine and it exists to prevent defendants from escaping the impact of forfeiture by giving their assets to third parties.  See Nava, 404 F.3d at 1129.  Because the defendant has no title in the proceeds of a crime, it follows that the defendant cannot pass the title of the proceeds to a third party unless the third party is a bone fide purchaser for value without notice.  See Hooper, 229 F.3d at 822.

Therefore, the superior right or interest of the petitioner must have existed at "the time of the commission of the acts which gave rise to the forfeiture of the property." Nava, 404 F.3d at 1129.  If the petitioner acquired their right or interest after the crime, he can prevail in the ancillary proceeding only if he is a bona fide purchaser for value who was without reason to know that the property was subject to forfeiture.  See 21 U.S.C. § 853(n)(6)(B).  A bona fide purchaser for

---

[6] Section 853(n) only requires a petitioner's interests to be superior to the defendant and the United States to recover.  See 21 U.S.C. § 853(n).  Although Section 853(n) allows for multiple petitioners to assert legal interest, it does not create a comprehensive means of collecting and distributing assets.

value acquires his interest in property by paying fair market value, using money obtained from a legitimate source.  See id.  A petitioner can establish himself as a bona fide purchaser by showing that he has (1) a legal interest in the property, (2) he acquired it as a bona fide purchaser for value, and (3) at a time when he was reasonably without cause to believe that the property was subject to forfeiture.  See id.

Assuming the temporal requirement can be satisfied, more traditional victims of fraud can also establish a legal right or interest in forfeited property under a constructive trust theory.  See United States v. Boylan, 392 F.3d 1002, 1004 (9th Cir. 2004) (holding that a constructive trust arises by operation of law as soon as the fraudster acquires the victim's property).  Petitioners must establish the elements of a constructive trust under state law.  See Lester, 85 F.3d at 1412. Under Hawaii law, "[a] constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."  Seo Jeong Won v. England, 2008 WL 5225872 at *5 (D. Haw. Dec. 12, 2008) (citing Kam Oi Lee v. Fong Wong, 552 P.2d 635, 637 (Haw. 1976)).  "[T]he beneficial owner, in equity, has the right to have the title to the property transferred to himself if it is in the hands of the wrongdoer."  Seo Jeong Won, 2008 WL 5225872 at *5 (citing Peine v. Murphy, 377 P.2d 708, 713 (Haw. 1962)).  While Hawaii law provides great

discretion to establish a constructive trust, this court has found additional elements

in creating constructive trusts, such as (1) the existence of a fiduciary or

confidential relationship, (2) the violation of that confidential relationship, (3) the

unjust enrichment of the fraudster, and (4) that there is no adequate remedy at law.

See United States v. 133 U.S. Postal Serv. Money Ords., 780 F. Supp. 2d 1084,

1095-98 (D. Haw. 2011).

Generally, petitioners must demonstrate that the forfeited property is

directly traceable to the fraud to prevail under a constructive trust theory, but

equity can override tracing rules where the defrauded petitioners cannot directly

trace funds from their constructive trust to the property subject to forfeiture. See

Cunningham v. Brown, 265 U.S. 1, 13 (1924) (applying equity where parties were

unable to directly trace co-mingled funds subject to bankruptcy priority rules). The

Ninth Circuit applied the Brown holding to constructive trusts and held that "courts

generally will not indulge in tracing when doing so would allow one fraud victim

to recover all of his losses at the expense of other victims." United States v.

Wilson, 659 F.3d 947, 956 (9th Cir. 2011).

Following the court's disposition of all petitions filed under Section

853(n), the United States is deemed to have clear title to property that is the subject

of the order of forfeiture and, accordingly, may warrant good title to any

subsequent purchaser or transferee.  See 21 U.S.C. § 853(n)(7).  The Court next

discusses each petitioner's interest in the forfeited party.

## II.  HCFCU Has an Interest in the Forfeited Property as a Bona Fide Purchaser for Value

This Court finds that HCFCU is a bona fide purchaser for value and

has established a right to the forfeited property – the remaining proceeds from the

sale of the Niumalu Loop property - under Section 853(n)(6)(B) for the following

three reasons.

