IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KATHERINE P. KEALOHA (1),<br>LOUIS M. KEALOHA (2)<br><br>　　　　　Defendants. | CR. NO. 18-00068 JMS-WRP<br><br>ORDER GRANTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION,<br>ECF NO. 274. |

### ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, ECF NO. 274

### I. INTRODUCTION

On March 17, 2021, Magistrate Judge Wes Reber Porter issued a Findings and Recommendation ("F&R") regarding two third-party petitions asserting interests in criminally forfeited property under 21 U.S.C. § 853(n). ECF No. 274. Both parties claim an interest in the entirety of the remaining proceeds of the sale of real property forfeited by Defendants Katherine Kealoha and Louis Kealoha, totaling $63,476.97. *Id.* at PageID # 2701. Petitioner Hawaii Community Federal Credit Union ("HCFCU") seeks these funds to partially recover upwards of $100,000 in attorneys' fees and costs associated with the sale

1

of the property. ECF No. 254. Petitioners Gerard Puana and the Florence M. Puana Trust, together, seek these funds in partial fulfillment of the $181,673.94 in restitution owed to them as victims of the Defendants' fraud. ECF No. 260. Judge Porter found that both petitioners have equally valid claims to the funds, and undertook an equitable analysis to conclude that $1,142.32 should be distributed to HCFCU to cover costs associated with sale of the property and the remaining $62,334.92 should be distributed to the Puanas in partial fulfillment of the restitution owed them. ECF No. 274 at PageID # 2723.

Before the court is HCFCU's objection to Judge Porter's F&R, ECF No. 277. HCFCU first argues that its interest in the proceeds is superior to that of the Puanas, meaning it is entitled to the $63,476.97 as a matter of law. In the alternative, HCFCU argues that equity supports awarding it, rather than the Puanas, this full amount. *See generally id.* For the reasons set forth below, the court disagrees with these arguments and ADOPTS the F&R in full.

## II. BACKGROUND

A. **Factual Background**

In October 2019, Defendant Katherine Kealoha pled guilty to bank fraud and aggravated identity theft, and Defendant Louis Kealoha pled guilty to bank fraud. *See* ECF Nos. 203, 204. In a separate criminal case, *United States v. Katherine Kealoha, et al.*, Cr. No. 17-00582-JMS-WRP (D. Haw.), Defendants

were convicted of conspiracy and obstruction of justice for framing Gerard Puana for a crime he did not commit. As part of their criminal conduct, Defendants stole money from Defendant Katherine Kealoha's uncle, Gerard Puana, and her grandmother, Florence Puana. They also arranged a reverse mortgage on Florence Puana's home in order to finance their lavish lifestyle, including luxury cars, leisure travel, and a $26,000 brunch. ECF No. 218 at PageID # 2061. Ninety-nine year-old Florence Puana was forced to sell her home to cover the costs. *Id.* at PageID # 2075. And when Gerard Puana accused the Defendants of stealing from himself and his mother, they retaliated by framing him. ECF No. 274 at PageID # 2702; *United States v. Katherine Kealoha, et al.*, Cr. No. 17-00582-JMS-WRP.

In the final judgments issued against them, the court ordered that the Defendants provide $289,714.96 in restitution to the victims of their fraud, including $46,261.00 to Gerard Puana, and $243,453.96 to Florence Puana.[1] ECF No. 250 at PageID # 2462. $108,041.02 recovered for Florence Puana from a third party was credited to the restitution owed by Defendants, leaving them responsible for paying $135,412.94 to her.[2] *Id.* In total Defendants owe the Puanas $181,673.94.

---

[1] Florence Puana is now deceased and her interests are represented by the Florence M. Puana Trust.

[2] To the extent that Judge Porter found that "[n]o restitution has been paid to any victims of the fraud to date," ECF No. 274 at PageID # 2703, this appears to be incorrect.

When the instant case was initiated, in October 2017, the United States also initiated a *lis pendens* action against the Kealoha's property at 7014 Niumalu Loop (the "Niumalu Loop property") pursuant to 18 U.S.C. § 982(a)(2)(A), alleging that the property was purchased using proceeds of the Kealoha's criminal activities.  ECF No. 31.  HCFCU held the mortgage on the Niumalu Loop property.  ECF No. 254-1 at PageID # 2495.  During the criminal proceedings, the Kealohas defaulted on the loan by failing to make their mortgage payments.  *Id.* at PageID ## 2495-96.  In February 2018, HCFCU initiated state-court foreclosure proceedings against the property, and the United States removed the action to federal court.  *See Hawaii Central Federal Credit Union v. Kealoha, et al.*, Civ. No. 18-00108 LEK-KJM (D. Haw.), ECF No. 1.  HCFCU and the United States then jointly moved for interlocutory sale of the property, ECF No. 13, and entered into a settlement agreement stipulating how the proceeds of the sale were to be distributed, ECF No. 13-2 (the "Settlement").