First, they have clearly established a legal interest in the property

under the note and mortgage.  See United States v. Real Property Located at 41741

National Trails Way, 989 F.2d 1089, 1090 (9th Cir. 1993) (holding that the civil

forfeiture statute's timing exception, closely resembling that of Section

853(n)(6)(B), allows innocent lienholders to recover attorneys' fees and costs

associated with defending forfeiture, provided that the lienholder's right to recover

is secured by mortgage or deed of trust).  Second, as secured lenders, they acquired

that interest as bona fide purchasers for value.[7]  See ECF No. 254-2 at 2 (note); see

---

[7] The note provides that "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law . . . [t]hose expenses include, for example, reasonable attorneys' fees."  ECF No. 254-2 at 2.

The Mortgage provides that "[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal

<u>also</u> ECF No. 254-3 at 2 (mortgage).  Third, no party contests that HCFCU's

interest was acquired without cause to believe that property would be subject to

forfeiture.  <u>See</u> ECF No. 262 at 26 ("The United States agrees that HCFCU has

standing to file a petition as the mortgage lender for the real property and has

superior rights than that of the United States in the real property as a bona fide

purchaser under 21 U.S.C. § 853(n)(6)(B).").

Accordingly, the Court finds that HCFCU has established a right to

the forfeited property as set out in the HCFCU petition.

## III.   Gerard Puana and the Florence M. Puana Trust Have an Interest in the Forfeited Property Under a Constructive Trust

The Court similarly finds that the Puanas have established their

standing and interest in the proceeds of the Niumalu Loop property sale under a

constructive trust theory and pursuant to Section 835(n)(6)(A).  The Puanas as

Petitioners satisfy the temporal requirement of Section 835(n)(6)(A) because "the

obligation on the fraudster is imposed by law and arises immediately with his

---

proceeding that might significantly affect Lender's interest in the Property . . . then
Lender may do and pay for whatever is reasonable or appropriate under this
Security Agreement . . . Lender's actions can include . . . paying reasonable
attorneys' fees to protect its interest in the Property and/or rights under this
Security Instrument. . . [a]ny amounts disbursed by Lender under this Section 9
shall become additional debt of Borrower secured by this Security Instrument."
ECF No. 254-3 at 2.

acquisition of the proceeds of the fraud." Boylan, 392 F.3d at 1004 (referring to

the automatic establishment of a constructive trust).

   The Court also finds that the Puanas have demonstrated a constructive

trust in the proceeds from the sale of the property under Hawaii law. Both Gerard

Puana and Florence Puana were in a confidential relationship with the Defendants,

entrusting Defendant Katherine Kealoha with investments based on her false and

fraudulent misrepresentations, conveyed their property to Defendants based on that

relationship, and consequently lost their property. See 133 U.S. Postal Serv.

Money Ords., 780 F. Supp. 2d at 1095-98; see also ECF No. 260 at 3.

Accordingly, these fraudulent misrepresentations resulted in the unjust enrichment

of Defendants and both defendants concede that the proceeds of the sale are subject

to forfeiture. See ECF Nos. 203, 204.

   Only some of these funds from the sale of Niumalu Loop property are

directly traceable in this case. See ECF No. 262-2 at 4-5. Specifically, the FBI

tracing analysis report directly traces $16,056.94 stolen from Florence Puana's

reverse mortgage to the sale proceeds of the forfeited property, whereas the money

defrauded from Gerard Puana was found by the FBI to not be directly traceable to

the sale proceeds. See id. at 5. Here, tracing would allow the Trust to recover its

losses on behalf of Florence Puana but would not do the same for the other

similarly situated victims like Gerald Puana. It follows then that, under the Ninth

16

Circuit's decision in <u>Wilson</u> cited above, equity would justify suspending the tracing rules here. <u>See</u> 659 F.3d at 956 (suspending the tracing requirements of a constructive trust where one victim would benefit over the other). Because of the inequity that would result from requiring strict tracing among the victims covered by the Puana petition – the Trust and Gerald Puana, the Court finds that tracing requirements should be suspended as to victim Petitioner Gerard Puana.

Accordingly, as set out in their petition, the Court finds that the Puanas also have established a right to the forfeited property under the constructive trust doctrine and that the typical tracing requirements thereunder should be suspended to avoid inequity among victims in this case, as set forth in <u>Wilson</u>.

## IV.  The Taitos Do Not Have an Interest in the Forfeited Property Because They Failed to File a Petition

Other victims of Defendants' fraud, the Taitos, potentially have an interest in the excess proceeds from the sale of the Niumalu Loop property. In fact, the government in its Reply requests that the Court distribute the proceeds in pro rata shares to all traditional victims of the fraud including the Taitos. <u>See</u> ECF No. 262 at 31-32. Yet, the Taitos failed to file a petition asserting legal interest under Section 853(n).[8]  The Court next considers whether the Taitos have

---

[8] While the Taitos did not file a petition under Section 853(n), they were represented by counsel at time of the hearing on these ancillary proceedings

established a right to the forfeited property despite not filing a petition under

Section 853(n).