Under the Settlement, HCFCU would manage the sale of the property, and any proceeds would first go to HCFCU to cover the value remaining on the mortgage and note, $1,099,096.60, as well as reasonable costs associated with managing the sale.  ECF No. 13-2 at PageID ## 122-23; ECF No. 156 at PageID # 1528.  These costs expressly excluded attorneys' fees, but HCFCU reserved the right to seek attorneys' fees either through a separate legal action against the

Kealohas or through an ancillary proceeding pursuant to 21 U.S.C. § 853(n). *Id.* at PageID # 122. And any proceeds in excess of the amount owed to HCFCU would be adjudicated in a § 853(n) ancillary proceeding. *Id.* at PageID # 125.

The Niumalu Loop property was purchased for $1,305,000.00 in March 2019. *See* ECF No. 156 at PageID # 1526. From these proceeds, HCFCU was awarded the mortgage and note amount, $1,099,096.60, as well as $143,826.07 for reasonable costs incurred in coordinating the sale. *Id.* at PageID # 1527-28. The remaining profit from the sale, $63,476.97, was placed in an interest-bearing account pending the final outcome of the criminal case against the Kealohas, at which point all rights, claims, liens, and interests could be determined through a § 853(n) ancillary proceeding. *See id.* at PageID ## 1528-29.

Final judgment was issued against the Kealohas on December 10, 2020. ECF No. 250. On December 24, 2020, HCFCU filed a petition asserting a right to the entirety of the remaining proceeds, $63,476.97, to partially cover "over $100,000" in attorneys' fees associated with the sale of the Niumalu Loop property, as well as $2,350.21 in maintenance and marketing costs incurred while coordinating sale of the property. ECF No. 254 at PageID ## 2491-93. On February 3, 2021, the Puanas filed a petition asserting their interest in the $63,476.97 as partial fulfillment of the restitution Defendants owe them. ECF No.

260. No other petitions were filed. Magistrate Judge Porter considered both petitions in an ancillary proceeding pursuant to § 853(n). ECF No. 273.

**B.     Ancillary Proceeding Before Judge Porter**

Judge Porter held a hearing on the two petitions on March 4, 2021, ECF No. 273, and issued his F&R on March 17, 2021. ECF No. 274. Judge Porter found that both HCFCU and the Puanas have a valid legal interest in the proceeds of the Niumalu Loop property sale under § 853(n). Specifically, he found that HCFCU is a bona fide purchaser for value under § 853(n)(6)(B) because the mortgage and note provide HCFCU a legal right to recover attorneys' fees and costs associated with vindicating the bank's interest in the property, and because HCFCU had no reason to believe the property would be subject to criminal forfeiture when it made the mortgage loan to the Kealohas. ECF No. 274 at PageID ## 2714-15. And, Judge Porter found that the Puanas have an established legal right to the forfeited property under § 853(n)(6)(A) through the constructive trust doctrine. *Id.* at PageID # 2715. That is, "[b]oth Gerard Puana and Florence Puana were in a confidential relationship with the Defendants, entrusting Defendant Katherine Kealoha with investments based on her false and fraudulent misrepresentations, conveyed their property to Defendants based on that relationship, and consequently lost their property," resulting in the Defendants' unjust enrichment. *Id.* at PageID # 2716.

Having found that both HCFCU and the Puanas have a legal interest in the proceeds, Judge Porter then considered how to distribute those funds. The $63,476.67 at issue could not fully satisfy the interest of either party—HCFCU seeks upwards of $100,000 in costs and attorneys' fees and the Puanas are owed nearly $200,000 in restitution. Finding that § 853(n) does not prioritize either claim over the other, Judge Porter conducted an "equitable analysis" to determine how to distribute the funds. ECF No. 274 at PageID # 2720. In weighing the equities, he considered two factors: (1) how much the respective petitioners have already recovered; and (2) other avenues of potential recovery available to each petitioner. *Id.* at PageID ## 2720-21. He found that both factors favor the Puanas. The first because HCFCU had already recovered the $1,099,096.60 balance owed under the note and mortgage and an additional $143,826.07 for expenses associated with the sale, while the Puanas have yet to receive any proceeds from the sale. *Id.* at PageID # 2721. And the second because HFCFU is "currently pursuing their contractual right to seek a default judgment against Defendants in state court," while the Puanas "have no other cause of action to recover their losses from Defendants." *Id.* Thus, Judge Porter concluded that "[i]n equity, the Puanas' interest outweighs HCFCU's interest." *Id.* at PageID # 2720.