Based upon the unambiguous text of Section 853(n), potential

claimants must submit a petition to the court within 30 days.  See 21 U.S.C. §

853(n)(3).  The petition must set forth the "nature and extent of the petitioner's

right, title, or interest in the property," the circumstances and timing of the

petitioner's acquisition of interest in the property, any additional facts that support

the petitioner's claim, and the relief sought within thirty days of the final

publication of notice or receipt of notice, whichever is earlier.  Id.

While the Taitos were similarly defrauded by Defendants, the Court

should not override the plain language of the statute.  Therefore, the Court finds

that recovery is limited to only those victims who properly asserted interest in the

proceeds in a petition under Section 853(n) and recommends denying the United

States' request to distribute a pro rata share of the proceeds to the Taitos here.

## V.    Equity Demands that Gerard Puana and the Florence Puana Trust Recover the Forfeited Property Over HCFCU

Accordingly, as discussed above, both HCFCU and the Puanas have

established standing and a right to the remaining proceeds from the sale of the

---

and the court permitted counsel for the Taitos to be present and participate in the
hearing.

Niumalu Loop property under Section 853(n). At the same time, each petitioners'

claim is greater than the proceeds of the money at issue: that is, HCFCU seeks

$94,414.10 in attorneys' fees and the Puanas collectively are owed $196,822.43 in

restitution. See ECF Nos. 254-6 at 2, 203 at 5, 204 at 4. Therefore, the Court must

determine how the $63,476.97 should be distributed.

 In its Reply, the United States opposes disbursing the totality of the

sale proceeds to HCFCU and takes the position that "equity demands" that the

victims of Defendants' fraud receive a portion of the remaining sale proceeds at

issue. See ECF No. 262 at 27. The United States argues that HCFCU should only

receive reimbursement for costs contemplated in the HCFCU Settlement, and not

for its attorneys' fees of $94,414.10.[9] See id. at 25.

 In its Reply, HCFCU argues that constructive trusts of the victims of

the fraud do not trump HCFCU's status as an "innocent lender" and bona fide

purchaser. See ECF No. 263 at 5, n.1 ("[E]ven if Petitioners have standing under

Section 853(n), their interest does not take priority over that of a bona fide

---

[9] HCFCU seeks reimbursement for some costs already paid through the final order issued in March 2019. See ECF No. 254 at 3. Specifically, fees for property insurance ($591.95), water and sewer ($181.15), electric ($62.80), and pool maintenance ($214.66) were already distributed to HCFCU. See id. Accordingly, the United States opposes reimbursing HCFCU for the $1,207.89, but does not oppose reimbursing HCFCU for the remaining balance of $1,142.32 since these costs were contemplated by the Stipulated Settlement Agreement. See ECF No. 262 at 14.

purchaser in good faith.").  HCFCU further argues that the Court should not

balance equities between the Puanas and HCFCU.  See id.  This argument however

is not supported in the law.

Section 853(n) does not give a bona fide purchaser priority over a

claimant asserting an interest under Section 853(n)(6)(A), like the Puanas here.

See 21 U.S.C. § 853(n)(6).  Section 853(n) also does not give the Puanas priority

over HCFCU's claim as an "innocent lender."  See ECF No. 263 at 8 ("Under

general trust law, when trust property is transferred to a third party in breach of a

trustee's fiduciary duty, the third party takes such property subject to the trust,

unless it is a bona fide purchaser for value.") (internal citations and quotations

omitted).  Because all claimants hold a valid claim to the proceeds, this Court

conducts an equitable analysis for its recommendation as to how the remaining

$63,476.97 in forfeited sale proceeds shall be distributed.[10]  In equity, the Puanas'

interest outweighs HCFCU's interest for several reasons.

First, the Court considers how much the respective petitioners have

already recovered.  HCFCU has already been paid a significant portion of the sale

proceeds.  After the sale the Niumalu Loop property, HCFCU was made whole on

---

[10] As pointed out in its Reply, the United States normally uses the
remission process in fraud cases to assist in marshalling the fraudster's assets to
provide fair restitution for all victims.  See 19 U.S.C. § 981(d); see also ECF No.
262 at 29.

the $1,099,096.60 balance owed under the note and mortgage and received an

additional $143,826.0 for the various expenses associated with the sale, taking

95% of the sale proceeds.  See ECF No. 262 at 27-28.  In contrast, the more

traditional victims of Defendants fraud have received nothing.  The Puanas, for

instance, are collectively still owed the entire $196,822.43 in restitution.  See ECF

Nos. 203 at 5, 204 at 4.  But if HCFCU's petition is granted in whole, nothing

would be left to distribute to other victims like the Puanas.  See ECF No. 254-6 at

2.