Accordingly, he recommends that most of the proceeds—$62,334.92—be distributed to the Puanas in partial fulfillment of the $181,673.94

7

they are owed in restitution. *Id.* at PageID # 2722. But he recommends that $1,142.32 be distributed to HCFCU as reasonable costs associated with the sale of the property, which were expressly given priority in the Settlement between the United States and HCFCU. *Id.* at PageID # 2723.

On March 31, 2021, HCFCU timely raised objections to the F&R before this court. ECF No. 277. The United States filed a response in opposition to HCFCU's objections on April 12, 2021. ECF No. 278. The court decides the matter without a hearing under Local Rule 7.1(d).

### III. **STANDARD OF REVIEW**

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Under a de novo standard, there is no deference to the lower court's ruling; rather, the court "freely consider[s] the matter anew, as if no decision had been rendered below." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (alteration in original); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," or recommit the matter to the magistrate judge with further instructions. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673-74 (1980); Fed. R. Civ. P. 72(b)(3).

## IV.  DISCUSSION

HCFCU raises two alternative objections to Judge Porter's F&R. First, HCFCU argues that its claim is legally superior to that of the Puanas and that Judge Porter erred in undertaking an equitable analysis to determine that the Puanas are owed most of the proceeds. ECF No. 277 at PageID ## 2732-34. In the alternative, HCFCU argues that even if the equity analysis was appropriate, principles of equity favor awarding the entirety of the proceeds to HCFCU over the Puanas.[3] *Id.* at PageID # 2735. The court considers each objection in turn, and determines that neither are availing.

### A.    Equity Analysis Was Appropriate

The forfeiture of property constituting or derived from proceeds of a federal crime are governed by 21 U.S.C. § 853. Pursuant to § 853(c), all such property vests in the United States as of the date of the underlying offense. But § 853(n) allows any third-party "asserting a legal interest" in the forfeited property

---

[3] It is undisputed that $1,142.32 was properly distributed to HCFCU to cover those reasonable costs prioritized in the Settlement. Thus, the discussion in this section focuses only on the distribution of the remainder of the funds at issue.

9

to timely "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). In the case of multiple petitions, as here, the court may consolidate the petitions and hear them jointly. *Id.* § 853(n)(4). The court will award forfeited property if a petitioner establishes, by a preponderance of the evidence, that either (1) "the petitioner has a legal right, title, or interest in the property" superior to that of the defendant; or (2) "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." *Id.* § 853(n)(6)(A)-(B). To determine whether these conditions have been met, the court looks to the law of the forum state. *See United States v. Nava*, 404 F.3d 1119, 1128-29 (9th Cir. 2005) ("Federal forfeiture statutes govern the disposition of property, but state law determines what rights, title or interests the various claimants possess in that property."). In reaching its decision, the court is to apply § 853's provisions "liberally" to effectuate the statute's "remedial purposes." 21 U.S.C. § 853(o).

Here, Judge Porter determined that HCFCU has a right to the proceeds as a bona fide purchaser for value under § 853(n)(6)(B) and that the constructive trust doctrine vests the Puanas with a legal right to the proceeds under § 853(n)(6)(A). Because § 853(n) does not preference one type of claim over the other, Judge Porter undertook an equity-based analysis to determine how the

10

proceeds should be distributed. HCFCU does not object to Judge Porter's finding that both petitioners have a valid claim under § 853(n), but argues that undertaking an equitable analysis was an error because "[HCFCU]'s rights are established by contract and cannot be abrogated by the equitable application of a constructive trust in favor of the Puana Petitioners." ECF No. 277 at PageID # 2730. That is, although § 853(n) does not prioritize one claim over another, HCFCU argues that because the Puanas' constructive trust right is based in equity while its contractual right is based in law, the latter is superior to the former, and HCFCU is therefore entitled to the full amount. This argument is not supported by law.