Next, the Court looks to other avenues of potential recovery.  The

federal foreclosure action was remanded to state court, allowing HCFCU the "right

to seek a deficiency judgment if it is not made whole when it attempts to recover

its attorneys' fees and costs from the Substitute Res in the ancillary proceeding."

Hawaii Central Federal Credit Union v. Kealoha, et al., CV18-00108-LEK-KJM,

ECF No. 55.  HCFCU is currently pursuing their contractual right to seek a default

judgment against Defendants in state court.  See Hawaii Central Federal Credit

Union v. Louis Mahina Kealoha, et al., 1-CC-181000313.  Victims of the fraud, on

the other hand, have no other cause of action to recover their losses from

Defendants.

Because HCFCU has failed to identify any authority that creates a

superior interest in the remaining proceeds from the sale of the Niumalu Loop

property over the more traditional victims of the fraud, HCFCU has already been paid a significant portion of the sale proceeds, and HCFCU has another avenue of potential recovery, the Court recommends DENYING HCFCU's recovery of attorneys' fees.

## VI. Distribution

The Court finds and recommends distributing $1,142.32 to HCFCU as HCFCU is entitled to these additional costs associated with the sale of Niumalu Loop property under the HCFCU Settlement. The Court next finds and recommends that the Puanas collectively receive the remaining $62,334.92 in proceeds and a pro rata distribution of these funds in accordance with the restitution owed to them by Defendants. This pro rata distribution similarly is the most equitable way of dividing the funds between the Puanas.[11] Accordingly, the Court recommends distributing $44,020.73 to the Trust (70.62% of the $62,334.92), and $18,313.92 to Gerard Puana (29.38% of the $62,334.92).

---

[11] Defendant Katherine Kealoha was ordered to pay $46,261.00 in restitution to Gerard Puana, and $135,142.94 in restitution to the Florence M. Puana Trust. See CR 17-00582-JMS, ECF No 1029 at 7. Defendant Louis Kealoha was ordered to pay $11,565.25 to Gerard Puana in restitution, and $3,853.42 in restitution to the Florence M. Puana Trust. See ECF No. 1031 at 6.

CONCLUSION

The Court FINDS AND RECOMMENDS that the district court GRANT IN PART and DENY IN PART HCFCU Petitioner's Petition to Adjudicate Third Party Interest as follows:

GRANT HCFCU's request for fees associated with the sale of 7014 Niumalu Loop as contemplated by the Stipulated Settlement Agreement, totaling $1,142.32;

DENY HCFCU's request for fees previously paid to HCFCU associated with the sale of 7014 Niumalu Loop as contemplated by the Stipulated Settlement Agreement; and

DENY HCFCU's request for attorney's fees.

The Court FINDS AND RECOMMENDS that the district court GRANT the Petition Asserting Legal Interest in $63,476.97 from the sale of 7014 Niumalu Loop, pursuant to 21 U.S.C. § 853(n) filed by Gerard K. Puana and Ricky L. Hartsell, as the Trustee of the Florence M. Puana Trust as follows:

GRANT the request for the remaining net proceeds to be divided between petitioners in pro rata shares, distributing $44,020.73 to the Florence M. Puana Trust, and $18,313.92 to Gerard Puana.

The Court FINDS AND RECOMMENDS that the district court

DENY the United States' request to distribute a pro rata share of the proceeds to

the Taitos.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, MARCH 17, 2021.



_____
Wes Reber Porter
United States Magistrate Judge

**UNITED STATES V. KEALOHA; CRIMINAL NUMBER 18-00068 JMS-WRP;
FINDINGS AND RECOMMENDATION FINDINGS AND RECOMMENDATION
TO GRANT GERARD K. PUANA AND RICKY L. HARTSELL'S PETITION
ASSERTING LEGAL INTEREST AND GRANT IN PART AND DENY IN PART
HAWAII CENTRAL FEDERAL CREDIT UNION'S PETITION TO
ADJUDICATE THIRD PARTY INTEREST.**

24