It is undisputed that § 853(n) itself places on equal footing claims of a "bona fide purchaser for value" of forfeited property and claims of individuals asserting a "legal right, interest, or title" in the same property. 21 U.S.C. § 853(n)(6)(A)-(B). And although, under Hawaii law, a constructive trust arises from principles of equity, *see Aldrich v. Hassinger*, 13 Haw. 138, 149 (1900),[4] the Ninth Circuit has repeatedly found that a party's interest in a constructive trust is a "*legal* right, interest, or title" for the purposes of § 853. *See United States v.*

---

[4] Under Hawaii law, "'[a] constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'" *Seo Jeong Won v. England*, 2008 WL 5225872 at *5 (D. Haw. Dec. 12, 2008) (quoting *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 139, 552 P.2d 635, 637 (1976)). "'[T]he beneficial owner, in equity, has the right to have the title to the property transferred to himself if it is in the hands of the wrongdoer.'" *Id.* (quoting *Peine v. Murphy*, 46 Haw. 233, 241, 377 P.2d 708, 713 (1962)).

*Wilson*, 659 F.3d 947, 952-53 (9th Cir. 2011); *United States v. $4,224,958.57 ("Boylan")*, 392 F.3d 1002, 1004 (9th Cir. 2004) (explaining that, in the context of § 853(n), "[t]he obligation on the fraudster [through a constructive trust] *is imposed by law* and arises immediately with his acquisition of the proceeds of the fraud.") (emphasis added).  Most other Circuits have found the same.  *See, e.g.*, *United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008) ("We agree with the large majority of courts that have determined . . . that a constructive trust, despite being an equitable remedy, constitutes a 'legal right, title, or interest' for the purposes of § 853(n)"); *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190 (D.C. Cir. 1995); *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992); *United States v. Marx*, 844 F.2d 1303, 1308 (7th Cir. 1988); *see also United States v. Lavin*, 942 F.2d 177, 185-86 (3d Cir. 1991); *United States v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir. 1988) (stating in dicta that a constructive trust would constitute a superior interest under § 853(n)).  As has this court.  *See United States v. One Hundred Thirty Three (133) U.S. Postal Service Money Orders*, 780 F. Supp. 2d 1084, 1096 (D. Haw. 2011).  There is simply no merit to HCFCU's contention that its contractual right is superior the Puanas' constructive trust right for the purpose of § 853(n).

    Having determined that the two petitioners have equally valid claims to the proceeds, the court must now determine whether Judge Porter's equity-based

analysis was an appropriate means of determining how those proceeds should be distributed. Upon de novo review, the court finds that the equitable analysis was appropriate and supported by law.

First, an equitable analysis accords with the congressional mandate in § 853(o) that the court should apply the statute's provisions "liberally" to effectuate the statute's "remedial purposes." Because Congress declined to prioritize one type of claim over another within the § 853 framework,[5] it is necessary for the court to turn to equitable principles in order to follow Congress' mandate and craft an appropriate remedy. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) (applying equitable principles to "honor the remedial purpose of the legislation"); *cf. SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 191-95 (1963) (explaining that the lower court correctly looked to principles of equity to construe a remedial statute because Congress intended that statute to be construed flexibly in order to effectuate its remedial purpose).

Second, both the Supreme Court and the Ninth Circuit have approved of equitable analysis as a method for determining how to distribute forfeited property between similarly situated victims. *See, e.g., Cunningham v. Brown*, 265 U.S. 1, 13 (1924) (explaining, in determining how to distribute criminally forfeited

---

[5] This in contrast to other statutory schemes governing distribution of property in which certain claims are expressly prioritized over others. *See, e.g.*, 11 U.S.C. § 726 et seq.

property, that equity requires setting aside tracing principles that would permit some victims to recover at the exclusion of other, similarly-situated victims); *Wilson*, 659 F.3d at 956 (finding the same in the context of a § 853(n) ancillary proceeding) (citing *Boylan*, 392 F.3d at 1005).

There is no reason to suggest that the same approach would not be appropriate where, as here, the court must determine how to distribute property between two differently positioned claimants.  And, indeed, the Ninth Circuit has intimated as much.  *Wilson*, 659 F.3d at 956 (stating that "this decision should not be read to preclude equitable analysis by the court below" and remanding with instructions to "take steps to assure that no claimant obtains more than his or her fair share") (internal quotation and citation omitted).  In contrast, HCFCU points to no authority suggesting that an equitable analysis was inappropriate.  It rests solely on its unfounded argument that a contractual right is superior to a constructive trust right in the context of § 853(n).  ECF No. 277 at PageID ## 2731-35.

In short, both the Puanas and HCFCU have valid legal claims to the proceeds under § 853(n), and an equitable analysis is an appropriate method for determining how to distribute the proceeds between the two parties.

B.    **Equity Favors the Puanas**

HCFCU alternatively argues that equity supports awarding it (over the Puanas) the entirety of the proceeds.  The court disagrees.

HCFCU argues that both factors considered by Judge Porter—the amount each petitioner has already recovered and other avenues of potential recovery available to each petitioner—favor awarding HCFCU the full amount. As to the first factor, Judge Porter found that "HCFCU was made whole on the $1,099,096.60 balance owed under the note and mortgage and received an additional $143,826.0[7] for the various expenses associated with the sale, taking 95% of the proceeds," while "the more traditional victims of Defendants' fraud have received nothing." ECF No. 274 at PageID ## 2720-21. HCFCU argues that this analysis is flawed for two reasons. First, it will not be "made whole" until its attorneys' fees have been paid. And, second, it deserves the money more than the Puanas because it "took the laboring oar in marketing and selling the Property" while the Puanas did not contribute to this effort. ECF No. 277 at PageID # 2736. These arguments are unpersuasive.

As to the first, although HCFCU may still have outstanding attorneys' fees, it has recovered far more than the Puanas. It has recovered the entirety of the mortgage amount and most of its costs—in total upwards of 95% of the money it seeks, while the Puanas have recovered nothing from the sale and are still owed $181,673.94 in restitution. Distributing the remainder of the proceeds to HCFCU to recover attorneys' fees at the expense of the Puanas receiving any restitution from the sale would be most inequitable. As the United States notes, the purpose

of criminal forfeiture is to achieve justice for fraud victims, like the Puanas, by "marshaling the fraudster's assets in order to provide fair restitution for all fraud victims through the restoration process . . . or the remission process."  ECF No. 262 at PageID # 2638 (citing 19 U.S.C. §§ 981(d),(e)(6)).  Awarding the remaining proceeds to HCFCU would frustrate this equitable purpose.  The first factor favors awarding most of the proceeds to the Puanas.

Judge Porter also concluded that the second factor—what other avenues of recovery remain available to the petitioners—favors the Puanas.  Specifically, Judge Porter found that HCFCU may pursue (and in fact is actively pursuing) a deficiency action against the Kealohas in order to recover attorneys' fees, while the Puanas "have no other cause of action to recover their losses from Defendants."  ECF No. 274 at PageID # 2721 (citing *Hawaii Central Federal Credit Union v. Louis Mahina Kealoha, et al.*, Civ. No. 1-CC-181000313 (Haw. 1st Cir. Ct.)).  HCFCU argues that this analysis is flawed because the Puanas are also able to pursue a state court civil action and, indeed, appear to be doing so.  ECF No. 277 at PageID ## 2736-37 (citing *Estate of Florence Puana, et al. v. Katherine P. Kealoha, et al.*, Civ. No. 1-CC-13100686 (Haw. 1st Cir. Ct.)).  But, even if this is true, the Puanas' ability to pursue a civil remedy in state court at best

renders the second factor neutral,[6] while the first factor still strongly favors the Puanas. Equity requires the majority of the proceeds be awarded to the Puanas.

## V. CONCLUSION

For the foregoing reasons, after de novo review, HCFCU's objections are OVERRULED and the court ADOPTS the March 17, 2021 Findings and Recommendation, ECF No. 274. The remaining proceeds of the Niumalu Loop property sale shall be distributed as follows:

> (1) $1,142.32 shall be distributed to HCFCU for reasonable costs associated with sale of the property as contemplated by the Settlement.

///

///

///

///

///

///

///

///

---

[6] And given the resource and power deferential between HCFCU and the Puanas, seeking a civil court remedy is a far more burdensome undertaking for the Puanas than for HCFCU.

(2) The remainder of the proceeds, $62,334.92, plus any accrued interest, shall be distributed to the Puanas on a pro rata basis consistent with the restitution owed to each party—$44,020.73 plus interest to the Florence M. Puana Trust, and $18,313.92 plus interest to Gerard Puana.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 26, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

---

*United States v. Kealoha*, Cr. No. 18-00068 JMS-WRP, Order Adopting Magistrate Judge's Findings and Recommendation, ECF No. 274.